**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ISMAEL MARRERO ROLÓN, ANNE CATESBY JONES, JORGE VALDES LLAUGER, PUERTO RICO BATHROOM REMODELING, INC., PERFORMANCE CHEMICALS COMPANY INC., | CIVIL NO. 3:15-cv-01167-JAG |
| Plaintiffs, | |
| v. | |
| AUTORIDAD DE ENERGÍA ELÉCTRICA A/K/A PUERTO RICO ELECTRIC POWER AUTHORITY; WILLIAM RODNEY CLARK; EDWIN RODRIGUEZ; CÉSAR TORRES MARRERO; INSPECTORATE AMERICA CORPORATION; BUREAU VERITAS HOLDING, INC.; CORE LABORATORIES N.V. D/B/A SAYBOLT; ALTOL CHEMICAL ENVIRONMENTAL LABORATORY INC. D/B/A ALCHEM LABORATORY; ALTOL ENVIRONMENTAL SERVICES, INC. D/B/A ALTOL ENTERPRISES; PETROBRAS AMERICA, INC.; PETROLEO BRASILEIRO S.A.; CARLOS R. MÉNDEZ & ASSOCIATES; SHELL TRADING (US) COMPANY; PUMA ENERGY CARIBE LLC; PUMA ENERGY INTERNATIONAL, B.V.; TRAFIGURA A.G.; TRAFIGURA BEHEER, B.V.; PETROWEST, INC.; VITOL S.A., INC.; VITOL, INC.; JOHN DOES 1-100, | |
| Defendants. | |

**DEFENDANT TRAFIGURA A.G.'S MOTION TO DISMISS PLAINTIFFS' CLASS
ACTION COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND ..........................................................................................3

ARGUMENT ..................................................................................................................4

I.      STANDARD OF REVIEW ....................................................................................4

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER RICO...................................5

        A.      Plaintiffs Lack Standing.............................................................................5

                1.      Plaintiffs Were Not Harmed, As They Paid Exactly What They Were Supposed to Pay for the Electricity They Consumed........................5

                2.      The Complaint Fails To Allege That TAG Proximately Caused Any Injury...............................................................................................7

        B.      The Complaint Fails to Allege a Viable RICO Enterprise ........................9

                1.      Plaintiffs Have Not Alleged a Distinct Enterprise....................................10

                2.      Plaintiffs Have Not Alleged a Common Purpose ......................................11

        C.      The Complaint Fails to Allege a Pattern of Racketeering Activity .......................11

                1.      The Complaint Fails to Plead Mail and Wire Fraud with Particularity...........................................................................................12

                2.      The Complaint Fails to Allege that TAG Specifically Intended to Defraud Plaintiffs.......................................................................................14

         D.      Plaintiffs' Claims Are Time-Barred..........................................................15

         E.      Plaintiffs' RICO Claim is Barred by the Filed Rate Doctrine ..............................19

III.    PLAINTIFFS FAIL TO ALLEGE A RICO CONSPIRACY CLAIM ............................20

IV.    PLAINTIFFS FAIL TO ALLEGE AN UNJUST ENRICHMENT CLAIM....................21

V.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ..........................23

CONCLUSION.................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Abbott Labs Norvir Antitrust Litig.*,
  562 F. Supp. 2d 1080 (N.D. Cal. 2008), *reversed on other grounds*,
  571 F.3d 930 (9th Cir. 2009) ...................................................................21

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987) ...............................................................................15

*Ambrosia Coal & Const. Co. v. Pages Morales*,
  482 F.3d 1309 (11th Cir. 2007) ..............................................................13

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) .................................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................4, 9

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ................................................................14

*Bagheri v. Galligan*,
  160 F. App'x 4 (1st Cir. 2005) ...............................................................14

*BancOklahoma Mortg. Corp. v. Capital Title Co.*,
  194 F.3d 1089 (10th Cir. 1999) ..............................................................20

*Bankers Trust v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988) .................................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................4

*Berkson v. Del Monte Corp.*,
  743 F.2d 53 (1st Cir. 1984) ....................................................................18

*Bessette v. Avco Fin. Servs., Inc.*,
  230 F.3d 439 (1st Cir. 2000) ..................................................................10

*Brennan v. Hendrigan*,
  888 F.2d 189 (1st Cir. 1989) ..................................................................21

*COFACREDIT, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) ...................................................................20

*Cedric Kushner Ltd. v. King*,
  533 U.S. 158 (2001) ...............................................................................10

*In re Colonial Mortg. Bankers Corp.*,
  324 F.3d 12 (1st Cir. 2003) ....................................................................17

*Cordero-Hernandez. v. Hernandez-Ballesteros,*
    449 F.3d 240 (1st Cir. 2006) ........................................................................14

*Daz v. Aguayo,*
    162 D.P.R. 801 (P.R. 2004) .........................................................................22

*In re Digital Music Antitrust Litig.,*
    812 F. Supp. 2d 390 (S.D.N.Y. 2011)..........................................................21

*E.I. Du Pont de Nemours & Co. v. Cullen,*
    791 F.2d 5 (1st Cir. 1986) ............................................................................17

*El Toro Electric Corp. v. Zayas,*
    106 D.P.R. 98 (1977) ...................................................................................22

*Evans v. City of Chicago,*
    434 F.3d 916 (7th Cir. 2006), *overruled on other grounds by*
    *Hill v. Tangherlini,* 724 F.3d 965 (7th Cir. 2013)..........................................5

*Feinstein v. Resolution Trust Corp.,*
    942 F.2d 34 (1st Cir. 1991)....................................................................12, 21

*Garber v. Legg Mason Inc.,*
    347 Fed. App'x 665 ......................................................................................17

*George Lussier Enters., Inv. v. Subaru of New England, Inc.,*
    393 F.3d 36 (1st Cir. 2004) ............................................................................7

*Giragosian v. Ryan,*
    547 F.3d 59 (1st Cir. 2008) ..........................................................................17

*Glassman v. Computervision Corp.,*
    90 F.3d 617 (1st Cir. 1996) ..........................................................................23

*Grajales v. Puerto Rico Ports Authority,*
    682 F.3d 40 (1st Cir. 2012) ..........................................................................15

*Grannum v. Massachusetts,*
    No. 13-cv-12042-FDS, 2014 WL 51627 (D. Mass. Jan. 6, 2014) ..............14

*H.J., Inc. v. Northwestern Bell Tel. Co.,*
    954 F.2d 485 (8th Cir. 1992) ......................................................................19

*Haley v. City of Boston,*
    657 F.3d 39 (1st Cir. 2011) ..........................................................................15

*Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago,*
    747 F.2d 384 (7th Cir. 1984), *aff'd,* 473 U.S. 606 (1985).........................10

*Haskin v. R.J. Reynolds Tobacco Co.,*
    995 F. Supp. 1437 (M.D. Fla. 1998) ...........................................................13

*Hatton v. Municipality of Ponce,*
    1994 P.R.-Eng. 909, 605, 134 D.P.R. 1001 (P.R. 1994).............................22

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010)................................................................................................7

