## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ISMAEL MARRERO ROLÓN, ANNE CATESBY JONES, JORGE VALDES LLAUGER, PUERTO RICO BATHROOM REMODELING, INC., PERFORMANCE CHEMICALS COMPANY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AUTORIDAD DE ENERGÍA ELÉCTRICA A/K/A PUERTO RICO ELECTRIC POWER AUTHORITY; WILLIAM RODNEY CLARK; EDWIN RODRIGUEZ; CESAR TORRES MARRERO; INSPECTORATE AMERICA CORPORATION; BUREAU VERITAS HOLDING, INC.; CORE LABORATORIES N.V. D/B/A SAYBOLT; ALTOL CHEMICAL ENVIRONMENTAL LABORATORY INC. D/B/A ALCHEM LABORATORY; ALTOL ENVIRONMENTAL SERVICES, INC. D/B/A ALTOL ENTERPRISES; PETROBRAS AMERICA INC.; PETROLEO BRASILEIRO S.A; CARLOS R. MENDEZ & ASSOCIATES; SHELL TRADING (US) COMPANY; PUMA ENERGY CARIBE LLC; PUMA ENERGY INTERNATIONAL, B.V.; TRAFIGURA A.G.; TRAFIGURA BEHEER, B.V.; PETROWEST, INC.; VITOL S.A., INC.; VITOL, INC.; JOHN DOES 1-100, <br><br> Defendants. | Civ. No. 3:15-cv-01167-JAG |

## DEFENDANT INSPECTORATE AMERICA CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED R. CIV. P. 12(B)(6) AND 9(B)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 4

STANDARD OF REVIEW .............................................................................................. 4

ARGUMENT ................................................................................................................... 6

    I.     THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF ...................... 6

          A.      Plaintiffs Lack Standing To Assert Their RICO Claims ............................ 6

          B.      Plaintiffs Fail To Plead An Actionable RICO Claim Against
                 Inspectorate ............................................................................................... 9

                 1.      The Complaint Is Based On Impermissible Group Pleading ......... 10

                 2.      The Meritless Allegations That Inspectorate Falsified Fuel
                        Test Reports Are Wholly Conclusory And Lack
                        Particularity .................................................................................. 11

                 3.      The Remaining Allegations Concerning Inspectorate Do
                        Not Constitute Mail Or Wire Fraud ............................................. 13

                 4.      The Complaint Fails To Allege Inspectorate's Use Of The
                        Mails Or Wires .............................................................................. 15

          C.      Plaintiffs Fail To Allege A Viable RICO Enterprise Adequately .............. 16

                 1.      The Alleged Enterprise Does Not Satisfy The
                        Distinctiveness Requirement ........................................................ 16

                 2.      The Alleged Enterprise Does Not Satisfy The Common
                        Purpose Requirement .................................................................... 18

          D.      The Complaint Is Time-Barred On Its Face .............................................. 19

          E.      The Complaints Fails To Plead Facts To Support An Inference of
                 Scienter ..................................................................................................... 20

          F.      Plaintiffs Fail To Allege A RICO Conspiracy Under 1962(d) ................. 21

    II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST
           ENRICHMENT ............................................................................................. 22

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
    544 F. Supp. 2d 199 (S.D.N.Y. 2008)......................................................................................10

*Aetna Cas. Sur. Co. v. P&B Autobody*,
    43 F.3d 1546 (1st Cir. 1994)........................................................................................9, 12

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987).....................................................................................................7, 19

*Alt. Sys. Concepts, Inc. v. Synopsis, Inc.*,
    374 F.3d 23 (1st Cir. 2004).......................................................................................10, 12

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)......................................................................................................6, 7

*Aponte v. Calderon*,
    284 F.3d 184 (1st Cir. 2002)............................................................................................23

*Arzuaga-Collazo v. Oriental Fed. Sav. Bank*,
    913 F.2d 5 (1st Cir. 1990)................................................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................5, 17

*Bessette v. Avco Fin. Servs., Inc.*,
    230 F.3d 439 (1st Cir. 2000)............................................................................................17

*Blue Cross of California v. Smithkline Beecham Clinical Labs., Inc.*,
    62 F. Supp. 2d 544 (D. Conn. 1998)................................................................................18

*Brooks v. Blue Cross & Blue Shield of Fla.*,
    116 F.3d 1364 (11th Cir. 1997) ......................................................................................10

*Camilo v. Nieves*,
    No. 10-2150, 2013 WL 6632801 (D.P.R. 2013)..............................................................21

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)..................................................................................................16, 17

*City of Oakland v. City of Detroit,*
  866 F.2d 839 (6th Cir. 1989) ...................................................................7

*Cordero-Hernandez v. Hernandez-Ballesteros,*
  449 F.3d 240 (1st Cir. 2006) .................................................................20

*Davila Uviles et al. v. RYS Int'l Corp.,*
  443 F. Supp. 2d 233 (D.P.R. 2006) (JAG) ........................................9, 10, 14, 15

*Dickey v. Kennedy,*
  583 F. Supp. 2d 183 (D. Mass. 2008) ....................................................21

*Dietrich v. Bauer,*
  76 F. Supp. 2d 312 (S.D.N.Y. 1999) ....................................................9, 10

*Doyle v. Hansbro, Inc.,*
  103 F.3d 186 (1st Cir. 1996) .................................................................16

*El Municipio de Cayey v. Soto Santiago,*
  131 D.P.R. 304, 317-19, 1992 P. ..........................................................23

*El Toro Electric Corp. v. Zayas Cintrón,*
  106 D.P.R. 98, 102, 6 P.R. Offic. Trans. 133 (1977) ............................23

*Fabrica de Muebles J.J. Alvarez, Inc. v. Westernbank de Puerto Rico,*
  No. 09-1558 (GAG), 2009 WL 4730776 (D.P.R. Dec. 4, 2009) ............16

*Feinstein v. Resolution Trust Corp.,*
  942 F.2d 34 (1st Cir. 1991) .................................................................9, 12

*Fiala v. B&B Enters.,*
  738 F.3d 847 (7th Cir. 2013) ..................................................................7

*Garber v. Legg Mason, Inc.,*
  347 Fed. App'x 665 (2d Cir. 2009) .......................................................20

*George Lussier Enters., Inc. v. Subaru of New Eng., Inc.,*
  393 F.3d 36 (1st Cir. 2004) .....................................................................6

*Giragosian v. Ryan,*
  547 F.3d 59 (1st Cir. 2008) ...................................................................19

*Hemi Group, LLC v. City of New York, N.Y.,*
  559 U.S. 1 (2010) ................................................................................6, 8

*Holmes v. Secs. Investor Prot. Corp.,*
  503 U.S. 258 (1992) .........................................................................6, 7, 8

iv

*In Kansas v. Utilicorp United, Inc.*,
  497 U.S. 199 (1990)...................................................................................................7

*In re Colonial Mortg. Bankers Corp.*,
  324 F.3d 12 (1st Cir. 2003)......................................................................................19

*In re Lupron Mktg. & Sales Practices Litig.*,
  295 F. Supp. 2d 148 (D. Mass. 2003) .....................................................................18

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*,
  MDL No. 1358(SAS), 2013 WL 5230814 (S.D.N.Y. July 17, 2013) .....................24

*In re Pham. Indus. Avg. Wholesale Price Litig.*,
  307 F. Supp. 2d 196 (D. Mass. 2004) .....................................................................18

*Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*,
  449 F.3d 85 (1st Cir. 2006)......................................................................................23

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).....................................................................................21

*Karon Bus. Forms, Inc. v. Skadia Ins. Co., Ltd.*,
  80 F.R.D. 501 (D.P.R. 1978) ...................................................................................24

*Katz v. Pershing, LLC*,
  672 F.3d 64 (1st Cir. 2012)........................................................................................4