*Holmes v. Sec. Invest. Prot. Corp.*,
   503 U.S. 258 (1992)............................................................................................7

*Ieradi v. Mylan Lab., Inc.*,
   230 F.3d 594 (3d Cir. 2000)..............................................................................18

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977).......................................................................................8, 21

*Kansas v. UtiliCorp United, Inc.*,
   497 U.S. 199 (1990)...................................................................................8, 9, 21

*Keough v. Chicago & Northwestern Ry.*,
   260 U.S. 156 (1922)..........................................................................................19

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)..........................................................................................19

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012)..............................................................................16

*Koch v. Christie's Int'l PLC*,
   785 F. Supp. 2d 105 (S.D.N.Y. 2011)..............................................................16

*Korwek v. Hunt*,
   646 F. Supp. 953 (S.D.N.Y. 1986), *aff'd*, 827 F.2d 874 (2d Cir. 1987) ................18

*LaChapelle v. Berkshire Life Ins. Co.*,
   142 F.3d 507 (1st Cir. 1998).............................................................................15

*Lares Group II v. Tobin*,
   221 F.3d 41 (1st Cir. 2000)...............................................................................16

*Libertad v. Welch*,
   53 F.3d 428 (1st Cir. 1995)...........................................................................9, 11

*Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*,
   896 F. Supp. 2d 650 (E.D. Mich. 2012).............................................................8

*McCarthy v. Recordex Serv., Inc.*,
   80 F.3d 842 (3d Cir. 1996)..................................................................................8

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*,
   904 F.2d 786 (1st Cir. 1990).............................................................................14

*Medina & Medina v. Country Pride Foods Ltd.*,
   631 F. Supp. 293 (D.P.R. 1986) , *aff'd*, 901 F.2d 181 (1st Cir. 1990)................22

*Miranda v. Ponce Fed. Bank*,
   948 F.2d 41 (1st Cir. 1991)...................................................................10, 20, 21

*Mulligan v. Choice Mortg. Corp. USA, No. CIV. 96-596-B,*
    1998 WL 544431 (D.N.H. Aug. 11, 1998) .................................................14

*Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Tech. Inc.,*
    420 F. Supp. 2d 253 (S.D.N.Y. 2006) ....................................................18

*Ortiz Andjar v. E.L.A.,*
    1998 P.R.-Eng. 580, 122 D.P.R. 817 (P.R. 1988) ...................................22

*In re Pharmaceutical Indus. Average Wholesale Price Litig.,*
    307 F. Supp. 2d 196 (D. Mass. 2004) .....................................................13

*Pearce v. Faurecia Exhaust Systems, Inc.,*
    529 Fed. App'x 454 (6th Cir.  June 19, 2013) .........................................17

*Powers v. Boston Cooper Corp.,*
    926 F.2d 109 (1st Cir. 1991) .................................................................12

*Puerto Rico Tel. Co. v. SprintCom, Inc.,*
    662 F.3d 74 (1st Cir. 2011) ...................................................................22

*Rivera-Muiz v. Horizon Lines, Inc.,*
    737 F. Supp. 2d 57 (D.P.R. 2010) ..........................................................22

*Rodriguez v. Banco Central Corp.,*
    917  F.2d 664 (1st Cir. 1990) ..........................................................15, 16

*Schultz v. Rhode Island Hosp. Trust Nat. Bank, N.A.,*
    94 F.3d 721 (1st Cir. 1996) ...................................................................14

*Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.,*
    476 U.S. 409 (1986) .............................................................................19

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) .................................................................13

*Taffet v. Southern Co.,*
    967 F.2d 1483 (11th Cir. 1992) .............................................................19

*Texas & Pacific Ry. v. Abilene Cotton Oil Co.,*
    204 U.S. 426 (1907) .............................................................................19

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.,*
    524 F.3d 315 (1st Cir. 2008) .................................................................15

*Trollinger v. Tyson Foods, Inc.,*
    370 F.3d 602 (6th Cir. 2004) ..................................................................8

*Turner v. Cook,*
    362 F.3d 1219 (9th Cir. 2004) ...............................................................20

*U.S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.,*
    147 F. Supp. 2d 39 (D. Mass. 2001) ......................................................12

*Umpierre v. Torres Diaz*,
  14 P.R. Offic. Trans. 578, 114 D.P.R. 449 (P.R. 1983)..........................................................22

*United States v. Diaz-Bastardo*,
  766 F. Supp. 1227 (D.P.R. 1991) *aff'd*, 929 F.2d 798 (1st Cir. 1991)....................................18

*United States v. Moreno*,
  815 F.2d 725 (1st Cir. 1987) ....................................................................................................18

*United States v. Turkette*,
  452 U.S. 576 (1981).............................................................................................................10, 11

*Wegoland Ltd. v. NYNEX Corp.*,
  27 F.3d 17 (2d Cir. 1994).........................................................................................................19

*Wooten v. Loshbough*,
  951 F.2d 768 (7th Cir. 1991) .....................................................................................................8

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
  530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009)........................5

**Statutes**

15 U.S.C. § 15(a) .............................................................................................................................8

18 U.S.C. § 1961(4) .......................................................................................................................11

18 U.S.C. § 1961(5) .......................................................................................................................11

18 U.S.C. § 1962(c) ...............................................................................................................9, 10, 20

18 U.S.C. § 1962(d) .......................................................................................................................20

18 U.S.C. § 1964(c) .........................................................................................................................5

42 U.S.C. § 1983...........................................................................................................................21

Fed. R. Civ. P. 8(a) .......................................................................................................................14

Fed. R. Civ. P. 9(b) ...............................................................................................2, 12, 13, 14, 18, 19

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 4, 15, 17

**Miscellaneous**

Gregory P. Joseph, Civil RICO: A Definitive Guide 93 (3d ed. 2010) ...........................................11

Carlos Marquez, *Is Prepa Prepared to Take Puerto Rico into the 21st Century?*,
  PUERTO RICO HERALD (July 14, 2005), http://www.puertorico-
  herald.org/issues2/2005/vol09n28/CBPrepaPrepared.html ...................................................17

2 MOORE'S FEDERAL PRACTICE § 9.03[1][f]........................................................................................13

5A Wright & Miller, *Federal Practice and Procedure* § 1364 (1990) ...........................................17

Puerto Rico Electric Power Authority Bond Offering, at 58 (March 26, 2010),
    http://www.aeepr.com/INVESTORS/DOCS/Financial%20Information/
    Official%20Statement/PREPA%20Revenue%20Bonds%20Series%20XX.pdf....................17

Defendant Trafigura A.G.[1] ("TAG") submits this Memorandum of Law in support of its Motion to Dismiss the Class Action Complaint filed in Case No. 3:15-cv-01167-JAG (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs attempt to cobble together claims against TAG for violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), conspiracy to violate RICO, and unjust enrichment, based on allegations that an undifferentiated group of "Fuel Oil Suppliers" provided fuel oil to the Puerto Rico Electric Power Authority ("PREPA")[2] that did not meet contractual or Environmental Protection Agency ("EPA") specifications, but was nonetheless accepted by PREPA in exchange for undisclosed kickbacks or commissions from unspecified Defendants. These claims fail for several reasons.