*Koch v. Christie Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012).....................................................................................19

*Lares Group, II v. Tobin*,
  221 F.3d 41 (1st Cir. 2000)......................................................................................19

*Maggio v. Gerard Freezer & Ice Co.*,
  824 F.2d 123 (1st Cir. 1987).....................................................................................20

*Mani v. United Bank*,
  498 F. Supp. 2d 406 (D. Mass. 2007) ......................................................................21

*McCarthy v. Recordex Serv., Inc.*,
  80 F.3d 842 (3d Cir. 1996)..........................................................................................7

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*,
  904 F.2d 786 (1st Cir. 1990)......................................................................................20

*Medina & Medina v. Country Pride Foods, Ltd.*,
  631 F. Supp. 293 (D.P.R. 1986)................................................................................24

v

*Miranda v. Ponce Fed. Bank,*
  948 F.2d 41 (1st Cir. 1991)............................................................................5, 17, 22

*Molina v. Union Independiente Autentica de la AAA,*
  555 F. Supp. 2d 284 (D.P.R. 2008)....................................................................16

*N. Bridge Assocs., Inc. v. Boldt,*
  274 F.3d 38 (1st Cir. 2001)...............................................................................12

*OCASO S.A. Compañia De Seguros y Reaseguros v. P.R. Maritime Shipping Auth.,*
  915 F. Supp. 1244 (D.P.R. 1996)..................................................................23, 24

*Ortiz Andujar v. E.L.A.,*
  122 D.P.R. 817, 823, 22 P.R. Offic. Trans. 774 (1988)......................................24

*Puerto Rico Telephone Cp., Inc. v. SprintCom, Inc.,*
  662 F.3d 74 (1st Cir. 2011).................................................................................23

*Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer,*
  764 F.3d 1268 (10th Cir. 2014) ...........................................................................19

*Rodriguez v. Editor in Chief,*
  285 Fed. App'x 756 (D.C. Cir. 2008)...................................................................22

*Rodriguez v. Puerto Rico Inst. of Culture,*
  221 F. Supp. 2d 229 (D.P.R. 2002) (JAG)..........................................................12

*Rodríguez v. Banco Central,*
  917 F.2d 664 (1st Cir. 1990)...............................................................................19

*Roma Constr. Co. v. aRusso,*
  96 F.3d 566 (1st Cir. 1996).................................................................................23

*Rotella v. Wood,*
  528 U.S. 549 (2000)............................................................................................19

*Schultz v. Rhode Island Hosp. Trust Nat. Bank, N.A.,*
  94 F.3d 721 (1st Cir. 1996).............................................................................20, 21

*SEC v. Tambone,*
  597 F.3d 436 (1st Cir. 2010) (*en banc*)................................................................4

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
  473 U.S. 479 (1985)..............................................................................6, 7, 9, 12

*Shearson/Am. Express Inc. v. McMahon,*
  482 U.S. 220 (1987)...............................................................................................7

*Soto-Negron v. Taber Partners I,*
    339 F.3d 35 (1st Cir. 2003)................................................................................16

*Suna v. Bailey Corp.,*
    107 F.3d 64 (1st Cir. 1997)................................................................................12

*Texas Indus. v. Radcliff Materials, Inc.,*
    451 U.S. 630 (1981)..........................................................................................23

*United States v. Cheal,*
    389 F.3d 35 (1st Cir. 2004).........................................................................12, 15

*United States v. Diaz-Bastardo,*
    766 F. Supp. 1227 (D.P.R. 1991), *aff'd*, 929 F.2d 798 (1st Cir. 1991) .................20

*United States v. Fernandez,*
    892 F.2d 976 (11th Cir. 1989) ...........................................................................18

*United States v. Moreno,*
    815 F.2d 725 (1st Cir. 1987)..............................................................................19

*United States v. Turkette,*
    452 U.S. 576 (1981)..........................................................................................18

*Vazquez-Baldonado v. Domenech,*
    847 F. Supp. 2d 281 (D.P.R. 2012).................................................................9, 22

*Westernbank Puerto Rico v. Kachkar,*
    No. 07-1606, 2009 WL 6337949 (D.P.R. Dec. 10, 2009) .....................................24

**STATUTES**

18 U.S.C. § 1962(c) .................................................................................2, 4, 16, 17

18 U.S.C. § 1962(d) ...........................................................................................22

**RULES**

Fed. R. Civ. P. 9(b) ..............................................................................1, 5, 9, 10, 12

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 4, 5

Defendant Inspectorate America Corporation ("Inspectorate") respectfully submits this Memorandum of Law in Support of its Motion, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), to dismiss Plaintiffs' Class Action Complaint (Dkt. No. 1) (the "Complaint") for failure to state a claim upon which relief can be granted and failure to plead fraud with particularity.

## PRELIMINARY STATEMENT

Plaintiffs' RICO and unjust enrichment claims against Inspectorate, a fuel testing services company with a laboratory in Puerto Rico, suffer from insurmountable pleading defects. A RICO plaintiff cannot rely on generalized and conclusory assertions in leveling the serious accusation of a RICO violation, and the particularity requirement of Fed. R. Civ. P. 9(b) guards against charges based on nothing more than supposition. Yet, the Complaint against Inspectorate is nothing more than that.

Plaintiffs allege a fraudulent scheme dating back to 2002 in which an undifferentiated group of fuel suppliers (defined in the Complaint as the "Fuel Oil Suppliers") sold "non-compliant fuel oil" to PREPA. Inspectorate is alleged to be part of another group of undifferentiated defendants (the "Laboratory Participants"), all of which allegedly participated in the racketeering activity by falsifying certain fuel test reports known as Certificates of Analyses ("COA").

Prolix as it is vague, the Complaint barely mentions Inspectorate in nearly 300 paragraphs. Nowhere in the Complaint do plaintiffs allege—other than in the most conclusory terms—that Inspectorate falsified a fuel test report. Nowhere does the Complaint identify a single Inspectorate fuel test report with any specificity, including its contents, the author or the way in which it was allegedly false. And with respect to the *single* certificate of analysis mentioned in the Complaint allegedly prepared by Inspectorate, there is no allegation that it was

false, much less how it fits into any fraudulent scheme given that it was never intended for or provided to PREPA by Inspectorate.   Neither can Plaintiffs reconcile their allegation that Inspectorate participated in a scheme for the past 13 years with the undisputed fact that Inspectorate was only first authorized to conduct fuel sample analyses for PREPA in November 2014, just three months before the Complaint was filed. Cplt. ¶ 205.  The Complaint is devoid of a single allegation that Inspectorate received any kickbacks or attended "lavish parties" (or any other financial benefit for that matter) from participating in the alleged scheme.  Plaintiffs' RICO claims against Inspectorate rest primarily on clumping all of the Laboratory Participants together, which is impermissible as a matter of law.

The Complaint suffers from additional defects.  *First,* Plaintiffs cannot establish RICO standing, which requires them to allege a "concrete and actual" injury that was "directly and proximately" caused by Inspectorate's conduct.  Plaintiffs have not alleged, did not suffer, and cannot prove any harm because, as they admit, they would have paid exactly the same cost for electricity regardless of the alleged scheme.  Neither can Plaintiffs show that Inspectorate, a remote entity in the alleged causal chain of events, proximately caused any of their alleged injuries.

*Second*, Plaintiffs have failed to allege a viable RICO enterprise.  The RICO statute requires that a plaintiff bringing a claim under §1962(c) allege the existence of two distinct entities: (1) a person; and (2) an enterprise that is "not simply the same person referred to by a different name."  Because the Complaint alleges that *each and every defendant* comprises the enterprise, Plaintiffs' enterprise allegations fail.  Beyond that, the Complaint fails as a matter of law to assert that Inspectorate shared a "common purpose" with any other Defendant in the action.