*First*, Plaintiffs cannot establish RICO standing, which requires them to allege a "concrete and actual" injury that was "directly and proximately" caused by the defendants' conduct. Plaintiffs contend that they were overcharged on their monthly electricity bills as a result of the RICO conspiracy. The Complaint acknowledges, however, that Plaintiffs would have paid exactly the same amount—the cost of Compliant Fuel Oil—irrespective of the alleged scheme. Thus, Plaintiffs have not alleged, did not suffer, and cannot prove any harm at all arising from the its allegations. Equally important, Plaintiffs cannot show that TAG proximately caused any of their alleged, non-existent that injuries.

*Second*, Plaintiffs have failed to allege a viable RICO enterprise. Section 1962(c), the predicate RICO violation for Plaintiffs' claim, makes it unlawful for a "person employed by or

---

[1]    Effective February 1, 2015, TAG, a Swiss business organization, converted to Trafigura Trading LLC, a Delaware limited liability company.

[2]    The official Spanish name of PREPA is Autoridad de Energía Eléctrica.

associated with" an "enterprise" to conduct the affairs of the "enterprise" through a pattern of racketeering.  Plaintiffs allege that the enterprise in the present case is composed of *all the Defendants*.  RICO, however, does not permit the same entity to be both the defendant "person" and the "enterprise."  Moreover, the Complaint fails to show that the assorted Defendants shared a common purpose.  As such, Plaintiffs' allegations are insufficient to support a RICO claim.

*Third*, the Complaint fails to plead a pattern of racketeering activity.  Plaintiffs purport to allege predicate acts of mail fraud and wire fraud, but such claims must be pled with particularity under Federal Rule of Civil Procedure 9(b).  The Complaint offers no particularized claims of fraud against TAG, but instead makes allegations against a generalized, undifferentiated group of defendants.  Courts consistently reject these types of vague allegations that merely lump together multiple defendants in an effort to show guilt-by-association.

*Fourth*, Plaintiffs' claims are untimely since Plaintiffs were on inquiry notice of their alleged injuries more than a decade before filing the present lawsuit and have not pleaded any facts sufficient to toll the statute of limitations.

*Fifth*, the filed rate doctrine bars Plaintiffs' RICO claim, because Plaintiffs' damages would be determined by comparing the rate set by a regulated utility (PREPA) and the rate that allegedly would have been approved absent the fraudulent scheme.

*Sixth*, Plaintiffs' failure to establish a substantive RICO violation is fatal to their RICO conspiracy claim.  And in any event, Plaintiffs make no showing that TAG entered into an agreement or conspired with any other Defendant.

*Seventh*, Plaintiffs are precluded from pursuing an unjust enrichment claim since their own allegations establish that they have not suffered any loss, and because they have other potential avenues of relief available to them.

For all of these reasons, the Complaint against TAG should be dismissed in its entirety.

## FACTUAL BACKGROUND

Puerto Rico gets two-thirds of its electricity from petroleum or fuel oil.  (Compl. ¶ 46). PREPA is a public corporation and government instrumentality that owns the electric distribution system for Puerto Rico's main island, as well as the islands of Vieques and Culebra.  (*Id.* ¶ 12). PREPA also owns all but two of Puerto Rico's power generation stations.  (*Id.*).  Because Puerto Rico neither produces nor refines fuel oil itself, all of the petroleum that PREPA converts into electricity is imported.  (*Id.* ¶ 46).

The fuel oil PREPA imports must meet certain chemical specifications set by the EPA and by contract with PREPA's suppliers.  (*Id.* ¶ 1).  The Complaint categorizes the imported oil into two types: "Compliant Fuel Oil" that meets the specifications and "Non-Compliant Fuel Oil," which does not.  (*Id.*).  Plaintiffs state in conclusory fashion that Non-Compliant Fuel Oil is cheaper than Compliant Fuel Oil.  (*Id.* ¶ 3).

Plaintiffs allege that PREPA and certain of its employees conspired with fuel oil suppliers and laboratories (which tested the specifications of the fuel oil provided by the suppliers) to engage in a scheme where PREPA ordered and paid for more expensive Compliant Fuel Oil, but instead accepted less expensive Non-Compliant Fuel Oil provided by the fuel oil suppliers.  (*Id.* ¶¶ 1-2, 74-75).  In return for receiving payment for a more expensive grade of fuel oil than what they actually provided, the fuel oil suppliers allegedly agreed to pay PREPA and its agents "undisclosed kickbacks, including lavish trips and parties."  (*Id.* ¶¶ 1-2, 75-76, 263-64, 271, 274-75).  To facilitate the scheme, in exchange for repeat business, the laboratories supposedly falsified analyses, certifying that Non-Compliant Fuel Oil provided by the fuel oil suppliers was compliant.  (*Id.* ¶¶ 2, 73-74).  According to the Complaint, "[a]s a result of this scheme, PREPA overpaid its fuel suppliers for fuel oil and passed through the entire cost of the

Non-Compliant Fuel Oil to Plaintiffs and the Class on their regular monthly electricity bills."
(*Id.* ¶ 1).  Plaintiffs are suing on behalf of "[a]ll persons or entities that paid [PREPA] for
electricity during the period January 1, 2002 to the present."  (*Id.* ¶ 251).

## ARGUMENT

### I.   STANDARD OF REVIEW

A complaint is subject to dismissal if it fails to state a claim upon which relief can be
granted.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), the
complaint must both assert a plausible claim and set forth sufficient factual allegations to support
the claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 556, 570 (2007)).  Neither a "'formulaic recitation of the elements of a cause of
action'" nor "'naked assertion[s] [of fact]' devoid of 'further factual enhancement'" is sufficient
to withstand dismissal.  *Id.* (citing *Twombly*, 550 U.S. at 555, 557).  To satisfy the standard under
*Twombly* and *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"  *Id.* (citing *Twombly*, 550 U.S. at 570).

A claim is facially plausible when the plaintiff pleads enough factual content that allows
the court to draw the reasonable inference that the defendant is liable under the alleged claim.
*Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] court considering a motion to dismiss can choose to
begin by identifying pleadings that, because they are no more than conclusions, are not entitled
to the assumption of truth."  *Id.*  In other words, when evaluating whether a complaint states a
claim for relief, conclusory allegations should be disregarded.  *Id.* at 679.  For the reasons set
forth below, Plaintiffs fail to allege sufficient facts in support of their claims to satisfy the
pleading standards set forth in *Twombly* and *Iqbal*.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER RICO

### A.    Plaintiffs Lack Standing

The civil RICO provision in 18 U.S.C. § 1964(c) grants standing to "[a]ny person injured in his business or property by reason of" a RICO violation.  Plaintiffs fail that threshold test, both because they do not adequately allege harm to their business or property, and because they fail to allege that TAG proximately caused their alleged injury.