2

*Third*, the Complaint is time-barred because, by their own allegations, and an array of publicly available information, Plaintiffs were on inquiry notice of their alleged injuries for more than a decade.  Because RICO claims are barred four years after a Plaintiff knew or should have known of his injuries, the Complaint is simply too late.

*Fourth*, the Complaint fails to plead any facts to support an inference of scienter against Inspectorate.  At best, the Complaint alleges that the Laboratory Participants joined the purported scheme to secure future or continued business.  But allegations relating to profit-seeking fail as a matter of law to support an inference of scienter, and there is no allegation that Inspectorate contracted additional business as a result of the scheme.

*Fifth*, Plaintiffs' failure to allege the required elements of a substantive RICO violation eviscerates their RICO conspiracy claim (Count II) as a matter of law.  Beyond that, the Complaint alleges no facts to support any meeting of the minds among the Defendants or Inspectorate's knowledge of the scheme in the first place.

*Finally*, Plaintiffs' unjust enrichment claim (Count III) fails as a matter of law.  Among other things, under Puerto Rico law, the unjust enrichment doctrine applies only when an injured party has no other legal redress.  Plaintiffs have invoked, albeit deficiently, a RICO claim. Therefore, the unjust enrichment safe-harbor is unavailing.  Even if Plaintiffs could assert an unjust enrichment claim simultaneously with their RICO claims (they cannot), an action for unjust enrichment requires a plaintiff to have suffered an economic injury and the defendant to have reaped a benefit from that injury.  Far from that scenario, Plaintiffs' allegations demonstrate not only that they have suffered no cognizable injury, but the Complaint is devoid of a single allegation that Inspectorate benefited financially or otherwise from the alleged scheme.

## FACTUAL BACKGROUND

Plaintiffs allege that PREPA and certain of its employees conspired with fuel oil suppliers and laboratories (which allegedly tested the specifications of the fuel oil provided by the suppliers) to engage in a scheme where PREPA ordered and paid for more expensive Compliant Fuel Oil, but instead accepted less expensive Non-Compliant Fuel Oil provided by the fuel oil suppliers.  Cplt. ¶¶ 1-2, 74-75.  In return for receiving payment for a more expensive grade of fuel oil than what they actually provided, the fuel oil suppliers allegedly agreed to pay PREPA and its agents "undisclosed kickbacks, including lavish trips and parties."  *Id*. ¶¶ 1-2, 75-76, 263-64, 271, 274-75.  There is no allegation that Inspectorate or any other laboratory received any kickback, trip or party.  Nevertheless, Plaintiffs allege that to facilitate the scheme, the laboratories supposedly falsified certificates of analyses, certifying that Non-Compliant Fuel Oil provided by the fuel oil suppliers was compliant, in exchange for repeat business.  *Id*. ¶¶ 2, 73-74.  According to the Complaint, "[a]s a result of this scheme, PREPA overpaid its fuel suppliers for fuel oil and passed through the entire cost of the Non-Compliant Fuel Oil to Plaintiffs and the Class on their regular monthly electricity bills."  *Id.* ¶ 1.  Plaintiffs bring this action on behalf of "[a]ll persons or entities that paid [PREPA] for electricity during the period January 1, 2002 to the present."  *Id.* ¶ 251.

## STANDARD OF REVIEW

Dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is warranted when "'the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'"  *Katz v. Pershing, LLC*, 672 F.3d 64, 73 (1st Cir. 2012) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*)).  To survive a motion to dismiss under Rule 12(b)(6), the complaint must assert a plausible claim and set forth significant factual allegations to support the claim.  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  Neither a "'formulaic recitation of the elements of a cause of action'" nor "'naked assertion[s] [of fact]'" devoid of "'further factual enhancement'" is sufficient to withstand dismissal.  *Id.* (*quoting Twombly*, 550 U.S. at 555, 557).  To satisfy the standard under *Twombly* and *Iqbal*, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (*quoting Twombly*, 550 U.S. at 570).  Moreover, a complaint containing nothing more than conclusory allegations will not suffice.  *See Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir. 1991) (citations omitted) ("The complaint must be anchored in a bed of facts, not allowed to float freely on a sea of bombast. That is to say, a court assessing a claim's sufficiency has no obligation to take matters on blind faith; we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation.") (internal quotation marks omitted) (citation omitted).

Complaints alleging civil violations of the RICO statute must be pled with particularity pursuant to Fed. R. Civ. P. 9(b).  The First Circuit has stated:

> [I]n cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants.  .  .  . it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering.  Hence, to avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged.

*Miranda*, 948 F.2d at 44 (citations omitted).  For the reasons set forth below, the Complaint must be dismissed against Inspectorate because it does not come close to alleging sufficient facts to satisfy the Plaintiffs' pleading burden.

## ARGUMENT

### I.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

#### A.   Plaintiffs Lack Standing To Assert Their RICO Claims

It is well-established that plaintiffs have standing to bring RICO claims only if they have "been injured in [their] business or property by the conduct constituting the [RICO] violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Plaintiffs' claims against all Defendants fail to meet that threshold test because Plaintiffs do not allege any harm to their business or property.[1]

We write separately on this issue to highlight that Plaintiffs allege no facts to demonstrate that Inspectorate directly and proximately cause their alleged injury, as required by long-standing RICO precedent.  *See Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).  The Supreme Court has held repeatedly that RICO claims are subject to dismissal at the pleading stage for failure to plead a "direct causal link between a defendants' conduct and a plaintiff's injury."  *See Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 18 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (concluding that seller did not have standing to sustain a RICO claim against competitor who was able to charge lower prices by defrauding the state tax authority).  There must be "some direct relation between the injury asserted and the injurious conduct alleged."  *George Lussier Enters., Inc. v. Subaru of New Eng., Inc.*, 393 F.3d

---

[1] For the sake of brevity and efficiency, Inspectorate joins and incorporates herein the applicable sections of the memoranda of law filed by defendants Puma Energy Caribe (Dkt. No. 81-1) ("Puma Br.") and Trafigura A.G. (Dkt. No. 82) ("Trafigura Br.") as they pertain to the following sections below*:*  I(A) (standing); I(D) (statute of limitations); and II (unjust enrichment).  We supplement those points herein, particularly as they relate to Inspectorate.  Inspectorate also joins in and incorporates herein Trafigura's arguments in support of dismissal based on the "filed rate doctrine."  (Dkt. No. 82 at 19-20).

36, 54 (1st Cir. 2004) (internal quotation marks omitted).  Moreover, that link must not be "too remote."  *Holmes*, 503 U.S. at 271.[2]

The Supreme Court has determined that customers of public utilities to do not have standing on the precise facts of this case, albeit in the antitrust context.[3]  *In Kansas v. Utilicorp United, Inc.*, 497 U.S. 199 (1990), the Court held as a bright-line rule that customers of public utilities (such as Plaintiffs in this case) lack standing to sue the utilities' fuel suppliers—even when those utilities pass on 100 percent of their fuel costs to the customers—because the customers are only *indirect* purchasers.  *Id.* at 207-08.  Dismissal of Plaintiffs' RICO claims against Inspectorate is even more compelling here than in *Utilicorp* because Inspectorate is at a minimum two steps *further removed* from the utility.  As alleged in the Complaint, Inspectorate conducted sample analyses for the fuel suppliers—but there is no allegation that Inspectorate provided any such services to PREPA itself.  Cplt. ¶¶ 64, 109-112, 205.  If the causal link between a customer of a utility and the utility's supplier is too attenuated to support standing, *Utilicorp*, 497 U.S. at 207, the chain is even more remote between a utility customer on the one hand (Plaintiffs) and a contractor of a supplier on the other (Inspectorate).