### 1.    Plaintiffs Were Not Harmed, As They Paid Exactly What They Were Supposed to Pay for the Electricity They Consumed

A threshold requirement in any civil RICO case is that the plaintiffs actually suffered an injury to their business or property.  *See* 18 U.S.C. § 1964(c).  "[E]very court that has addressed this issue has held that injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous."  *Evans v. City of Chicago*, 434 F.3d 916, 932 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013); *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520-21 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) ("[T]he requirement of a concrete financial loss proximately caused by the wrongful conduct of RICO defendants is not easily met.") (internal citations omitted).  Here, there is no injury as the Complaint fails to demonstrate that Plaintiffs paid anything other than the amount they were supposed to pay for the electricity they consumed.

PREPA uses the fuel oil it imports to combust and produce electricity "and passes the cost of the fuel oil directly on to its customers, which appears on the customers' bills within two billing cycles."  (Compl. ¶ 66).  According to the Complaint, PREPA was required to use fuel oil that met certain specifications dictated by the EPA in a 1999 Consent Decree, as amended in 2004.  (*Id.* ¶ 1).  Plaintiffs do not suggest that Non-Compliant Fuel Oil is less efficient or that it

somehow results in the generation of less electricity than Compliant Fuel Oil. Rather, in entirely conclusory fashion, the Complaint merely states, without any supporting facts, that Non-Compliant Fuel Oil is cheaper than Compliant Fuel Oil. (*Id.* ¶ 3). Notably, the Complaint fails even to quote comparative prices for Compliant and Non-Compliant Fuel Oil. Based solely on that conclusory statement, Plaintiffs claim that they "have made thousands of dollars in payments for fuel oil that they would not have made had Defendants not engaged in their pattern of racketeering activity." (*Id.* ¶ 279).

In fact, the Complaint shows otherwise. The Complaint explains that, absent fraud, PREPA was supposed to reject Non-Compliant Fuel Oil and only accept Compliant Fuel Oil on threat of substantial monetary and criminal penalties from the EPA. (*Id.* ¶¶ 65, 150). Since PREPA was only permitted to accept Compliant Fuel Oil, it necessarily was required to pass the cost of Compliant Fuel Oil on to the Plaintiffs. (*Id.* ¶ 66). Combined with the failure to allege or show that Non-Compliant Fuel Oil is any less efficient, the Complaint makes clear that Plaintiffs would have used the same amount of electricity and paid exactly the same amount (the cost of Compliant Fuel Oil) irrespective of the alleged RICO scheme. In other words, even accepting Plaintiffs' allegations as true, Plaintiffs' theory is that PREPA paid the higher prices of Compliant Fuel Oil and passed along that cost to consumers even though it received—at times—Non-Compliant Fuel Oil. So, on Plaintiffs' case, consumers paid prices for electricity as if they were receiving electricity generated on the basis of Compliant Fuel Oil, which is precisely what the putative class members were supposed to pay for their electricity if the Defendants had not allegedly delivered Non-Compliant Fuel Oil to PREPA. This means that there necessarily can be no damages caused to Plaintiffs from the alleged RICO scheme.

6

Nor can the Plaintiffs rely on their claim that Non-Compliant Fuel Oil "is dirtier and more harmful to the environment" to establish a "concrete and actual" injury.  (*Id.* ¶ 3). Nowhere does the Complaint allege or even suggest that any supposed environmental harm injured the Plaintiffs in their business or property, as required for RICO standing.  Accordingly, the Court should dismiss the RICO claim against TAG for failure to allege a RICO injury and hence for lack of standing.

### 2.     The Complaint Fails To Allege That TAG Proximately Caused Any Injury

To establish standing, it is not enough that a plaintiff be injured in their business or property.  A plaintiff also must show that their injury was "directly" and "proximately" caused by the defendant's RICO violation.  *Holmes v. Sec. Invest. Prot. Corp.*, 503 U.S. 258, 266-68 (1992); *George Lussier Enters., Inv. v. Subaru of New England, Inc.*, 393 F.3d 36, 51 (1st Cir. 2004).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added).  Courts routinely dismiss civil RICO claims at the pleading stage where plaintiffs fail to allege a "direct" causal link between their injury and the defendant's alleged RICO violation.  In fact, the Supreme Court has repeatedly ruled that RICO claims are subject to dismissal at the pleading stage for failure to plead a "direct" causal link between defendant's conduct and plaintiff's injury.  *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 18 (2010); *Anza*, 547 U.S. at 457-60.

Plaintiffs cannot possibly establish that TAG proximately caused the alleged overcharges on their monthly electricity bills.  As a threshold matter, as established in the preceding section, there were no overcharges.  But even if Plaintiffs could surpass that hurdle, they do not even allege that TAG entered into fuel oil contracts with PREPA.  Rather, the Plaintiffs allege that

TAG supplied fuel oil to other oil companies; that those fuel oil companies subsequently entered into contracts with and delivered oil to PREPA; and that PREPA then passed through the costs of the fuel oil to the Plaintiffs.  (Compl. ¶¶ 29, 31-32).  This alleged chain of causation—without any specification as to what cost differentiations or markups existed along the supply chain between TAG's initial sale and PREPA's ultimate purchase of fuel oil from other companies—is far too attenuated and speculative to constitute a direct causal link.

Indeed, the Supreme Court has previously considered a similar fact pattern in the antitrust context and concluded that customers of a public utility lack standing to sue the utilities' suppliers for inflated gas prices.  *See Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 207-08 (1990) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).  In *UtiliCorp*, the petitioners asserted that utility customers should be permitted to bring claims under the Clayton Act[3] in cases involving regulated public utilities that pass on 100 percent of their costs to their customers. *See UtiliCorp*, 497 U.S. at 208.  The Supreme Court rejected this argument and held that the utilities had suffered antitrust injury as direct purchasers but that their customers, as indirect purchasers, had not.  *See id.*  Importantly, courts have made clear that this antitrust analysis applies with equal force in the RICO context.  *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004) ("[I]ndirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen . . . ."); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996) (explaining that "antitrust standing principles apply equally to allegations of RICO violations"); *Wooten v. Loshbough*, 951 F.2d 768, 770 (7th Cir. 1991) (Posner, J.) ("[I]n RICO as in antitrust and in tort and contract law generally, liability stops at the first victim."); *Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*, 896 F. Supp. 2d 650, 668

---

[3]   Like RICO, the Clayton Act limits standing to a plaintiff who has been "injured in his business or property by reason of" an antitrust violation.  *See* 15 U.S.C. § 15(a).

(E.D. Mich. 2012) ("The antitrust-standing analysis also bars [plaintiff] from establishing standing to assert its RICO claim.").

Here, the Complaint alleges that Plaintiffs were only indirectly injured by the alleged RICO violations, when PREPA passed through fuel charges to its customers, who on Plaintiffs' allegations were indirect purchasers of electricity—not even of the fuel oil sold by TAG—at the end of the supply chain. As to TAG, the allegations are even more remote than the fact pattern addressed in *Utilicorp*, as TAG did not sell its fuel oil directly to the utility, but rather only supplied other oil companies, who subsequently entered into contracts with PREPA.[4] PREPA then sold electricity to the putative class Plaintiffs, allegedly passing along the cost of the fuel oil. These facts demonstrate the lack of any proximate causation between the alleged RICO violation attributed to TAG and Plaintiffs' alleged, phantom injuries as required to establish standing to assert RICO claims against TAG. Accordingly, Plaintiffs lack standing to bring a RICO claim against TAG.