---

[2] Plaintiffs assert that the causal chain is sufficient here because "Defendants have always known that, because of the structure of the Puerto Rico electrical system, PREPA would not bear the costs of the fuel oil."  Cplt. ¶ 278.  This is tantamount to an argument that the alleged harm was *foreseeable*, but RICO requires a "direct causal connection," not just a foreseeable one.  *Anza*, 547 U.S. at 460.

[3] Courts have consistently held that principles underlying antitrust law are applicable to the federal RICO statute, parts of which are "patterned directly on § 4 of the Clayton Act."  *City of Oakland v. City of Detroit*, 866 F.2d 839, 851 (6th Cir. 1989).  For example, in *Holmes*, the Supreme Court drew on the "indirect purchaser rule" from antitrust law in ruling that plaintiffs could not sustain their RICO claims. 503 U.S. at 267-68.  In applying antitrust principles, the Court noted that "[w]e have repeatedly observed that Congress modeled § 1964(c) on the civil-action provision of the federal antitrust laws, § 4 of the Clayton Act . . . ."  *Id.* at 267 (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 241 (1987); *Sedima*, 473 U.S. at 485); *see e.g.*, *Fiala v. B&B Enters.*, 738 F.3d 847, 851 (7th Cir. 2013) (applying the "indirect purchaser rule" from antitrust law to RICO claims); *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996) (noting that "antitrust standing principles apply equally to allegations of RICO violations").

The attenuated chain of causation is further illustrated by Inspectorate's alleged place in the scheme.  Despite Plaintiffs' conclusory and undifferentiated allegations that the Laboratory Participants falsified "thousands" of fuel test reports, Cplt. ¶¶ 73, 249, there is only a single allegation in the Complaint (other than "naked assertions") that Inspectorate conducted a sample analysis for *any* fuel supplier (and no allegation that Inspectorate conducted any sample analyses for PREPA).   Putting aside Plaintiffs' impermissible pleading tactic of grouping all of the laboratories together, *see infra* Section I(B)(1), Inspectorate's place in the chain is far too remote to confer standing on Plaintiffs.  As generally alleged, a fuel supplier would purportedly hire a laboratory to analyze a shipment of fuel oil.  Cplt. ¶¶ 62, 82.  Next, the laboratory would complete a COA reflecting the results of its analysis and provide the COA to the fuel supplier.  Cplt. ¶¶ 62, 110, 159.  In certain instances, the COA was then forwarded by the fuel oil supplier to PREPA.  Cplt. ¶¶ 110–11.  As alleged, PREPA subsequently compared the COA against test results obtained from another lab, which apparently was hired independently by PREPA to conduct another sample analysis.   Cplt. ¶¶ 82.   In the event of a "dispute" between the laboratories' test results, the fuel was allegedly tested by yet another laboratory.  Cplt. ¶ 82.  According to the Complaint, after all of the test results reflected Compliant Fuel Oil (regardless of whether the fuel oil was "non-compliant"), PREPA accepted the fuel shipment.  Cplt. ¶ 82.  PREPA itself sets the price of Fuel Oil and bills its customers (the Plaintiffs) for the cost of the fuel oil.  Cplt. ¶¶ 3, 158-59.  As demonstrated by this alleged multi-stepped scheme, the link between the Labs' test results and the ultimate payment by customers of purported electricity overcharges goes well beyond the "first step" to confer standing on Plaintiffs.  *See Hemi*, 559 U.S. at 10 (noting the "'general tendency of the law . . . not to go beyond the first step' . . . [in] proximate cause inquiries under RICO" (*quoting Holmes*, 503 U.S. at 271–72)).  Accordingly,

8

the Complaint should be dismissed against Inspectorate because Plaintiffs lack standing to bring their claims.

###### B.     Plaintiffs Fail To Plead An Actionable RICO Claim Against Inspectorate

Plaintiffs' RICO claims are based on the allegations that Defendants engaged in a fraudulent scheme to sell Non-Compliant Fuel Oil to PREPA in violation of PREPA's contractual obligation to purchase Compliant Fuel Oil.  In order to state a RICO claim, however, Plaintiffs are required to plead facts sufficient to satisfy four requisite elements; namely "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima*, 473 U.S. at 496.

Allegations of mail and wire fraud in support of a RICO claim must also meet the pleading requirements of Fed. R. Civ. P. 9(b).  *Davila Uviles et al. v. RYS Int'l Corp.*, 443 F. Supp. 2d 233, 237 (D.P.R. 2006) (JAG); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991) ("It is settled law in this circuit that Fed. R. Civ. P. 9(b), which requires a party to plead fraud with particularity, extends to pleading predicate acts of mail and wire fraud under RICO.").  Moreover, to establish a "pattern" of racketeering activity, "the evidence must show that *each* defendant committed two acts of racketeering activity within the span of ten years." *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994) (emphasis added); *see also Vazquez-Baldonado v. Domenech*, 847 F. Supp. 2d 281, 286 (D.P.R. 2012) ("To prove a RICO conspiracy, a plaintiff must show . . . that each defendant agreed to commit, or in fact committed, two or more predicate acts.").  Thus, Plaintiffs must allege the precise fraudulent conduct committed by *each* defendant.   "Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations."  *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 329-30 (S.D.N.Y. 1999) (internal quotation marks omitted) (holding that securities fraud allegations against a group of defendants pleaded as the "Selling Defendants" did not satisfy the

Rule 9(b) standard); *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1380-82 (11th

Cir. 1997); *Davila Uviles*, 443 F. Supp. 2d at 238 (disregarding allegations in which plaintiffs

pleaded only that "*defendants* engaged in a pattern of racketing activity").

### 1.    The Complaint Is Based On Impermissible Group Pleading

The Complaint is infected by group pleading.  Throughout the Complaint, Plaintiffs

employ the tactic of using defined terms, including the "Laboratory Participants", "Fuel Oil

Supplier Participants" and "PREPA Participants."   *E.g.*, Cplt. ¶¶ 73, 75, 108, 152-53, 258.

Plaintiffs' main allegation against the Laboratory Participants (among which Inspectorate is

clumped in) is that they "falsified the results of thousands of fuel test reports."  Cplt. ¶ 73.

Courts consistently reject this type of group pleading.  *See e.g.*, *Dietrich*, 76 F. Supp. 2d at 329;

*Ambrosia Coal*, 482 F.3d at 1317; *380544 Canada, Inc. v. Aspen Technology, Inc.*, 544 F. Supp.

2d 199, 230 (S.D.N.Y. 2008); *Davila Uviles*, 443 F. Supp. 2d at 238.

Moreover, the Complaint is replete with allegations that the "Laboratory Participants"

committed mail and wire fraud without identifying the "who, what, where, and when" of the

allegedly false representations.  *E.g.*, Cplt. ¶¶ 91, 107, 123; Plaintiffs' RICO Case Statement

Pursuant To Standing Order (the "RICO Statement") (Dkt. No 35) at 15, 18-19, 21-22;[4] *see Alt.*

*Sys. Concepts, Inc. v. Synopsis, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).  Specifically, there are no

facts from which the Court could determine *who* (among the Laboratory Participants) authored

the purported "false reports", *how* they were false, the *contents* of the misrepresentations, or *why*

they were allegedly fraudulent.   These generalized and conclusory allegations, grouping

defendants together in describing the wrongful conduct, are fatal to a RICO claim on a 12(b)(6)

---

[4] Plaintiffs had the opportunity to describe the fraudulent conduct with particularity in their RICO Case Statement.   However, the RICO Case Statement does nothing more than parrot the conclusory and defective pleading allegations in the Complaint.

motion.  The foregoing pleading deficiencies are all the more glaring with respect to Inspectorate because Plaintiffs admit that Inspectorate was not authorized to conduct a sample analysis *for* PREPA until November 2014.  Cplt. ¶¶ 64, 205.