### B.     The Complaint Fails to Allege a Viable RICO Enterprise

The RICO statute makes it unlawful for a "person employed by or associated with" an "enterprise" to conduct the affairs of the "enterprise" through a pattern of racketeering. *See* 18 U.S.C. § 1962(c). "The 'enterprise' is not the 'pattern of racketeering activity;' it is an entity apart and distinct from the pattern of activity in which it engages. The existence of an enterprise is, therefore, a separate element which must be proven." *Libertad v. Welch*, 53 F.3d 428, 441

---

[4]    In their RICO Case Statement Plaintiffs allege for the first time that "Trafigura A.G. and Trafigura Beheer B.V. (collectively, 'Trafigura') contracted with PREPA to supply fuel oil." (Case Statement at 8). This does nothing to cure the Complaint's defects, because even if TAG had contracts with PREPA, Plaintiffs' injury would be too remote under *Utilicorp* to permit recovery. Additionally, the allegation may be disregarded, as it is wholly conclusory and provides no supporting detail whatsoever regarding the specifics of any such alleged contracts. *Iqbal*, 556 U.S. at 678-79.

(1st Cir. 1995) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  Plaintiffs fail to satisfy this element because they have not alleged (1) the required "distinctness" between the "persons" that committed the violation and the "enterprise" through which the violation was committed, or (2) a common purpose among the various Defendants.

### 1.   Plaintiffs Have Not Alleged a Distinct Enterprise

Section 1962(c) requires Plaintiffs to distinguish between the "person" that committed the predicate RICO violation and the "enterprise" through which the "person" conducted the violation.  *See Cedric Kushner Ltd. v. King*, 533 U.S. 158, 161 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same "person" referred to by a different name."); *see also Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 448 (1st Cir. 2000) (the "person" alleged to be engaged in a racketeering activity must be distinct from the "enterprise").  This requirement stems from the text of the RICO statute, which mandates a clear separation between the culpable party and the alleged racketeering enterprise—and forbids any claims against the alleged enterprise itself.  *See* 18 U.S.C. § 1962(c); *Haroco, Inc.* v. *Am. Nat. Bank & Trust Co. of Chicago*, 747 F.2d 384, 400 (7th Cir. 1984), *aff'd*, 473 U.S. 606 (1985) ("[S]ection 1962(c) requires separate entities as the liable person and the enterprise which has its affairs conducted through a pattern of racketeering activity.").

Here, the Complaint states that the enterprise is composed of *all the Defendants*.  (*See* Compl. ¶ 2).  Because the Defendants and the enterprise are exactly the same entities, the Complaint has failed to adequately allege the existence of a separate enterprise.  *See Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44-45 (1st Cir. 1991) ("[T]he same entity cannot do double duty as both the RICO defendant and the RICO enterprise.").

### 2.    Plaintiffs Have Not Alleged a Common Purpose

The RICO statute defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Thus, there are two types of RICO enterprises: legal entities and associations-in-fact.  *Libertad*, 53 F.3d at 441 (citing *Turkette*, 452 U.S. at 580-81).  Here, because the Complaint alleges that the enterprise is composed of various separate legal entities, it necessarily is attempting to allege the existence of an association-in-fact enterprise.  An association-in-fact enterprise must be "a group of persons associated together for a *common purpose* of engaging in a course of conduct."  *Turkette*, 452 U.S. 583 (emphasis added).

Aside from vague and conclusory allegations, nothing in the Complaint suggests that TAG shared a common purpose with any of the Defendants, many of whom are TAG's competitors in the fuel oil market.  Rather, the allegations are at least equally consistent with independent action being taken by TAG devoid of any consultations or common, articulated joint purpose with its competitors.  This is plainly insufficient to establish an association-in-fact enterprise.  *See* Gregory P. Joseph, Civil RICO: A Definitive Guide 93-94 (3d ed. 2010) ("If the constituents are competitors, if they are acting independently or at cross purposes—or if the allegation of common purpose is purely conclusory—this prong will not be satisfied.").

### C.    The Complaint Fails to Allege a Pattern of Racketeering Activity

Under the RICO statute, a "pattern of racketeering activity" requires "at least two acts of racketeering activity, one of which occurred after [October 15, 1979] and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  The Complaint identifies mail and wire fraud as the predicate acts that it alleges constitute the "pattern of racketeering activity."  (Compl. ¶¶ 248-50, 272, 288).  As

explained below, the Complaint fails to adequately allege that TAG engaged in *any* predicate acts of mail or wire fraud.

      **1.**      **The Complaint Fails to Plead Mail and Wire Fraud with Particularity**

Federal Rule of Civil Procedure 9(b) requires that claims alleging fraud be pled with particularity. That rule extends to pleading predicate acts of mail and wire fraud under RICO. *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991). "To pass Rule 9(b) muster, the complaint must plead with particularity the time, place and contents of the false representations as well as the identity of the person making the[m] . . . ." *U.S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.*, 147 F. Supp. 2d 39, 46 (D. Mass. 2001); *see also Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991) ("[Rule 9(b)] entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations."); *Feinstein*, 942 F.2d at 42 (affirming dismissal of a civil RICO complaint, explaining that it failed to satisfy Rule 9(b)'s specificity requirement because plaintiffs did not "supply any . . . detail as to when the [allegedly fraudulent] communications occurred, where they took place, or what they contained").

The Complaint falls well short of the Rule 9(b) standard. The only allegation in the Complaint that even purports to allege wire fraud against TAG is a claim that on or about October 22, 2010, a Trafigura employee asked a laboratory to re-test fuel oil that had originally been shown to be non-compliant. (Compl. ¶ 110). The laboratory allegedly later sent an e-mail to the Trafigura employee, attaching a Certificate of Analysis showing that the fuel oil was compliant. (*Id.*). This allegation is deficient on its face. There is nothing wrongful or fraudulent about requesting that a sample be re-tested. Further, even if one were to assume that this

allegation was sufficient to constitute wire fraud (it is not), the Complaint would still only allege *one* predicate act by TAG, rather than the required two.[5]

Apart from this single allegation, the Complaint offers no other particularized claims of mail or wire fraud against TAG.  Instead, Plaintiffs resort to making generalized allegations that an undifferentiated group of Defendants made false statements in the course of the alleged scheme.  (*See, e.g.*, *id.* ¶ 249).  But lumping all the Defendants together and making blanket allegations against them fails to satisfy Rule 9(b)'s heightened pleading standard.  "If a claim involves multiple defending parties, a claimant usually may not group all claimed wrongdoers together in a single set of allegations.  Rather, the claimant must make specific and separate allegations against each defendant."  2 Moore's Federal Practice § 9.03[1][f]; *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'") (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)); *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (civil RICO claim dismissed because "it was devoid of specific allegations with respect to each defendant" and "plaintiffs lumped together all of the defendants in their allegations of fraud").