### 2.     The Meritless Allegations That Inspectorate Falsified Fuel Test Reports Are Wholly Conclusory And Lack Particularity

Plaintiffs' allegation that Inspectorate "submitted test results to PREPA .  .  . throughout the Class Period [*i.e.*, 2002 onward]" cannot be squared with their admission that "[u]ntil 2014 Defendants Alchem and Saybolt were authorized to provide Sample Analysis for PREPA; *Inspectorate was not*."  *Compare* RICO Case Statement at 10, *with* Cplt. ¶ 64 (emphasis added). Other than the conclusory allegation that Inspectorate "submitted test results to PREPA", there is not *one* allegation in the Complaint that Inspectorate submitted a single fuel test report to PREPA by mail, wire or otherwise.  By virtue of this fact alone, the RICO claim against Inspectorate must be dismissed.

Plaintiffs concoct an alternative theory by alleging that Inspectorate committed mail and wire fraud by submitting false COAs directly to the Fuel Oil Supplier Participants, which were then somehow relied upon by the PREPA Fuel Office.  Cplt. ¶¶ 73-74, 109-112, 179.  However, the Complaint identifies only *one instance* in which Inspectorate allegedly transmitted a COA to a Fuel Oil Supplier, and the facts alleged provide no basis for Plaintiffs to state a RICO claim based on them.   Namely, Defendants Trafigura and Carlos R. Méndez and Associates ("Méndez") allegedly approached Inspectorate and commissioned the laboratory to sample a batch of fuel on behalf of Petrobras that had already been deemed "non-compliant" by a laboratory called Alchem (also a defendant in this case).  Cplt. ¶ 110.  Inspectorate determined that the fuel oil sample was compliant and allegedly e-mailed a COA to Tarafigura and Méndez reflecting that finding.  *Id.*  In turn, Méndez allegedly forwarded the COA to PREPA's fuel

office.   The Complaint alleges that a PREPA audit team later determined that Inspectorate's results were "*technically invalid*."  Cplt. ¶ 111 (emphasis added).  Notably, there is no allegation in the Complaint that the COA was *false* or that it constituted a misrepresentation; no facts alleged that Inspectorate sent the COA to PREPA; no allegation that Inspectorate knew that the COA was sent to PREPA by Méndez or that PREPA in fact relied on the COA in accepting the fuel oil shipment.   Moreover, there is no allegation as to "how" or "why" the COA was "technically invalid" and no description of the contents of the COA.  The Complaint also fails to plead facts to support an inference that Alchem's initial "non-compliant" finding itself was "valid."   Accordingly, the Complaint fails to meet the pleading requirements of Rule 9(b).[5] There are likewise no facts pleaded from which the Court could determine that Inspectorate "knowing and willingly" falsified the fuel test report with the "specific intent to defraud" Plaintiffs.  *See United States v. Cheal*, 389 F.3d 35, 41 (1st Cir. 2004).

Even if the foregoing COA could somehow constitute a predicate act—it cannot— Plaintiffs are required to plead *two* predicate acts to meet the required "pattern" requirement under the RICO statute.  *See Aetna*, 43 F.3d at 1560 (each defendant must commit two acts of racketeering); *Sedima,* 473 U.S. at 496.  Accordingly, the Complaint against Inspectorate must be dismissed because Plaintiffs have failed to establish a "pattern" of racketeering activity with respect to Inspectorate.

---

[5] Rule 9(b) requires that claimants alleging fraud "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), a complaint must aver "the who, what, where, and when of the allegedly false or fraudulent representation."  *Alt. Sys. Concepts, Inc.*, 374 F.3d at 29 (1st Cir. 2004); *see also N. Bridge Assocs., Inc. v. Boldt*, 274 F.3d 38, 43 (1st Cir. 2001) (RICO allegations must "state the time, place and content of the alleged mail and wire communications perpetrating that fraud.")  The complaint also must "explain why the statements were fraudulent."  *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997).  In other words, "[i]t is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial."  *Feinstein*, 942 F.2d at 42; *see also Rodriguez v. Puerto Rico Inst. of Culture*, 221 F. Supp. 2d 229, 239 (D.P.R. 2002) (JAG) ("[t]he [RICO] complaint must be anchored in a bed of facts, not allowed to float freely on a sea of bombast").

> **3.      The Remaining Allegations Concerning Inspectorate Do Not Constitute Mail Or Wire Fraud**

The only other allegations in the entire Complaint that involve Inspectorate are Plaintiffs' assertions regarding PREPA's audits of Inspectorate prior to November 2014.[6]  The allegations are legally irrelevant because the Complaint fails to allege any statement of fact—much less a misrepresentation—made by any representative of Inspectorate in connection with the two PREPA audits.  Ergo, the allegations concerning the PREPA audits cannot constitute mail or wire fraud.

Specifically, Plaintiffs allege that Inspectorate's Quality Manual purportedly mailed by Inspectorate to PREPA following a PREPA audit in 2008 "demonstrate[s] Inspectorate's compliance with the scheme to defraud implemented by the Fuel Oil Cartel Enterprise."  Cplt. ¶¶ 182-86.  According to the Complaint, the Quality Manual authorized Inspectorate to send fuel oil samples determined by Inspectorate to be "non-compliant" to another laboratory to obtain a "compliant" result and to then report the "compliant" result on an Inspectorate fuel test report.  Cplt. ¶ 186.  The Complaint also alleges that the Quality Manual authorized amendments to fuel test reports "without defining criteria or parameters for the amendment."  Cplt. ¶ 184.  Even if Plaintiffs were accurately citing to the Quality Manual (they are not, but we accept their allegations as true for purposes of this motion), there are no allegations that—*in fact*—(i) Inspectorate sent fuel oil samples deemed "non-compliant" to another lab to obtain "compliant" results, or (ii) that Inspectorate amended a single test result.  Moreover, the Complaint does not allege that the Quality Manual was somehow *false* or misleading.  Finally, given the fact that Inspectorate allegedly *disclosed* the Quality Manual to PREPA at a time that it was not

---

[6] According to the Complaint, PREPA conducted audits of Inspectorate's laboratory from time to time in response to purported requests by Inspectorate that PREPA authorize Inspectorate as a qualified vendor. *See e.g.*, Cplt. ¶ 174.  Despite these requests—allegedly dating back to "the late 1990s," Cplt. ¶ 173—PREPA did not authorize Inspectorate as a qualified vendor until November 2014, Cplt. ¶ 205.

authorized to conduct fuel sample analyses for PREPA, there can be no serious argument that Inspectorate intended to defraud Plaintiffs *vis à vis* PREPA.

The allegations with respect to the 2010 PREPA audit fair no better.  Plaintiffs allege that during an audit conducted by PREPA in 2010 "[e]ach of the Laboratory Participants told the audit team that they had received instructions directly from the Fuel Oil Office to always certify Non-Compliant Fuel Oil as compliant, regardless of test results."  Cplt. ¶ 124.  This allegation fails to allege a mail and wire fraud claim for several reasons.  First, the Complaint fails to identify where the Inspectorate audit took place, who at Inspectorate allegedly "told" the audit team that they were instructed to certify Non-Compliant Fuel oil as "compliant" fuel oil, or when (other than *some time* in 2010) the audit occurred.  The purported fact that some unnamed person allegedly told a PREPA auditor that he had received instructions to certify Non-Compliant Fuel as "compliant" is not mail or wire fraud.  Absent facts supporting an allegation that Inspectorate indeed falsified fuel test reports—and there are none (*see supra* Section I(B)(2))—the alleged "instruction" is legally irrelevant.  Second, the allegation suffers from the fact that Inspectorate is clumped together with the other Laboratory Participants, an impermissible pleading tactic employed by Plaintiffs time and time again.  Finally, there is absolutely no mention of the interstate mail or wires, and a face-to-face meeting (which apparently forms the basis of this allegation) cannot constitute racketeering activity under RICO because the mails or wires are not implicated.  *See Davila Uviles et al.*, 443 F. Supp. 2d at 238.