Plaintiffs' efforts to evade Rule 9(b)'s particularity requirement by alleging that TAG is guilty-by-association is plainly improper and must be rejected.  *See In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 209-210 (D. Mass. 2004) (dismissing a

---

[5]     The Complaint's only other Trafigura-specific allegations consist of unfounded accusations that have nothing to do with the present case.  These false and gratuitous accusations are clearly intended to smear Trafigura in an effort to mask the Complaint's numerous deficiencies.  This is wholly improper.

civil RICO claim against the defendant, explaining that "[w]hile industry-wide practices are relevant, this is essentially a guilt-by-association claim as there are no allegations concerning government investigations, internal documents, or specific fraudulent spreads relating to this particular [defendant]").  In fact, lumping Defendants together in this way even fails to satisfy the basic Rule 8(a) pleading standard, a *lower* standard than that required under Rule 9(b).  *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (explaining that "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy" the minimum Rule 8(a) pleading requirements); *see also Bagheri v. Galligan*, 160 F. App'x 4, 5 (1st Cir. 2005) (finding the complaint deficient because, among other things, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts, explaining that the district court's requirement of an amended complaint to remedy this deficiency "did not demand more than the minimum necessary to satisfy notice pleading standards"); *Grannum v. Massachusetts*, No. 13-cv-12042-FDS, 2014 WL 51627, at *3 (D. Mass. Jan. 6, 2014) (same).

### 2.    The Complaint Fails to Allege that TAG Specifically Intended to Defraud Plaintiffs

"In order to make out a civil claim under RICO by way of wire fraud, a plaintiff must allege that a group of defendants 'engaged in a scheme to defraud with the specific intent to defraud and that they used . . . the interstate wires in furtherance of the scheme . . . .'" *Cordero-Hernandez. v. Hernandez-Ballesteros*, 449 F.3d 240, 243-44 (1st Cir. 2006) (quoting *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790 (1st Cir. 1990)); *see also Mulligan v. Choice Mortg. Corp. USA*, No. CIV. 96-596-B, 1998 WL 544431, at *7 (D.N.H. Aug. 11, 1998) (same); *Schultz v. Rhode Island Hosp. Trust Nat. Bank, N.A.*, 94 F.3d 721, 731 (1st Cir. 1996) (explaining that lack of fraudulent intent on the defendant's part "dooms

14

plaintiffs' allegations" that the defendant committed predicate acts of mail or wire fraud to support a civil RICO claim).

Here, the Complaint alleges that TAG provided fuel oil to other oil companies that these entities then used to fulfill their own contracts with PREPA. (*See* Compl. ¶¶ 29, 31-32). It provides no details regarding the specifications of those contracts and says nothing to suggest that TAG violated their terms. Thus, the Complaint identifies no facts that would permit the Court to infer TAG specifically intended to defraud anyone—let alone Plaintiffs, who were indirect purchasers of electricity, and not of fuel oil—multiple layers removed from the fuel oil contracts between TAG and other oil companies.

### D.   Plaintiffs' Claims Are Time-Barred

Additionally, Plaintiffs' decision to delay more than a decade before bringing this lawsuit dooms their claims. When the allegations in a complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds the applicable limitations period, a district court should grant a 12(b)(6) motion if the complaint (and any other properly considered documents)[6] "fails to 'sketch a factual predicate' that would" provide a basis for tolling the statute of limitations. *Trans–Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509-10 (1st Cir. 1998)). Plaintiffs' claims accrued long ago. The Complaint not only fails to provide a basis for tolling the statute of limitations; it directly forecloses it.

The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *Rodriguez v. Banco Central Corp.*, 917

---

[6]   In considering a motion to dismiss for failure to state a claim, a court may properly consider "'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'" *Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40, 44 (1st Cir. 2012) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

F.2d 664, 665 (1st Cir. 1990). In a RICO case, a plaintiff's action accrues against a defendant on the date that plaintiff discovers or should have discovered their injury. *See Lares Group II v. Tobin*, 221 F.3d 41, 43 (1st Cir. 2000); *Rodriguez*, 917 F.2d at 665-66 (citing *Bankers Trust v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988)).

In the present case, Plaintiffs' alleged injury occurred when they were charged for the cost of fuel oil on their monthly electricity bill. The critical question then is when Plaintiffs knew or *should have known* of that injury. A plaintiff is considered to be on inquiry notice and the RICO statute of limitations starts to run "'even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry.'" *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012) (quoting *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011)). Such storm warnings are sufficient where "'a person of ordinary intelligence would consider it 'probable' that fraud had occurred.'" *Id.* (quoting *Koch,* 785 F. Supp. 2d at 114).

As the Complaint makes clear, storm warnings put Plaintiffs at least on inquiry notice of their alleged RICO injuries more than a decade ago. For example, the Complaint describes in detail a publicly available lawsuit from 2000 alleging that a laboratory routinely pressured its employees to alter test results of fuel oil provided to PREPA. (*See* Compl. ¶¶ 85-86). In August 2002, PREPA sued the same laboratory, alleging violations of RICO, common law fraud, and breach of contract, arguing that the laboratory "falsified test results and engaged in a conspiracy with fuel suppliers to provide Non-Compliant Fuel Oil for Compliant Fuel Oil prices." (*Id.* ¶¶ 91, 96). Indeed, the Complaint emphasizes that, during his deposition, PREPA's former laboratory director stated that PREPA was complicit in the conspiracy. (*Id.* ¶ 99).

The Complaint also discusses multiple internal PREPA audits, going back as far as January 1, 2002, that confirmed that "the Fuel Oil Supplier's [sic] delivery of Non-Compliant Fuel Oil was the rule, not the exception." (*Id.* ¶¶ 113, 123-47, 190). Additionally, *news reports* and other public documents revealed, as far back as 2004, that the Office of the Comptroller of the Commonwealth of Puerto Rico found that PREPA was overcharging its customers on their electricity bills in connection with its acquisition of fuel oil. *See, e.g.*, Carlos Marquez, *Is Prepa Prepared to Take Puerto Rico into the 21st Century?*, PUERTO RICO HERALD (July 14, 2005), http://www.puertorico-herald.org/issues2/2005/vol09n28/CBPrepaPrepared.html ("Over the past few years, the Comptroller's Office has issued seven reports covering various areas of Prepa's operations, including findings regarding the acquisition of fuel and overcharges on the electricity bill."); Puerto Rico Electric Power Authority Bond Offering, at 58 (March 26, 2010), http://www.aeepr.com/INVESTORS/DOCS/Financial%20Information/Official%20Statement/PREPA%20Revenue%20Bonds%20Series%20XX.pdf (*publicly disclosing* a June 2004 report finding that PREPA had overcharged its customers, resulting in seven lawsuits against PREPA demanding reimbursement for the alleged overcharges).[7] Plaintiffs were therefore on notice of

---

[7]   A trial court may consider matters of public record as well as those susceptible to judicial notice without converting a motion to dismiss into one for summary judgment. *See, e.g.*, *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008); *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003). Matters of public record ordinarily include documents from other court proceedings. *See, e.g.*, *E.I. Du Pont de Nemours & Co. v. Cullen*, 791 F.2d 5, 7 (1st Cir. 1986) (taking judicial notice of a complaint filed in a state action); *see also* 5A Wright & Miller, *Federal Practice and Procedure* § 1364, at 475-80 (1990) (stating that court judgments and orders, judicial notice of prior pleadings, and transcripts of prior court proceedings, among other evidence, may be taken into account in deciding a Rule 12(b)(6) motion).