Finally, Plaintiffs' allegations with respect to the 2012 PREPA audit of Inspectorate boil down to one salient fact; namely, that in 2012, PREPA apparently learned that an unidentified fuel testing instrument in Inspectorate's lab had been last "calibrated" in 2006 and that "calibration of instruments should be conducted annually."  Cplt. ¶¶ 193-96.  Plaintiffs allege that "on information and belief, Inspectorate continues to use their 2006 calibration data to this

14

day."  There are absolutely no facts pleaded to support this conclusory allegation.  Nor are there any facts pleaded to support the conclusory allegation that "calibration of instruments should be conducted annually."  Even if that allegation was true—and it is not—Plaintiffs do not allege facts to support any theory of fraud based on it.  Moreover, there is no allegation that Inspectorate's calibration of the instrument in 2006 was designed to produce false results; no allegation that using a 2006 calibration after 2006 was intended to produce false results; and no allegation that false results were in fact produced.  Plaintiffs' allegations in this regard are a red herring.[7]

### 4.     The Complaint Fails To Allege Inspectorate's Use Of The Mails Or Wires

Other than the conclusory allegations that so-called "falsified" reports were "sent" "submitted" or "reported," the Complaint fails to allege Inspectorate's use of the interstate mail or wires with any specificity.  *See e.g.*, Cplt. ¶¶ 37, 104, 114, 183, 237.  Pleading use of the interstate mail or wires with specificity is a requirement to alleging a mail or wire fraud claim, *Cheal*, 389 F.3d at 41, and Plaintiffs' conclusory references to the use of the mail or wires leaves the Court to speculate as to whether they were sent by "wire, mail, smoke signal, or carrier pigeon."  *Davila Uviles*, 443 F. Supp. 2d at 238.

---

[7] Similarly, Plaintiffs point to an alleged question raised to PREPA's auditor by Rudy Gordian, Inspectorate's lab manager, on a phone call following the audit some time in 2012 (no specific date or time):  "What happens if we calibrate the instruments and then the next barge [of Fuel Oil] is out of specs?"  Cplt. ¶ 200 (alteration in original).  The *auditor* allegedly responded:  "Then all of the work you have done [for the Fuel Oil Suppliers] for the last 6 years will be out of specs [or out of compliance]."  Cplt. ¶ 200 (alteration in original) (emphasis added).  Plaintiffs point to no statement by Mr. Gordian to constitute mail or wire fraud—the allegation is therefore legally irrelevant.

**C.      Plaintiffs Fail To Allege A Viable RICO Enterprise Adequately**

**1.      The Alleged Enterprise Does Not Satisfy The Distinctiveness Requirement**

To state a claim under § 1962(c), a plaintiff must allege facts from which it can be determined that RICO violations were conducted by an enterprise through a pattern of racketeering activity. *Soto-Negron v. Taber Partners I*, 339 F.3d 35, 38 (1st Cir. 2003). Section 1962(c) creates liability only for a "person employed by or associated with any enterprise." 18 U.S.C. § 1962(c). "Enterprise" is defined to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id*. § 1961(4).

To meet the requirements of the statute, a RICO plaintiff bringing claims under § 1962(c) must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Because the two entities must be pleaded separately, "the unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it." *Doyle v. Hansbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) (*quoting Arzuaga-Collazo v. Oriental Fed. Sav. Bank*, 913 F.2d 5, 6 (1st Cir. 1990)). Plaintiffs wholly ignore this clear requirement.

Indeed, Plaintiffs must allege that "some 'person' other than the 'enterprise'" conducted the enterprise's affairs. *Id.* The enterprise, therefore, cannot be alleged to be a defendant as well: "Even if the enterprise is blameworthy for the underlying actions, it cannot also be answerable as a defendant under § 1962(c)." *Fabrica de Muebles J.J. Alvarez, Inc. v. Westernbank de Puerto Rico*, No. 09-1558 (GAG), 2009 WL 4730776, at *4 (D.P.R. Dec. 4, 2009); *accord Molina v. Union Independiente Autentica de la AAA*, 555 F. Supp. 2d 284, 294-95 (D.P.R. 2008) ("Nor can an employer entity be held liable under *respondeat superior* or other

agency doctrine as long as it also plays the role of enterprise."). Thus, courts "require some distinctness between the RICO defendant and the RICO enterprise." *Cedric Kushner*, 533 U.S. at 162; *e.g., Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 448 (1st Cir. 2000) ("[I]t is well settled in this circuit that the 'person' identified under § 1962(c) must be distinct from the 'enterprise.'"); *Miranda*, 948 F.2d at 44-45 ("[T]he same entity cannot do double duty as both the RICO defendant and the RICO enterprise.").

Plaintiffs' RICO claim must be dismissed because the enterprise is defined in the Complaint to consist of each and every Defendant. Indeed, Plaintiffs group all of the Defendants together to define the "Fuel Oil Cartel *Enterprise*." *See e.g.*, Cplt. ¶ 2 (emphasis added); RICO Statement at 2 (alleging that "[t]he scheme to defraud was perpetuated by the Fuel Oil Cartel Enterprise defined as and comprised of" PREPA and its employees and agents, the Fuel Oil Supplier Participants, the Laboratory Participants, and other John Does).

In response to a question in the Court's RICO questionnaire whether the "persons" are separate from the "enterprise" (as they must be), Plaintiffs merely parrot the statute in a conclusory fashion, alleging that "[d]efendant 'persons' are distinct from the Fuel Oil Cartel Enterprise," and then state non-responsively that the enterprise "consists of a group of 'persons' associated together . . . ." RICO Case Statement at 31. But that pleading tactic is precisely the type of "formulaic recitation of the elements of a cause of action" that "will not do." *Twombly*, 550 U.S. at 555. The death knell for Plaintiffs comes in response to Question No. 3 in the RICO questionnaire, asking Plaintiffs to "list the wrongdoers, other than the defendants listed above and state the alleged misconduct of each wrongdoer." The response is telling: "At this point in time, it is uncertain whether there are other RICO violators and wrongdoers." *See* RICO Statement at 11. In other words, as plead, the distinctiveness requirement is not—and cannot— be met.

## 2. The Alleged Enterprise Does Not Satisfy The Common Purpose Requirement

The Complaint attempts to satisfy the "enterprise" requirement by alleging the existence of an "association-in-fact enterprise," *i.e.,* a "group of persons associated together for a *common purpose* of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). The only common purpose pleaded with respect to Inspectorate is the conclusory allegation that the Laboratory Participants "falsified laboratory test results . . . in exchange for the continued business" of the Fuel Oil Suppliers. Cplt. ¶ 2; *accord id.* ¶ 74 (to "secure future work"). This is precisely the type of allegation that fails to support the "common purpose" requirement. In *In re Pham. Indus. Avg. Wholesale Price Litig.*, 307 F. Supp. 2d 196 (D. Mass. 2004), plaintiffs alleged that profit-motive was the common purpose uniting a group of drug manufacturers and drug-price publishers who allegedly disseminated fraudulently inflated price information. *Id.* at 204. The court rejected the alleged enterprise because "[t]he participants, as described, do not share a common purpose more specific than that common to many human endeavors, the reaping of a profit." *Id.* Numerous cases are in accord.[8] As these cases recognize, "common purpose" allegations based solely on profit-motive are insufficient where, as here, the alleged enterprise is engaged primarily in legitimate commercial activity. And here, the enterprise is in fact alleged to have a "legal" purpose: "to provide fuel oil to Puerto Rico for the combustion of electricity." *See* RICO Statement at 32. Accordingly, the Complaint must be dismissed for Plaintiffs' failure to allege an enterprise.