The same holds true for newspaper articles with respect to judicial notice. *See, e.g.*, *Pearce v. Faurecia Exhaust Systems, Inc.*, 529 Fed. App'x 454, 459 (6th Cir. June 19, 2013) ("Plaintiffs fail to present any source typically used for judicial notice such as . . . a newspaper article.") (unpublished); *Garber v. Legg Mason Inc.*, 347 Fed. App'x 665 (2d Cir. Sept. 30, 2009) (explaining that "on a motion to dismiss" the court "may consider matters of which judicial notice may be taken, including the fact [of] press coverage . . . without regard to the truth of their

the facts giving rise to their potential claims, and the statute of limitations began to run, far more than four years before this lawsuit was filed.[8]

Recognizing that their claims are time-barred, Plaintiffs attempt to seek refuge behind the doctrine of fraudulent concealment.  (*See* Compl. ¶¶ 263-67).  But fraudulent concealment may toll a limitations period only in "exceptional circumstances."  *See Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Tech. Inc.*, 420 F. Supp. 2d 253, 264-65 (S.D.N.Y. 2006).  To meet this heavy burden, a plaintiff must establish three elements: (1) wrongful concealment of the relevant conduct by the defendant; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.  *See Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir. 1984).  Each of these three elements must be pleaded with particularity under Rule 9(b).  The Plaintiffs here miss the mark as to all three.

First, Plaintiffs have offered no facts to show that TAG or any other Defendant took steps to wrongfully conceal any aspect of the fuel oil contracts or deliveries.  Second, Plaintiffs were not prevented from discovering any of the facts underlying their claims since, as noted above, similar allegations about PREPA supposedly overcharging customers on their electricity bills appeared in public filings and news articles.  And third, the Complaint fails to plead that

---

content") (unpublished); *Ieradi v. Mylan Lab., Inc.*, 230 F.3d 594 (3d Cir. 2000) (holding that court of appeals may take judicial notice of newspaper article); *United States v. Moreno*, 815 F.2d 725, 755 (1st Cir. 1987) (noting that the "district court took judicial notice of the content of all news papers of general circulation in Puerto Rico during the period of 1979 to the present"); *United States v. Diaz-Bastardo*, 766 F. Supp. 1227, 1228-29 (D.P.R. 1991) (taking judicial notice of newspaper article) *aff'd*, 929 F.2d 798 (1st Cir. 1991); *Korwek v. Hunt*, 646 F. Supp. 953, 958 (S.D.N.Y. 1986) (taking judicial notice of substantial media coverage), *aff'd*, 827 F.2d 874 (2d Cir. 1987).

[8]   Since the Complaint is entirely lacking the who, the what, the where, and most importantly, the *when* of the purported scheme, (*see* Section II.C.1 *supra*), it is impossible to determine whether Plaintiffs have alleged subsequent RICO injuries within the statutory period.

Plaintiffs engaged in any kind of investigation or were otherwise diligent in trying to discover their claims. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997) ("[A] plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'").

Given their failure to plead any of the three elements with the particularity required under Rule 9(b), Plaintiffs are unable to properly invoke the fraudulent concealment doctrine, and their claims remain untimely.

### E.    Plaintiffs' RICO Claim is Barred by the Filed Rate Doctrine

Plaintiffs' RICO claim is also barred by the "filed rate" doctrine, which precludes suits against regulated utilities (such as PREPA) grounded on the allegation that the rates charged by the utility are unreasonable. *See, e.g., Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 416, 426 (1986); *Keough v. Chicago & Northwestern Ry.*, 260 U.S. 156, 163-65 (1922); *Texas & Pacific Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 448 (1907).

While the First Circuit has not yet considered a filed rate defense to a civil RICO claim, other Circuits have done so. *See, e.g., Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 20-22 (2d Cir. 1994) (rejecting civil RICO claim alleging that telephone companies obtained rate increases by providing misleading information to regulatory agencies); *H.J., Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 492 (8th Cir. 1992) (rejecting civil RICO claim alleging that telephone company bribed public utilities commission to set higher rates); *Taffet v. Southern Co.*, 967 F.2d 1483, 1491-94 (11th Cir. 1992) (en banc) (affirming dismissal of the plaintiffs' civil RICO claims pursuant to the filed rate doctrine). Plaintiffs here cannot maintain their civil RICO claim since their measure of damages will be "determined by comparing the approved rate and the rate that allegedly would have been approved absent the wrongful conduct." *H.J.*, 954 F.2d at 488 (internal citations omitted). Because the filed rate doctrine precludes Plaintiffs from challenging

19

the rates charged to them by PREPA, Plaintiffs cannot establish that they have been damaged. This precludes their claims, as Plaintiffs cannot sustain claims where they cannot prove that they have been damaged.

## III.   PLAINTIFFS FAIL TO ALLEGE A RICO CONSPIRACY CLAIM

In addition to a substantive RICO claim, Plaintiffs also allege a RICO conspiracy in violation of 18 U.S.C. § 1962(d).  In order to make out a claim under Section 1962(d), Plaintiffs must satisfy the same elements as a substantive RICO claim, plus they must show that each Defendant "knowingly *entered into an agreement* to commit two or more predicate crimes." *Miranda*, 948 F.2d at 47-48 (emphasis added); *see also COFACREDIT, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) ("To establish the existence of a RICO conspiracy, a plaintiff must prove 'the existence of an agreement to violate RICO's substantive provisions.'") (internal citations omitted).

As an initial matter, Plaintiffs' inability to establish a substantive RICO violation (*see* Section II *supra*) is fatal to their conspiracy claim.  *See Miranda*, 948 F.2d at 45 n.4 (RICO conspiracy count "need not be discussed separately" when substantive claim is dismissed for failure to plead a cognizable "enterprise"); *see also Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) ("Because appellants failed to allege the requisite substantive elements of a RICO claim under 18 U.S.C. § 1962(c), appellants' claim under 18 U.S.C. § 1962(d) . . . also fails."); *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit.").

Further, a conspiracy claim under Section 1962(d) "must charge that defendants knowingly entered into an agreement to commit two or more predicate crimes."  *See Miranda*,

20

948 F.2d at 47-48; *see also Feinstein*, 942 F.2d at 41 ("[E]ach defendant in a RICO conspiracy case must have joined knowingly in the scheme and been involved himself, directly or indirectly, in the commission of at least two predicate offenses.").  The Complaint's conspiracy allegations are perfunctory and fail to adequately allege an agreement between TAG and any of the other Defendants to commit criminal predicate acts.  And, as noted above, Plaintiffs fail to show the commission of predicate RICO acts by TAG.  "Like RICO claims generally . . . a RICO conspiracy claim that is alleged in wholly conclusory terms will not withstand a motion to dismiss."  *See Miranda*, 948 F.2d at 48; *cf. Brennan v. Hendrigan*, 888 F.2d 189, 195 (1st Cir. 1989) (conclusory allegations of conspiracy are insufficient to state a claim under 42 U.S.C. § 1983).   Accordingly, Plaintiffs' RICO conspiracy claim is without merit and should be dismissed.