---

[8] *See. e.g., Blue Cross of California v. Smithkline Beecham Clinical Labs., Inc.*, 62 F. Supp. 2d 544, 552-53 (D. Conn. 1998) (holding that, in a RICO suit involving billing practices of a medical laboratory, the broad purpose of "billing and testing for medical services" failed to show that the alleged enterprise "shared a 'common purpose'"); *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 174 (D. Mass. 2003) ("Without the elements of organization and control, whether informal or formal, and the existence of an association, whether legal or factual, any group of persons sharing a common occupation, *e.g.*, urologists and lawyers, and a similar motive, *e.g.*, greed, could be held to constitute a RICO enterprise."); *United States v. Fernandez*, 892 F.2d 976, 986 (11th Cir. 1989).

18

### D.     The Complaint Is Time-Barred On Its Face

A civil RICO claim is subject to a four-year statute of limitations.  *Rotella v. Wood*, 528 U.S. 549, 557 (2000); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  The statutory clock begins to run when a plaintiff knew, or should have known, of his injury—in this case, fuel overcharges contained on Plaintiffs' monthly electric bills.  *See Lares Group, II v. Tobin*, 221 F.3d 41, 43-44 (1st Cir. 2000); *Rodríguez v. Banco Central*, 917 F.2d 664, 666 (1st Cir. 1990).  Further, "discovery of a RICO 'injury' does not require a plaintiff to definitively determine *who* actually committed the predicate act to trigger the limitations period, so long as the plaintiff is aware of the injury."  *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1278 (10th Cir. 2014) (emphasis added).  The limitations rule is particularly significant in light of civil RICO's objective of "encouraging prompt litigation to combat racketeering."  *Rotella*, 528 U.S. at 557 n.3.

There can be no question that Plaintiffs were on inquiry notice of their injury based on, among other things, a host of publicly available information or "storm warnings" dating back more than ten years.  Cplt. ¶¶ 66, 73, 103, 105-106, 158, 245-247; *Koch v. Christie Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012).  Indeed, the Puerto Rico Herald reported on July 14, 2005 that the Office of the Comptroller of the Commonwealth of Puerto Rico had determined that PREPA was overcharging customers for the cost of Fuel Oil—the *same exact injury* alleged in the Complaint.  *See* Carlos Márquez, *Is PREPA Prepared To Take Puerto Rico Into The 21st Century?* THE PUERTO RICO HERALD (July 14, 2005);[9] Puerto Rico Electric Power Authority

---

[9] *See* http://www.puertorico-herald.org/issues2/2005/vol09n28/CBPrepaPrepared.html.  A trial court may consider matters of public record as well as those susceptible to judicial notice without converting a motion to dismiss into one for summary judgment.  *See e.g.*, *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008); *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003). This includes newspaper articles. *See e.g.*, *United States v. Moreno*, 815 F.2d 725, 755 (1st Cir. 1987) (noting that the "district court took judicial notice of the contents of all newspapers of general circulation in Puerto Rico during

Bond Offering at 58 (March 26, 2010) (publicly disclosing a June 2004 report finding that PREPA had overcharged its customers for electricity, resulting in seven lawsuits against PREPA demanding reimbursement of the alleged overcharges).[10]   These foregoing examples seriously undermine Plaintiffs' contention that they "were not and could not have been on notice of Defendants' scheme until at least on or about May 12, 2014."   For the same reasons, and for the additional reason that Plaintiffs do not allege that they conducted any "reasonable diligence" in the face of such apparent "storm warnings," Plaintiffs' conclusory fraudulent concealment allegations are meritless.   Cplt. ¶¶ 263-67; Trafigura Br. (Dkt. No. 82) at 18-19; *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987) (holding that to plead a fraudulent concealment claim a court engages in a two-step inquiry into whether (1) plaintiffs received "'storm warnings' of the possibility of fraud"; and (2) if so, whether plaintiff exercised "reasonable diligence" in investigating that fraud).

### E.   The Complaints Fails To Plead Facts To Support An Inference of Scienter

A RICO plaintiff asserting predicate acts of mail and wire fraud "must show that [defendants] engaged in a scheme to defraud with the *specific intent to defraud* and that they used the United States mails and/or the interstate wires in furtherance of the scheme."   *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790 (1st Cir. 1990) (emphasis added); *accord Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 243-44 (1st Cir. 2006); *Schultz v. Rhode Island Hosp. Trust Nat. Bank, N.A.*, 94 F.3d 721, 731 (1st Cir. 1996) (explaining that lack of fraudulent intent on the defendant's part "dooms plaintiffs' allegations").

---

the period of 1979 to the present"); *Garber v. Legg Mason, Inc.*, 347 Fed. App'x 665, 669 (2d Cir. 2009) (unpublished) (taking judicial notice of "the *fact* that press coverage .  .  . contained certain information, without regard to the truth of [its] contents."); *United States v. Diaz-Bastardo*, 766 F. Supp. 1227, 1228-29 (D.P.R. 1991) (taking judicial notice of newspaper article), *aff'd*, 929 F.2d 798 (1st Cir. 1991).

[10] *See* http://www.aeepr.com/investors/docs/Financial%20Information/Official%20Statement/ PREPA%20Revenue%20Bonds%20Series%20XX.pdf

The Complaint fails to allege Inspectorate's scienter.  At most, the Complaint alleges that the Laboratory Participants had a motive to join the scheme in "exchange for . . . continued business" from the Fuel Oil Suppliers.  Cplt. ¶ 2; *accord id.* ¶ 74 ("to secure future work"); RICO Case Statement at 3, 31, 34-35 ("Laboratory Participants received purchase orders, and promises of future purchase orders").[11]  Such group-pleading as to the Laboratory Participants is impermissible, as discussed above.  Beyond that fatal pleading defect, the Complaint contains no facts to support the allegations that Inspectorate had such intent, that it in fact secured any continued or additional business, any promise of additional business, or any specific purchase order.  And even if the Complaint did plead such facts, those allegations would nonetheless be insufficient to survive a motion to dismiss on the issue of scienter.  *Camilo v. Nieves*, No. 10-2150, 2013 WL 6632801, at *4 (D.P.R. 2013) ("it is not enough that the allegation for scienter be based solely on financial interest or motive and opportunity to mislead, because such a finding would expose virtually every company in the United States that experiences a downturn in stock price" to liability under securities laws); *see e.g.*, *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) ("Motives that are generally possessed by most corporate directors and officers do not suffice [to plead scienter].")

F.    **Plaintiffs Fail To Allege A RICO Conspiracy Under 1962(d)**

In order to state a RICO conspiracy claim, Plaintiffs must sufficiently plead "allegations that each RICO co-conspirator '[i] knowingly joined the conspiracy and [ii] involved himself or herself, directly or indirectly, in the commission of at least two predicate offenses.'"  *Dickey v. Kennedy*, 583 F. Supp. 2d 183, 188 (D. Mass. 2008) (quoting *Mani v. United Bank*, 498 F. Supp.

_____

[11] While Plaintiffs allege that the "Fuel Oil Supplier Participants agreed to pay the PREPA Participants undisclosed kickbacks, including lavish trips and parties," Cplt. ¶ 75; *accord id*. ¶¶ 76, 263-64, 271, 274-75, there are no such allegations as to Inspectorate.

2d 406, 411 (D. Mass. 2007)); *see also Vazquez-Baldonado v. Domenech*, 847 F. Supp. 2d 281, 286 (D.P.R. 2012).[12]  To satisfy 18 U.S.C. § 1962(d), "[t]he complaint must allege some factual basis for a finding of a conscious agreement among the defendants."  5B Federal Procedure, Lawyers Edition § 10:234; *see e.g.*, *Rodriguez v. Editor in Chief*, 285 Fed. App'x 756, 759 (D.C. Cir. 2008) (unpublished) (finding that a "meeting of the minds . . .  [is] a necessary element of a conspiracy"); 5B Federal Procedure, Lawyers Edition § 10:234.