## IV.   PLAINTIFFS FAIL TO ALLEGE AN UNJUST ENRICHMENT CLAIM

Finally, Plaintiffs claim that the Defendants were unjustly enriched through the alleged scheme.  (*See* Compl. ¶¶ 290-92).  To the extent Plaintiffs are seeking to use unjust enrichment to recover where their indirect purchaser claims are otherwise barred by *Utilicorp* and its predecessor, *Illinois Brick*, that effort is foreclosed.  *Cf. In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011) ("[I]t is beyond peradventure that indirect purchasers may not employ unjust enrichment to skirt the limitation on recovery imposed by [*Illinois Brick*].");  *In re Abbott Labs Norvir Antitrust Litig.*, 562 F. Supp. 2d 1080, 1090 (N.D. Cal. 2008), *reversed on other grounds*, 571 F.3d 930 (9th Cir. 2009) ("[B]ecause Plaintiffs' unjust enrichment claim appears to be premised wholly on [defendant's] alleged violation of federal antitrust law, *Illinois Brick* bars them from obtaining restitution based on those claims.").

Nor can Plaintiffs make out a claim for unjust enrichment on the merits.  The elements of unjust enrichment are: (1) occurrence of an enrichment; (2) a correlative loss; (3) a connection between the loss and the enrichment; (4) absence of cause to justify the enrichment; and (5) lack of a legal provision which precludes application of an enrichment without cause.  *See Puerto Rico Tel. Co. v. SprintCom, Inc.*, 662 F.3d 74, 97 (1st Cir. 2011) (citing *Hatton v. Municipality of Ponce*, 1994 P.R.-Eng. 909, 605, 134 D.P.R. 1001, 1010 (P.R. 1994)); *Ortiz Andújar v. E.L.A.*, 1998 P.R.-Eng. 580, 737, 122 D.P.R. 817, 823 (P.R. 1988).  Plaintiffs cannot satisfy the second or third elements, since as set forth above, the Complaint fails to plead that Plaintiffs suffered or that TAG proximately caused any loss.  (*See* Section II.A, *supra*).

Moreover, unjust enrichment is a doctrine based in equity which seeks to do justice in the absence of a contractual or legal obligation.  *Umpierre v. Torres Diaz*, 14 P.R. Offic. Trans. 578, 593, 114 D.P.R. 449, 462 (P.R. 1983).  Claims for unjust enrichment are "subsidiary in nature and will only be available in situations where there is no available action to seek relief."  *Medina & Medina v. Country Pride Foods Ltd.*, 631 F. Supp. 293, 302 (D.P.R. 1986) (citing *El Toro Electric Corp. v. Zayas*, 106 D.P.R. 98 (1977)), *aff'd*, 901 F.2d 181 (1st Cir. 1990); *Rivera–Muñiz v. Horizon Lines, Inc.*, 737 F. Supp. 2d 57, 65-66 (D.P.R. 2010)) ("[A]ctions for unjust enrichment are subsidiary to other remedies provided by law and [unjust enrichment] is unavailable if the plaintiff may seek other forms of relief."); *Díaz v. Aguayo*, 162 D.P.R. 801, 814–15 (P.R. 2004) ("Like other actions based on equity, the unjust enrichment claim shall proceed when the law provides no other cause of action.") (unofficial translation).  As direct customers of PREPA, Plaintiffs can seek contractual remedies for their alleged injuries, thus precluding their unjust enrichment claim.

## V.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

For the foregoing reasons, Plaintiffs' claims against TAG should be dismissed.  Although leave to amend is often freely given after a complaint is dismissed for failure to state a claim, leave is not required where amendment of the complaint would be futile.  *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (holding that a motion to amend should be denied as futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted").  While some of the deficiencies in Plaintiffs' Complaint stem from a failure to plead with adequate particularity, there are others that are beyond repair—such as the staleness of Plaintiffs' claims, Plaintiffs' inability to prove damages, Plaintiffs' status as indirect purchasers, and the fact that Plaintiffs' claims run afoul of the filed rate doctrine.  Since any further amendment of the Complaint would be fruitless, the Court should dismiss the Complaint with prejudice.

## <u>CONCLUSION</u>

Defendant Trafigura A.G. respectfully requests that the Court dismiss the Complaint against it.

Dated:          San Juan, Puerto Rico          QUINN EMANUEL URQUHART
                April 22, 2014                  & SULLIVAN LLP

                                                By: /s/ Daniel Salinas-Serrano
                                                    Daniel Salinas-Serrano
                                                    U.S.D.C.-P.R. No. 224006
                                                    danielsalinas@quinnemanuel.com

                                                    William A. Burck
                                                    David M. Orta
                                                    Stephen M. Hauss
                                                    777 6th Street, N.W., 11th Floor
                                                    Washington, D.C.  20001
                                                    Telephone:  (202) 538-8000
                                                    Facsimile:  (202) 538-8100

                                                    *Attorneys for Trafigura A.G.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing complies with the form and length requirements of Local Rule 7(d) of the

Local Rules of the United States District Court for the District of Puerto Rico because it has been

prepared in a proportionally spaced 12 point Times New Roman font and does not exceed 25

pages.


Dated:      San Juan, Puerto Rico          QUINN EMANUEL URQUHART
             April 22, 2014                & SULLIVAN LLP

                                          By: <u>/s/ Daniel Salinas-Serrano</u>
                                           Daniel Salinas-Serrano
                                           U.S.D.C.-P.R. No. 224006
                                           danielsalinas@quinnemanuel.com

                                           William A. Burck
                                           David M. Orta
                                           Stephen M. Hauss
                                           777 6th Street, N.W., 11th Floor
                                           Washington, D.C.  20001
                                           Telephone:  (202) 538-8000
                                           Facsimile:  (202) 538-8100

                                           *Attorneys for Trafigura A.G.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2015, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF System, which will send notice of such filing to all counsel of record.

Dated:      San Juan, Puerto Rico        QUINN EMANUEL URQUHART
             April 22, 2014              & SULLIVAN LLP

                                    By: /s/ Daniel Salinas-Serrano
                                        Daniel Salinas-Serrano
                                        U.S.D.C.-P.R. No. 224006
                                        danielsalinas@quinnemanuel.com

                                        William A. Burck
                                        David M. Orta
                                        Stephen M. Hauss
                                        777 6th Street, N.W., 11th Floor
                                        Washington, D.C.  20001
                                        Telephone:  (202) 538-8000
                                        Facsimile:  (202) 538-8100

                                        *Attorneys for Trafigura A.G.*