The Complaint fails to allege any "meeting of the minds" among the defendants.  *See Miranda,* 948 F.2d at 47-48.  Plaintiffs assert no facts from which the Court can conclude that Inspectorate reached a "conscious agreement" with any another defendant for *any* purpose, let alone to defraud Plaintiffs.  Indeed, no facts are pleaded to infer Inspectorate's knowledge of the scheme in the first place.  Plaintiffs' RICO Statement makes this point saliently:  when required to "describe in detail the alleged conspiracy," Plaintiffs merely parrot their conclusory mantra:  "As demonstrated in detail above, Defendants' co-conspirators .  .  . have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including the use of the mails and wires to further their scheme to defraud Plaintiffs and the Class of money."  RICO Statement at 37.  Like RICO claims generally, however, "a RICO conspiracy claim that is alleged in wholly conclusory terms will not withstand a motion to dismiss."  *See Miranda*, 948 F.2d at 48.  Accordingly, the Court should dismiss Count II (RICO conspiracy).

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT

In federal question cases like this one, "federal courts have the power to formulate federal common law when a federal rule of decision is necessary to protect 'uniquely federal interests'

---

[12] As a threshold issue, because Plaintiffs fail to allege the required elements of a substantive RICO violation, their RICO conspiracy claim necessary fails.  *See Miranda*, 948 F.2d at 45 n.4 (RICO conspiracy count "need not be discussed separately" when substantive claim is dismissed for failure to plead a cognizable enterprise).

or when Congress has given the courts the power to develop substantive law." *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 571 (1st Cir. 1996) (*quoting Texas Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)). RICO is not such an area of the law. *See id.* at 571-73 (holding that RICO neither implicates "uniquely federal interest" nor falls within an area in which Congress has given courts the authority to develop substantive law). Therefore, a federal common law unjust enrichment cause of action pursuant to alleged RICO violations simply does not exist.

Moreover, in disputes arising in Puerto Rico, the U.S. Court of Appeals for the First Circuit only resorts to the common law of the United States where the Puerto Rico Supreme Court itself relies on common law to fill gaps otherwise unaddressed by civil law principles. *See e.g., Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85, 92 (1st Cir. 2006); *Aponte v. Calderon*, 284 F.3d 184, 197 (1st Cir. 2002). The Supreme Court of Puerto Rico has never identified gaps in the civil law as to unjust enrichment claims. On the contrary, it has always made clear that the doctrine of unjust enrichment is deeply rooted in the civil law tradition. *See e.g.*, *El Municipio de Cayey v. Soto Santiago*, 131 D.P.R. 304, 317-19, 1992 P.R.-Eng. 754, (1992).[13]  Accordingly, any stateside common law claim that may be contained in Count III should be dismissed.

Under Puerto Rico law, the unjust enrichment doctrine applies only when an injured party has no other legal redress. *See e.g., El Toro Electric Corp. v. Zayas Cintrón*, 106 D.P.R. 98, 102, 6 P.R. Offic. Trans. 133 (1977) ("It cannot be sustained under the doctrine of unjust enrichment . . . because in order for it to take effect . . . it would be necessary for the aggrieved person to have no other action to obtain redress." (internal quotation marks omitted));

---

[13] The First Circuit and the United States District Court for the District of Puerto Rico exclusively rely on Puerto Rico law when adjudicating unjust enrichment claims. *See e.g.*, *Puerto Rico Telephone Cp., Inc. v. SprintCom, Inc.*, 662 F.3d 74, 97 (1st Cir. 2011); *OCASO S.A. Compañia De Seguros y Reaseguros v. P.R. Maritime Shipping Auth.*, 915 F. Supp. 1244, 1262-63 (D.P.R. 1996).

*Westernbank Puerto Rico v. Kachkar*, No. 07-1606 (ADC/BJM), 2009 WL 6337949, at * 29 (D.P.R. Dec. 10, 2009) (rejecting that unjust enrichment may survive if there are other applicable statutes, even if the action under such statutes  are not actionable); *OCASO, S.A., Compañia De Seguros y Reaseguros v. Puerto Rico Maritime Shipping Auth.*, 915 F. Supp. 1244, 1263 (D.P.R. 1996) (dismissing unjust enrichment claim at pleading stage because it was actionable under other statutory predicates); *Medina & Medina v. Country Pride Foods, Ltd.*, 631 F. Supp. 293, 302 (D.P.R. 1986) (same); *Karon Bus. Forms, Inc. v. Skadia Ins. Co., Ltd.*, 80 F.R.D. 501, 505-06 (D.P.R. 1978) (same); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litig.*, MDL No. 1358(SAS), 2013 WL 5230814, at *11 (S.D.N.Y. July 17, 2013) (same).  Under Puerto Rico law, Count III of the Complaint must be dismissed because Plaintiffs are simultaneously seeking redress through their RICO claims.

Even if Plaintiffs could clear this hurdle, the unjust enrichment claim would still fail.  Specifically, a claim for unjust enrichment is premised on an allegation of an economic injury suffered by a plaintiff and a concomitant benefit reaped by the defendant.  *See Municipio de Quebradillas v. Corp. Salud Lares*, 180 D.P.R. 1003, 1019-20 (2011); *Ortiz Andujar v. E.L.A.*, 122 D.P.R. 817, 823, 22 P.R. Offic. Trans. 774 (1988).  Because Plaintiffs have not sufficiently alleged any economic injury (*see supra* Section I(A)), the unjust enrichment claim must fail.  By the same token, Plaintiffs have not alleged that Inspectorate received any economic benefit as a result of the so-called scheme.

## **CONCLUSION**

For the reasons set forth herein, Defendant Inspectorate America Corporation respectfully requests that this Court dismiss the Complaint against it with prejudice.

Dated:   San Juan, Puerto Rico
        May 1, 2015

                    Respectfully submitted,

                    BRACEWELL & GIULIANI LLP

                    /s/ Michael C. Hefter
                    Michael C. Hefter
                    Seth M. Cohen
                    1251 Avenue of the Americas
                    New York, New York 10020
                    (212) 508-6185 (tel)
                    (800) 404-3970 (fax)

                    Kevin A. Ewing
                    2000 K Street, NW
                    Washington, DC 20006

                    PIETRANTONI MENDEZ & ALVAREZ LLC

                    Popular Center, 19th Floor
                    208 Ponce de León Avenue
                    San Juan, Puerto Rico 00918
                    (787) 274-1212 (tel)
                    (787) 274-1470 (fax)

                    Nestor M. Mendez
                    USDC-PR 118409

                    Oreste R. Ramos
                    USDC-PR 216801

                    *Attorneys for Inspectorate America Corporation*

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the form and length requirements of Local Rule 7(d) of the Local Rules of the United States District Court for the District of Puerto Rico because it has been prepared in a proportionately spaced 12 point Times New Roman font and does not exceed 25 pages.

Dated:  San Juan, Puerto Rico
        May 1, 2015

/s/ Michael C. Hefter
Michael C. Hefter
**BRACEWELL & GIULIANI LLC**
1251 Avenue of the Americas
New York, New York 10020
(212) 508-6185 (tel)
(800) 404-3970 (fax)
michael.hefter@bgllp.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2015, I electronically filed the foregoing with the Clerk of this Court using the CM/ECM System, which will send notice of such filing to all counsel of record.

Dated:  San Juan, Puerto Rico
        May 1, 2015

/s/ Michael C. Hefter
Michael C. Hefter
**BRACEWELL & GIULIANI LLC**
1251 Avenue of the Americas
New York, New York 10020
(212) 508-6185 (tel)
(800) 404-3970 (fax)
michael.hefter@bgllp.com