## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ISMAEL MARRERO ROLÓN, ANNE CATESBY JONES, JORGE VALDES LLAUGER, PUERTO RICO BATHROOM REMODELING, INC., PERFORMANCE CHEMICALS COMPANY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AUTORIDAD DE ENERGÍA ELÉCTRICA A/K/A PUERTO RICO ELECTRIC POWER AUTHORITY; WILLIAM RODNEY CLARK; EDWIN RODRIGUEZ; CÉSAR TORRES MARRERO; INSPECTORATE AMERICA CORPORATION; BUREAU VERITAS HOLDING, INC.; CORE LABORATORIES N.V. D/B/A SAYBOLT; ALTOL CHEMICAL ENVIRONMENTAL LABORATORY INC. D/B/A ALCHEM LABORATORY; ALTOL ENVIRONMENTAL SERVICES, INC. D/B/A ALTOL ENTERPRISES; PETROBRAS AMERICA INC.; PETROLEO BRASILEIRO S.A; CARLOS R. MÉNDEZ & ASSOCIATES; SHELL TRADING (US) COMPANY; PUMA ENERGY CARIBE LLC; PUMA ENERGY INTERNATIONAL, B.V.; TRAFIGURA A.G.; TRAFIGURA BEHEER, B.V.; PETROWEST, INC.; VITOL S.A., INC.; VITOL, INC.; JOHN DOES 1-100, <br><br> Defendants. | Civ. No. 15-1167 <br><br><br> CLASS ACTION COMPLAINT <br><br> **JURY DEMAND** |

## STUSCO'S MOTION TO DISMISS

## TABLE OF CONTENT

Page

I.    INTRODUCTION ..............................................................................................1

II.   FACTUAL BACKGROUND ............................................................................2

    A. Summary of allegations in the Complaint.................................................2

    B. Only a few allegations relate to STUSCO ...............................................3

III.  STANDARD FOR DISMISSAL ......................................................................4

IV.   DISCUSSION ...................................................................................................6

    A. The Complaint must be dismissed under Fed.R.Civ.P. 12(b)(1) because
    Plaintiffs lack standing. ...............................................................................6

        i.     Plaintiffs are "Indirect Purchasers" and, thus, categorically barred
              from seeking redress under RICO. ...................................................6

        ii.    Plaintiffs also lack standing because the alleged damages, if any,
              are too remote and, hence, there is no proximate causation under
              RICO...................................................................................................9

              a. The amount of Plaintiffs' damages attributable to the
                 violation, as opposed to other independent factors, is too
                 difficult to ascertain. ................................................................12

              b. Providing a remedy for Plaintiffs would force the Court to
                 adopt complicated rules apportioning damages and may
                 expose Defendants to duplicative recoveries ...........................13

              c. The directly injured victim (i.e., PREPA) has the capacity
                 to vindicate its own rights, either directly, or through a
                 newly-created administrative agency: the Puerto Rico
                 Energy Commission. ..................................................................14

    B. The Complaint must be dismissed under Fed.R.Civ.P. 12(b)(6) because it
    fails to state sufficient facts to assert a RICO claim ..........................16

              a. Plaintiffs fail to specifically plead the existence of
                 *conduct* (*i.e.*, mail and wire fraud) ............................................18

              b. Plaintiffs fail to properly plead the existence of an
                 *enterprise*..................................................................................20

              c. Plaintiffs also fail to show a *pattern*.........................................22

    C. Even if Plaintiffs' allegations against STUSCO were properly pled --
    which they are not -- the claims would nonetheless be time-barred ...............25

    D. Plaintiffs' RICO claim is barred by the filed rate doctrine .....................29

    E. The state law claim for unjust enrichment should also be dismissed...............30

V.    CONCLUSION ..............................................................................................32

## LEGAL INDEX

**CASES:**                                                                                           Page

Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143 (1987) ...................6, 8, 25

Ashcroft v. Iqbal, 556 U.S. 662 (2009)........................................................................4

Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006) ............................................11

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)............................................4, 13

Boyle v. United States, 556 U.S. 938 (2009) ...............................................................22

Cedric Kushner Ltd. v. King, 533 U.S. 158 (2001) .....................................................20

Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992)................ 7, 11-13

H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989) ............................... 23-25

Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977)................................................ 6, 7-9

Kansas v. Utilicorp United, Inc., 497 U.S. 199 (1990)........................................... 8-9

Keough v. Chicago & Northwestern Ry., 260 U.S. 156 (1922) ...................................29

Rotella v. Wood, 528 U.S. 549 (2000) .........................................................................25

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)..........................................9, 16, 25

Square D. Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409 (1986) ..............29

Texas & Pacific Ry. v. Abilene Cotton Oil Co., 204 U.S. 426 (1907) .........................29

United States v. Turkette, 452 U.S. 576 (1981)...........................................................20

Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439 (1st Cir. 2000) ................................20

Callahan v. United States, 426 F.3d 444 (1st Cir. 2005) ....................................... 27-28

Camelio v. American Fed'n, 137 F.3d 666 (1st Cir. 1998).....................................9, 11

Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12 (1st Cir. 2000)...................16

Feinstein v. Resolution Trust Corp., 942 F.2d 34 (1st Cir. 1991) ......................... 23-24

Figueroa Ruiz v. Alegria, 896 F.2d 645 (1st Cir.1990) .............................................5

Fleet Credit Corp. v. Sion, 893 F.2d 441 (1st Cir. 1990)...................................... 23-24

Lares Group, II v. Tobin, 221 F.3d 41 (1st Cir. 2000)....................................................................25

Miranda v. Ponce Federal Bank, 948 F.2d 41 (1st Cir. 1991) .........................................5, 17, 22, 35

Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1 (1st Cir. 2011)..............................................5, 17

Ramos–Martínez v. United States, 638 F.3d 315, 321 (1st Cir. 2011)...........................................27

Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168 (1st Cir. 1995)...............................................30

Rodriguez-O'Ferral v. Trebol Motors Corp., 1993 U.S. App. LEXIS 17077 (1st Cir. 1993) ...........................................................................................................................19

Salois v. Dime Sav. Bank, FSB, 128 F.3d 20 (1st Cir.1997) ........................................................27

Truck Drivers & Helpers Union v. NLRB, 993 F.2d 990 (1st Cir.1993)......................................27

Frankel v. Cole, 313 Fed.Appx. 418 (2d Cir. 2009) ............................................................... 25-26

In re Merrill Lynch P'ship Litig., 154 F.3d 56 (2d Cir. 1998) .....................................................26

Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843 (2d Cir. 1986) ....................................................8

Rombach v. Chang, 335 F. 3d 164 (2d Cir. 2004). .......................................................................19

Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17 (2d Cir. 1994) .......................................................30

McCarthy v. Recordex Serv., 80 F.3d 842 (3d Cir. 1996)..............................................................8

Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1991) ...................................................24

Parcoil Corp. v. Nowsco Well Service, Ltd., 887 F.2d 502 (4th Cir. 1989)..................................24

County of Oakland v. Detroit, 866 F.2d 839 (6th Cir. 1989) .........................................................8

Trollinger v. Tyson Foods, Inc., 370 F.3d 602 (6th Cir. 2004) ....................................................8

Carter v. Berger, 777 F.2d 1173, 1175-76 (7th Cir. 1985) ...........................................................8

Evans v. City of Chicago, 434 F.3d 916 (7th Cir. 2006) ...............................................................9

Fiala v. B&B Enters., 738 F.3d 847, 851 (7th Cir. 2013) .............................................................8
Hill v. Tangherlini, 724 F.3d 965 (7th Cir. 2013) ........................................................................9

In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599 (7th Cir. 1997) ...........................................................................................................................................8

James Cape & Sons Co. v. PCC Construction Co., 453 F.3d 396 (7th Cir. 2006) ........................8

Sutherland v. O'Malley, 882 F.2d 1196 (7th Cir. 1989).................................................................24

<u>H.J., Inc. v. Northwestern Bell Tel. Co.</u>, 954 F.2d 485 (8th Cir. 1992) ........................30

<u>Hexcel Corp. v. Ineos Polymers, Inc.</u>, 681 F.3d 1055 (9th Cir. 2012) ...........................27

<u>Moore v. Kayport Package Exp., Inc.</u>, 885 F. 2. 531 (9th Cir. 1989)...........................18

<u>Swartz v. KPMG LLP</u>, 476 F.3d 756 (9th Cir. 2007) ...................................................18

<u>Taffet v. Southern Co.</u>, 967 F.2d 1483 (11th Cir. 1992) .............................................30

<u>Big Rivers Elec. Corp. v. Thorpe</u>, 1995 U.S. Dist. LEXIS 21970 (W.D. Ky. 1995) ....................8

<u>Birch St. Recovery Corp. v. Thomas</u>, 2000 U.S. Dist. LEXIS 12172 (D.N.H. 2000)  ...........................................................................................................5, 23

<u>Macomb Interceptor Drain Drainage Dist. v. Kilpatrick</u>, 896 F. Supp. 2d 650 (E.D. Mich. 2012) ...............................................................................................8

<u>Iron Workers Local Union No.17 Ins. Fund v. Philip Morris, Inc.</u>, 29 F. Supp. 2d (N.D. Ohio 1998) ................................................................................................8

<u>Chera v. Chera</u>, 2000 U.S. Dist. LEXIS 13749 (E.D.N.Y. 2000)....................................12

<u>Circiello v. Alfano</u>, 612 F. Supp. 2d 111 (D. Mass. 2009)........................................9-10

<u>Dickey v. Kennedy</u>, 583 F. Supp. 2d 183 (D. Mass. 2008).....................................26-27

<u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 307 F. Supp. 2d 196 (D. Mass. 2004) ....................................................................................................18

<u>Kerik v. Tacopina</u>, No. 14 CV 2374 JGK, 2014 WL 6791615 (S.D.N.Y. 2014)........................26

<u>Libertad v. Welch</u>, 854 F. Supp. 19 (D.P.R. 1993) .................................................21

<u>Migdalia Negrón et al v. Caleb Brett USA., Inc. d/b/a Inchcape Testing Services</u>, Civil No. 95-2478, 1999 U.S. Dist. LEXIS 22109 (D.P.R. 1999)...................................29

<u>Ponce Fed. Bank, F.S.B. v. Muñoz</u>, 1996 U.S. Dist. LEXIS 15103 (D.P.R.1996) .....................21

<u>Rivera-Muñiz v. Horizon Lines Inc.</u>, 737 F. Supp. 2d 57 (D.P.R. 2010) .........................31

<u>Sebago, Inc. v. Beazer East, Inc.</u>, 18 F. Supp. 2d 70 (D. Mass. 1998) ...................11, 18

<u>Uviles v. RYS Int'l Corp.</u>, 443 F. Supp. 2d 233 (D.P.R. 2006) ...............................18-19

<u>Vazquez-Castro v. United States</u>, No. CIV. 13-1230CCC, 2014 WL 5302972 (D.P.R. 2014) .............................................................................................26-27

Westernbank P.R. v. Kachkar, 2009 U.S. Dist. LEXIS 126405, 2009 WL 6337949 (D.P.R. 2009) ............................................................................................................. 31-32

World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486 (S.D.N.Y. 2007), aff'd, 328 F. App'x 695 (2d Cir. 2009) ...............................................................10

E.L.A. v. Colé Vázquez, 164 D.P.R. 608 (2005) ........................................................31

Municipio de Cayey v. Soto Santiago, 131 D.P.R. 304, 1992 P.R.-Eng. 754 (1992) .........................................................................................................................30

Ortiz Andújar v. Commonwealth of Puerto Rico, 122 D.P.R. 817, 1988 P.R.-Eng. 580 (1988) .................................................................................................................30

## LAWS & REGULATIONS:

28 U.S.C. § 1367(c) ...................................................................................................30

Racketeer-Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961(4) and (5), 1962(c), (d), and 1964(c) ......................................2, 9-10, 16, 20, 21-22

Section 4 of the Clayton Act, 15 U.S.C. § 15 ...............................................................6

Puerto Rico Energy Transformation and RELIEF Act of May 27, 2014 (Act No. 57-2014), Article 6.3(ll) and Article 6.4(a)...................................................................15,

Fed. R. Civ. P. 9(b) .................................................................................................5, 18

Fed. R. Civ. P. 12(b)(1) and (6) ..............................................................4, 6, 9, 16, 20, 32

Article 2.02 of the P.R. General Corporate Law, 14 P.R. Laws Ann. § 2652 ..............13

## BOOKS/PUBLICATIONS:

5A FEDERAL PRACTICE AND PROCEDURE § 1297..........................................................5

Gregory P. Joseph, Civil RICO: A Definitive Guide 93–94 (3d ed. 2010) .................22

2 Moore's Federal Practice § 9.03[1][f] ...................................................................18

II-Puig Brutau, Compendio de Derecho Civil at 621 (Barcelona, Ed. Bosch, 1997) ....................3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ISMAEL MARRERO ROLÓN, *et al.*, | Civil No. 15-01167 (JAG) |
| Plaintiffs, | |
| v. | CLASS ACTION COMPLAINT |
| AUTORIDAD DE ENERGÍA ELÉCTRICA a/k/a PUERTO RICO ELECTRIC POWER AUTHORITY, *et al.*, | JURY TRIAL DEMANDED |
| Defendants. | |

**STUSCO'S MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

**COMES NOW** SHELL TRADING (US) COMPANY (hereafter "STUSCO"), through its undersigned counsel, and respectfully requests that the Honorable Court dismiss the Complaint (Docket No. 1) forthwith, with prejudice, for the reasons discussed below.

## I. INTRODUCTION

The Complaint in this case was filed by the wrong plaintiffs against the wrong defendants, based on the wrong statutes, and should be dismissed forthwith.

For one thing, Plaintiffs have no standing to sue, both because they are indirect purchasers of oil and therefore categorically lack standing to sue under RICO, and because any harm they may have suffered was not proximately caused by any of the actions of which they complain. Moreover, the allegations in the Complaint fail to state any claims upon which relief can be granted. For example, the RICO claims fail to meet the heightened pleading standard applicable to fraud claims, generally, let alone to the pleading requirements for RICO claims. Plaintiffs' allegations are generic and conclusory and, among other things, do not provide sufficient details with respect to the *what*, *when*, *where*, and *how* of the alleged predicate acts of

racketeering. Indeed, with respect to STUSCO specifically, there are no allegations of fraud or racketeering at all. And, even if any of these claims had been properly pled, they are time-barred because the harm alleged was known or should have been known more than a decade ago.

Similarly, Plaintiffs' claims of unjust enrichment fail as a matter of law because there is no adequate causal relationship between the acts alleged and any harm that Plaintiffs may have suffered and, in any case, because other remedies are available at law.

In sum, at least as to STUSCO, the Complaint should be dismissed with prejudice.

## II. <u>FACTUAL BACKGROUND</u>

### A. Summary of allegations in the Complaint

The Plaintiffs are three individuals (Ismael Marrero Rolón, Anne Catesby Jones, and Jorge Valdés Llauger) and two corporations (Puerto Rico Bathroom Remodeling, Inc. and Performance Chemicals Company, Inc.), who together filed a class action complaint on February 24, 2015 for civil remedies under the Racketeer-Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1962(c), (d), and 1964(c), against the Autoridad de Energía Electrica ("PREPA," by its English-language acronym), three individuals employed by PREPA (defined in the Complaint as "the PREPA Participants"), several PREPA contractors that provide laboratory services (defined by Plaintiffs as "the Laboratory Participants"), several companies that supply oil to PREPA (labeled by Plaintiffs as "the Fuel Oil Supplier Participants"), and, finally, certain John Does (the "John Does"). <u>See</u>, Docket No. 1.

Plaintiffs assert, in essence, that Defendants supposedly formed a so-called "Fuel Oil Cartel Enterprise" (Docket No. 1 at ¶ 2) in which PREPA, through "multiple [yet unspecified] instances of mail…and…wire fraud…" (Docket No. 1 at ¶ 272), allegedly would acquire Non-Compliant Fuel Oil at the higher Compliant Fuel Oil price in exchange for alleged kickbacks

and/or commissions to the PREPA Participants. The Complaint concludes that "[a]s a result of this scheme, PREPA overpaid its fuel suppliers for fuel oil and passed through the entire cost of the Non-Compliant Fuel Oil to Plaintiffs and the Class on their regular monthly electricity bills." See, Docket No. 1 at ¶ 1.

**B. Only a few allegations relate to STUSCO.**

STUSCO is mentioned in just 11 of the 292 paragraphs of the Complaint.  Of these, the following are the most pointed factual allegations with regards to STUSCO:

    i.    Over two or three months [in 2009], the audit team sampled approximately ten (10) deliveries of fuel oil. **Every shipment, except one delivered to Costa Sur, was from Defendant STUSCO.** See, ¶123 of Docket No. 1 (emphasis supplied);

    ii.    **On May 19, 2010, PREPA's Office of Fuel Oil accepted 67,015.69 No. 6 barrels of fuel oil from Defendant STUSCO to the *Aguirre* Thermoelectric Plant at a cost of $4,799,638.** See, ¶ 127 of Docket No. 1 (emphasis supplied).[1]; and

    iii.    During the Class Period, STUSCO sometimes served as an intermediary between Petrobras and PREPA, entering into contracts for the supply of fuel oil to PREPA of more than $3 billion and purchasing fuel oil from Petrobras to fulfill the contracts. **For example, in 2011, PREPA renewed its 7.8 million barrels a year contract with STUSCO, which required STUSCO to deliver 60,000 barrels almost every two to three days to PREPA's Aguirre power plant**. Petrobras supplied the fuel oil to STUSCO for this and other contracts. See, ¶ 25 of Docket No. 1 (emphasis supplied);

In sum, Plaintiffs' only conduct imputed upon STUSCO is that it was a PREPA supplier of Fuel Oil, and that it supposedly delivered non-compliant fuel on certain occasions in 2009 and 2010, plus that it renewed its contract with PREPA in 2011. The remainder of Plaintiffs' allegations against STUSCO do nothing more than lump STUSCO together with the other

---

[1] The other 8 paragraphs where STUSCO is specifically mentioned are: ¶¶ 2, 25, 105, 122 – 123, 127 – 128, 130 – 132, and 207 of Docket No. 1.

alleged Fuel Oil Supplier Participants and/or as a supposed member of the Fuel Oil Cartel

Enterprise, based on generic and conclusory allegations.

As discussed in detail below, these allegations simply fail to state a claim against

STUSCO -- and, thus, the Complaint must be dismissed.

### III. <u>STANDARD FOR DISMISSAL</u>

As first announced in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), and

later restated in <u>Ashcroft v. Iqbal,</u> 556 U.S. 662, 678 (2009), the Supreme Court has adopted a

new "plausibility" standard, pursuant to which a complaint must allege factual matters that state

a "claim to relief that is plausible on its face." <u>Iqbal,</u> 556 U.S. at 678 (2009). As the Court stated

in <u>Twombly</u>:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations…a plaintiff's obligation to provide the "grounds" of
> his "entitle[ment] to relief" **requires more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of action will not do**…Factual
> allegations must be enough to raise a right to relief above the speculative
> level…on the assumption that all the allegations in the complaint are true (even if
> doubtful in fact)…

<u>Twombly</u>, 550 U.S. 544, 555 (2007) (emphasis supplied and internal citations omitted). As the

Court elaborated in <u>Iqbal</u>:

> The plausibility standard is not akin to a 'probability requirement,' but it asks for
> more than a sheer possibility that a defendant has acted unlawfully. Where a
> complaint pleads facts that are 'merely consistent with' a defendant's liability, it
> 'stops short of the line between possibility and plausibility of 'entitlement to
> relief.''

<u>Id.</u> (citations omitted).

Procedurally, courts must first assay the allegations for sufficiency, eliminate the ones

that are not to be afforded the presumption of veracity, and then analyze the allegations that

remain. <u>Id.</u> at 662. The same has been summarized by the First Circuit as a two-pronged

approach: first, the court must identify and disregard the threadbare recitals of the elements of a cause of action and/or the legal conclusions disguised as fact; and, second, it must treat the non-conclusory factual allegations as true, and determine if those "combined allegations, taken as true, state a plausible and not merely a conceivable, case for relief." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 23-24 (1st Cir. 2011).

In run-of-the-mill cases, conclusory allegations are plainly not entitled to the assumption of truth; that is all the more true in fraud claims, which must meet the higher standard of pleading set forth by Fed.R.Civ.P.9(b). "In alleging fraud or mistake, a party must state **with particularity** the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." As one treatise explains, "the reference to 'circumstances' in the rule is to matters such as the time, place, and contents of the false representations or omissions, as well as the identity of the person making the misrepresentation or failing to make a complete disclosure and what that defendant obtained thereby." 5A FEDERAL PRACTICE AND PROCEDURE § 1297.

Finally, if a heightened pleading standard is applicable to ordinary fraud claims, an even higher standard is applicable to claims under RICO, which has been described by the First Circuit as "an unusually potent weapon – the litigation equivalent of a thermonuclear device." Miranda v. Ponce Federal Bank, 948 F.2d 41, 44 (1st Cir. 1991). As the Court explained, "[t]he very pendency of a RICO suit can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees." Id. For this reason, courts are highly advised to "strive to flush out frivolous [civil] RICO allegations at an early stage of the litigation." Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir.1990). See also Birch St. Recovery Corp. v. Thomas, 2000 U.S. Dist. LEXIS 12172, 8 (D.N.H. 2000).

Based on the above, a thorough examination of the pleadings becomes paramount when determining whether a civil RICO complaint can survive dismissal under Rule 12(b)(6).

## IV. <u>DISCUSSION</u>

**A.  The Complaint must be dismissed under Fed.R.Civ.P. 12(b)(1) because Plaintiffs lack standing.**

**i.  Plaintiffs are "Indirect Purchasers" and, thus, categorically barred from seeking redress under RICO.**

Plaintiffs admit in their allegations that they do not purchase oil directly from STUSCO and the other Fuel Oil Supplier defendants; instead, they purchase electricity from PREPA, which electricity was generated, in part, from oil that PREPA purchased from one or more of the Fuel Oil Supplier defendants. Plaintiffs are therefore indirect purchasers of fuel oil and, as such, lack standing to sue the Fuel Oil Supplier defendants under RICO.

In its seminal decision of <u>Illinois Brick Co. v. Illinois</u>, 431 U.S. 720, 728 (1977), the U.S. Supreme Court ruled that "indirect purchasers" lack standing under the federal antitrust laws to sue for damages because they have not been "injured in [their] business or property," as required by Section 4 of the Clayton Act, 15 U.S.C. § 15.  In reconciling ambiguities not otherwise resolved in RICO, the Supreme Court has explained that antitrust law "offers the closest analogy to civil RICO." <u>Agency Holding Corp. v. Malley-Duff & Assocs., Inc.</u>, 483 U.S. 143, 150 (1987).

> Even a cursory comparison of the two statutes reveals that the civil action provision of RICO was patterned after the Clayton Act.... Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees. Both statutes bring to bear the pressure of "private attorneys general" on a serious national problem for which public prosecutorial resources are deemed inadequate; the mechanism chosen to reach the objective in both the Clayton Act and RICO is the carrot of treble damages. Moreover, both statutes aim to compensate the same type of injury; each requires that a plaintiff show injury "in his business or property by reason of" a violation.

_Id._ (internal citations omitted).

The plaintiffs in _Illinois Brick_ were "indirect purchasers" of concrete block insofar as they purchased buildings that incorporated masonry structures made in part of concrete block. _Illinois Brick_, 431 U.S. at 726. The _Illinois Brick_ plaintiffs brought a claim for treble damages against manufacturers of concrete block on the grounds that the manufacturers had engaged in a conspiracy to fix prices. _Id._ at 726-27. The plaintiffs argued that they had suffered an injury because direct purchasers (essentially, masonry contractors), had not absorbed the full amount of any illegal overcharges caused by the antitrust conspiracy, but had instead "passed on" those overcharges to their customers; _i.e._, the indirect purchasers. _Id._

In deciding that the _Illinois Brick_ plaintiffs did not have standing to pursue antitrust damages, the Court addressed the applicability of the "pass-on theory" (i.e., whether by having "passed-on" the overcharges to the plaintiffs, they had sufficient standing to seek redress under antitrust laws). The Supreme Court expressly rejected the "pass-on theory" for various reasons: (i) adopting this rule would create a serious risk of multiple liability for defendants (_Id._ at 730); (ii) the "pass-on theory" would add complexity to antitrust cases because courts would be forced to determine the prices passed on at each stage in the distribution chain (_Id._ at 732); and (iii) prohibiting indirect purchasers from relying on the "pass-on theory" would allow courts to more effectively enforce the antitrust laws by "concentrating the full recovery for the overcharge in the direct purchasers." _Id._ at 734-35.

The factors considered by the Supreme Court in rejecting the "pass-on theory" in _Illinois Brick_ are almost identical to the three-prong test that the same Court adopted for RICO cases in _Holmes v. Securities Investor Protection Corp._, 503 U.S. 258, 268, 276 (1992), for determining

whether the "direct-injury" threshold had been met.[2] This similarity, as the Supreme Court remarked in <u>Agency Holding</u>, "is no accident", and has caused numerous Circuit Courts to apply the <u>Illinois Brick</u> prohibition on "indirect purchasers" to civil RICO claims. To date, no Court of Appeals has ruled against its application. <u>See</u>, <u>Fiala v. B&B Enters.</u>, 738 F.3d 847, 851 (7th Cir. 2013); <u>James Cape & Sons Co. v. PCC Construction Co.</u>, 453 F.3d 396, 403-04 (7th Cir. 2006); <u>Trollinger v. Tyson Foods, Inc.</u>, 370 F.3d 602, 612-613 (6th Cir. 2004); <u>In re Brand Name Prescription Drugs Antitrust Litigation</u>, 123 F.3d 599, 605-06 (7th Cir. 1997); <u>County of Oakland v. Detroit</u>, 866 F.2d 839, 851 (6th Cir. 1989); <u>Rand v. Anaconda-Ericsson, Inc.</u>, 794 F.2d 843, 849 (2d Cir. 1986); <u>Carter v. Berger</u>, 777 F.2d 1173, 1175-76 (7th Cir. 1985).

In the leading decision of <u>McCarthy v. Recordex Service, Inc.</u>, 80 F.3d 842, 855 (3d Cir. 1996), the Third Circuit did not just apply the <u>Illinois Brick</u> rule to civil RICO claims, it also adopted the Supreme Court's rationale in <u>Kansas v. Utilicorp United, Inc.</u>, 497 U.S. 199, 216-218 (1990), where the Court refused to "carve out [general] exceptions to the direct purchaser rule" to public utilities. The applicability of <u>Utilicorp</u> in RICO cases has been recognized by different courts thereafter. <u>See</u>, <u>Macomb Interceptor Drain Drainage Dist. v. Kilpatrick</u>, 896 F. Supp. 2d 650, 665-666 (E.D. Mich. 2012), <u>Big Rivers Elec. Corp. v. Thorpe</u>, 1995 U.S. Dist. LEXIS 21970, 26-35 (W.D. Ky. 1995), and <u>Iron Workers Local Union No.17 Ins. Fund v. Philip Morris, Inc.</u>, 29 F. Supp. 2d 801, 824 (N.D. Ohio 1998).

This Honorable Court should follow the lead of the U.S. Courts of Appeals for the Second, Third, Sixth, and Seventh Circuits and extend the <u>Illinois Brick</u> rule to RICO. Because PREPA was the direct purchaser of alleged "over-priced" fuel oil, even assuming the truth of all of Plaintiffs' allegations, PREPA was the party that in the first instance would have suffered any

---

[2] See discussion below on Plaintiffs failure to also meet RICO's standing requirements.

direct "damages" under the supposed scheme in this case. Plaintiffs are admittedly PREPA customers, and they contend that they sustained an injury by way of their allegedly inflated electricity bills in light of PREPA's supposed "over-payments." Specifically, Plaintiffs allege that their "injuries" result from PREPA's assessment of the "fuel oil adjustment" line item in their electricity bills. With respect to fuel oil, therefore, they are nothing more than "indirect purchasers." Their liability theory is a text-book example of the "pass-on theory" of damages, which was expressly rejected by the Supreme Court in <u>Illinois Brick</u> and <u>Utilicorp</u>.

Absent this "pass-on theory," Plaintiffs fail to allege any other causal link to an injury that would entitle them to pursue the RICO claims outlined in the Complaint.  Therefore, Counts I and II of the Complaint (the RICO claims) must be dismissed due to Plaintiff's lack of standing in accordance to Fed.R.Civ.P. 12(b)(1).

> **ii.   Plaintiffs also lack standing because the alleged damages, if any, are too remote and, hence, there is no proximate causation under RICO.**

Even if this Court were to decline to extend <u>Illinois Brick</u> to RICO claims, Plaintiffs would still lack standing because under their own theory, first, they did not suffer any actual damages (i.e., the cost of electricity would have been exactly what they paid, had PREPA purchased the more expensive fuel oil) and, second, assuming they did suffer an injury the same would be too remote to grant them standing.

Section 1964(c) provides civil remedies to "[a]ny person injured in his business or property **_by reason of_** a violation" of RICO. The courts have interpreted this language as imposing a standing requirement under which a plaintiff must demonstrate that the defendant's racketeering activity caused injury to plaintiff's business or property. <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 495-497 (1985); <u>Camelio v. American Fed'n</u>, 137 F.3d 666, 669-670 (1st Cir. 1998). In order to possess RICO standing, these injuries "…must be 'concrete and actual,' as

opposed to speculative and amorphous." Evans v. City of Chicago, 434 F.3d 916, 932 (7th Cir. 2006), *overruled on other grounds by* Hill v. Tangherlini, 724 F.3d 965, 967 n.1 (7th Cir. 2013). As such, "[i]f any proposition under RICO is well-established, it is that **a RICO damages claim may not be based on mere speculation**." Circiello v. Alfano, 612 F. Supp. 2d 111, 114 (D. Mass. 2009) (emphasis supplied). See, World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 520-21 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) ("[T]he requirement of a concrete financial loss proximately caused by the wrongful conduct of RICO defendants is not easily met.") (internal citations omitted).

As a threshold matter, the Court must first examine whether Plaintiffs suffered any actual damages. According to Plaintiffs' own theory, PREPA was required by the EPA Consent Decree to purchase Compliant Fuel Oil, whose price is supposedly higher than Non-Compliant Fuel Oil. (Docket No. 1, ¶3) Based on Plaintiffs' rationale, PREPA acquired the alleged Non-Compliant Fuel Oil for the same price of Compliant Fuel Oil and passed along to the class the electricity generated with those higher costs.  That is, PREPA sold the electricity based on the same costs which PREPA was nonetheless obliged to incur in accordance to the Consent Decree.

Pursuant to the facts of the Complaint, since PREPA would still pass-on the cost of such Compliant Fuel Oil to Plaintiffs through the "oil price adjustment" line item (Id., ¶66), and because the price of the lesser quality fuel oil purchased was the same as the price for Compliant Fuel Oil, absent any scheme whatsoever, Plaintiffs would still have been charged the same prices by PREPA. In other words, the alleged "out-of-pocket losses" claimed by Plaintiffs (Id., ¶3) are non-existent, as they would have paid exactly the same for electricity generated with Compliant Fuel Oil.  At most, Plaintiffs allege that PREPA accepted fuel that it should have rejected, but that has nothing to do with whether the price of the fuel would have been lower or greater (after

all, it was purchased, according to Plaintiff's theory, at the same price of Compliant Fuel Oil). Based on the above, Plaintiffs have not suffered any injury as a result of any supposed scheme due to the fact that: (i) they were charged for fuel expenses that they would have been liable for (in any event), and (ii) they received the electricity that they were charged for.

In any event, assuming *arguendo* that Plaintiffs somehow suffered any injuries in accordance to section 1964(c) of RICO (a fact which STUSCO disputes), their standing would still be dependent on showing that: (i) at least one of the defendant's predicate acts of racketeering was the proximate cause of plaintiff's injury, and (ii) that defendant's predicate acts of racketeering were the *but-for* or factual cause of the plaintiff's injury. See, Holmes, 503 U.S. at 268, 276; Camelio, 137 F.3d at 670. Both "proximate" causation and "but-for" causation must be satisfied in order to have standing to sue under RICO. Holmes, 503 U.S. at 268.

The "but-for" causation prong consists of an analysis as to whether a plaintiff's harm "would not have occurred 'but for' the breach" of a defendant's legal duty. Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 84-85 (D. Mass. 1998) (citing Holmes, 503 U.S. at 268). The touchstone in identifying the "proximate cause" is foreseeability.  The United States Supreme Court has indicated that "some direct relationship between the injury asserted and the injurious conduct alleged" is required to show proximate causation. See, Holmes, 503 U.S. at 268-269. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 456-461 (2006)

The following three factors are scrutinized in order to determine whether a harm meets the "direct injury" threshold (so as to not be considered "too remote"): (i) whether the amount of plaintiff's damages attributable to the violation, as opposed to other, independent factors, is too

difficult to ascertain; (ii) whether providing a remedy to plaintiffs would expose defendants to possible duplicative recoveries; and (iii) whether the directly injured victim (*i.e.*, PREPA by itself, or through the newly created Puerto Rico Energy Commission[3]) can vindicate its rights. Holmes, 503 U.S. at 269-270; Chera v. Chera, 2000 U.S. Dist. LEXIS 13749, 14-15 (E.D.N.Y. 2000).

In the case at bar, Plaintiffs' allegations fail to meet the proximate causation standard because the party that would have been directly injured as a result of the alleged "scheme" would have been PREPA itself --not Plaintiffs. Hence, Plaintiffs simply lack standing to assert any RICO actions.

### a. The amount of plaintiffs' damages attributable to the violation, as opposed to other independent factors, is too difficult to ascertain.

As stated by the Supreme Court in Holmes, "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Id.* 503 U.S. at 269. According to the Complaint, Plaintiffs allege that they have suffered "significant out-of-pocket losses" as a result of a supposed scheme "intended to cause Plaintiff and others to pay for excessive overcharges for fuel oil on their electricity bills". Docket No. 1, ¶276. This "scheme" (according to Plaintiffs) is that they were injured ***by Defendants*** when they were charged ***by PREPA*** the "oil price adjustment" in their electricity bill. Docket No. 1 at ¶¶ 1, 66 – 69, and 276.

That, right there, is the root of Plaintiffs' causation problem: the "oil price adjustment" was charged by PREPA, not by Defendants. While not expressly set forth in the Complaint, Plaintiffs' allegations seem to imply that the "oil price adjustment" line item (or formula) corresponds solely and exclusively to the assessment by PREPA of fluctuations in the price of

---

[3] See discussion below regarding the Puerto Rico Energy Commission.

fuel oil purchases. If so, that hypothesis is not plausible and should be discarded. Plaintiffs do not provide any detailed factual allegations to support this hypothesis, which is striking particularly when considering that the "oil price adjustment" formula has been a topic of debate for many years, and has been heavily criticized for allegedly containing numerous costs in its calculation, including, but not limited to, administrative inefficiencies of PREPA, the increased cost of labor, income lost by PREPA due to governmental subsidies and theft, among others.[4] As such, it is practically impossible to identify what portion of the "oil price adjustment" formula actually corresponds to fluctuations in the price of fuel oil (if any) as opposed to the assessment of other costs or inefficiencies by PREPA to its customers in their monthly bills. To put this in more familiar Twombly terms, it would be implausible to infer from Plaintiffs' allegations that the price of electricity set by PREPA was directly correlated with the alleged "overcharges" by Defendants.

The first factor of the "direct injury requirement" is therefore absent in this case given that, based on the structure of the "oil price adjustment" formula, it is difficult (if not impossible) to ascertain what proportion of Plaintiffs' alleged damages are attributable to the supposed

---

[4]STUSCO requests that the Court take judicial notice, pursuant to Fed. R. Evid. 201, of the following websites, all of which were last visited on this same date. Please note that the fact of which judicial notice should be taken is not the veracity of the information contained in these news reports, but rather the more limited fact that PREPA's pricing formula has, in fact, been the subject of extensive coverage, debate, and criticism.

http://www.noticel.com/blog/109446/el-ajuste-por-combustible.html;
http://www.primerahora.com/noticias/gobierno-politica/nota/senadoderogaajusteporcombustible-660790/;
http://www.elnuevodia.com/noticias/locales/nota/elmisteriodesufacturaelectrica-787829/;
http://elvocero.com/perpetuado-el-truco-en-el-ajuste-por-combustible/;
http://www.primerahora.com/noticias/gobierno-politica/nota/aeeseoponeaeliminarcargoporajustedecombustible-299542/;
http://www.claridadpuertorico.com/content.html?news=A43D0E8DFE9EA0A43BC29B63A1A3DB06;
http://grupocne.org/2011/09/22/ajustando-la-aee/;
http://www.wapa.tv/noticias/locales/aee-rechaza-cambios-en-la-facturacion_20090515172122.html

scheme, as opposed to other factors (such as additional costs and inefficiencies that are being charged by PREPA).

> **b. Providing a remedy for Plaintiffs would force the Court to adopt complicated rules apportioning damages and may expose Defendants to duplicative recoveries.**

The second factor in the "direct injury" threshold analysis requires the Court to determine whether providing a remedy for those indirectly injured "would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries." Holmes, 503 U.S. at 269.

Even accepting Plaintiffs' allegations as true (although they are not), in applying the "but-for" and "proximate" causation standards in this case, the real party that would have suffered a direct injury from any supposed scheme would have been PREPA, as it would have been the party who would have purchased the fuel oil at an alleged over-price. PREPA, as a public corporation, has standing to sue and be sued pursuant to Article 2.02 of the P.R. General Corporate Law, 14 P.R. Laws Ann. § 2652. Thus, PREPA has the capacity to vindicate its own injuries before the appropriate courts. Furthermore, as indicated below, the Energy Commission could also initiate the corresponding action before the appropriate fora based on the same acts asserted in the Complaint.

To afford Plaintiffs with a remedy in this case would surely entail the creation of extremely complicated rules for apportioning damages, especially when considering that it is extremely difficult to identify which portions of the "oil price adjustment" formula (if any) correspond to actual fluctuations in fuel oil prices, as opposed to other costs and charges assessed by PREPA. This issue becomes even more convoluted when considering that PREPA and/or the Energy Commission would be the parties with actual standing to pursue this sort of litigation. As

such, if Plaintiffs are afforded a remedy under this Complaint, it would give rise to a scenario where Defendants would be exposed to multiple claims for the same alleged "scheme."

Based on the above, the second factor of the "direct injury requirement" is not present in this case.

> ### c. The directly injured victim (*i.e.*, PREPA) has the capacity to vindicate its own rights, either directly, or through a newly-created administrative agency: the Puerto Rico Energy Commission.

The third and final factor of the "direct injury" threshold inquiry also leads to the conclusion that Plaintiffs lack standing. PREPA, either by itself or through the recently created Energy Commission, has the legal authority to investigate the supposed scheme outlined by Plaintiffs in the Complaint, and can, ultimately, vindicate its own rights.

As noted above, PREPA can sue and be sued on its own. But in addition, suit could be filed by the Energy Commission, which was created by the recently-enacted *Puerto Rico Energy Transformation and RELIEF Act* of May 27, 2014 (Act No. 57-2014)[5]. This Act was intended to: (i) establish an energy reform in Puerto Rico; (ii) transform the operations of PREPA; (iii) promote the public policy on energy for the Commonwealth of Puerto Rico; (iv) generate savings in the consumption of electricity; (v) comply with the parameters of "net metering" and renewable energy policy; (vi) allow for immediate energy savings; (vii) establish citizen participation; and (viii) adopt regulations regarding these matters, among other things. *Id*.

One of the cornerstones of the statute is the creation of the Energy Commission, which is an independent government entity in charge of regulating, overseeing, and ensuring compliance with the public policy on energy of Puerto Rico.[6] According to article 6.3(ll) of the Act, the

---

[5] For the convenience of the Court, an official English translation is enclosed as **Exhibit A**.

[6] Furthermore, the referenced Act expressly establishes that the Energy Commission has primary and exclusive jurisdiction over a broad range of matters regarding: (1) the approval of rates and charges established by PREPA; (2)

Energy Commission shall have capacity to sue and be sued, and that it "…shall have legal standing to bring the necessary action before a judicial forum to ensure full compliance with the public policy set forth in this Act…."  Article 6.3(ll) of Act 57-2014. Article 6.4(a), on the other hand, establishes that the Energy Commission shall have primary jurisdiction of over disputes relating to the rates charged by PREPA for electric power service. Article 6.4(a) of Act 57-2014.

As previously indicated, the crux of the Complaint consists of an alleged scheme to procure and provide PREPA with barrels of purportedly cheaper Non-Compliant Fuel Oil for the combustion of electricity under the guise that it met the specifications of the supposedly more expensive Compliant Fuel Oil, which oil was allegedly accepted by PREPA in exchange for unspecified kickbacks or commissions to the PREPA Participants. As a result of this purported scheme, PREPA would have overpaid its fuel suppliers for fuel oil and passed through the entire cost of the Non-Compliant Fuel Oil to costumers on their regular monthly electricity bills. See, Docket No. 1 at ¶ 1.

In sum, if the alleged "scheme" were real (which is not), then the appropriate party with standing to litigate those issues before the corresponding "judicial forum[s]", are either PREPA, as the direct party to be "injured" under the purported Fuel Oil Cartel Enterprise, or the Energy Commission, because of its regulatory duties; but not Plaintiffs.

**B. The Complaint must be dismissed under Fed.R.Civ.P. 12(b)(6) because it fails to state sufficient facts to assert a RICO claim.**

In order to state a RICO claim under section 1962(c), a plaintiff must allege four specific elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

---

disputes related to the review of the electricity bills sent by PREPA to its customers; (3) disputes regarding noncompliance with the public policy on energy of the Commonwealth of Puerto Rico, among others.  Article 6.4(a) of Act No. 57-2014. If for some reason this Court denies the instant motion to dismiss, STUSCO hereby reserves all affirmative defenses and jurisdictional arguments available to it.

activity. <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985). <u>See</u> <u>also</u> <u>Efron v. Embassy</u> <u>Suites (Puerto Rico), Inc</u>., 223 F.3d 12, 14-15 (1st Cir. 2000). As previously stated, Plaintiffs only assert the following specific contentions with regards to STUSCO:

    (a) the supposed samplings of certain oil that was allegedly supplied by STUSCO for a period of "[o]ver two or three months" sometime in either 2009 and/or 2010 (¶123, Docket No. 1);

    (b) a delivery that was merely characterized as a "particularly egregious example", which allegedly occurred on May 19, 2010 (¶ 127, Docket No. 1); and

    (c) STUSCO's renewal of a contract with PREPA on 2011 (¶ 25, Docket No. 1)[7].

The remainder of Plaintiffs' allegations against STUSCO is circumscribed to simply lumping STUSCO together with the "actions" of the alleged Fuel Oil Supplier Participants and/or as a supposed member of the Fuel Oil Cartel Enterprise. But, aside from the impropriety of such lumping, those allegations are nevertheless legally insufficient. The factual assertions against the Fuel Oil Supplier Participants and the Fuel Oil Cartel Enterprise consist of either vague or generic conclusions (without any concrete facts to support them) to the effect that they: (i) supposedly ordered and/or requested that test results be falsified; (ii) allegedly participated in a scheme to defraud PREPA; (iii) purportedly paid "undisclosed kickbacks" to the PREPA Participants "…in order to ensure that they received billions of dollars in contracts for the supply of fuel oil to PREPA at higher prices than for the Non-Compliant Fuel Oil being delivered"; and (iv) that they supposedly "used thousands of mail and interstate wire communications to create and manage the fraudulent scheme". <u>See</u>, ¶¶ 73-75 and 248-249 of Docket No. 1. These are all boilerplate allegations that not only fail to identify the date, time, place, and/or content as to any

---

[7] Regarding the contracts between PREPA and STUSCO, the Complaint also states that STUSCO sometimes served as an intermediary between Petrobras and PREPA and/or that Petrobras supplied certain fuel oil to STUSCO. <u>See</u>, ¶ 25 of Docket No. 1.

supposed fraudulent communication or action undertaken by STUSCO (as required by Fed.R.Civ.P. 9(b)), but also are insufficient to satisfy the pleading requirements for a civil RICO action.

In other words, Plaintiffs' allegations against STUSCO (as a supposed "member" of the Fuel Oil Supplier Participants and/or the Fuel Oil Cartel Enterprise) are premised on a litany of conclusions that do not rise "above the speculative level". Ocasio-Hernández, 640 F.3d at 12. See, Miranda, 948 F.2d at 44 ("…to avert dismissal…a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged"). (citations omitted)

The specificity requirement under Rule 9(b) must be met for each particular defendant. Alleging specific instances of fraud with regards to one particular defendant is not enough to plead fraud by the other defendants. See, 2 Moore's Federal Practice § 9.03[1][f] ("the claimant must make **specific and separate allegations against each defendant**.") (emphasis supplied). These "guilt-by-association" contentions have been rejected by the courts. In re Pharm. Indus. Average Wholesale Price Litig., 307 F. Supp. 2d 196, 209 (D. Mass. 2004); see also Sebago, 18 F. Supp. 2d at 79. To wit, "[r]ule 9(b) **does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant**…**and inform each defendant separately of the allegations surrounding his alleged participation in the fraud**." Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (emphasis supplied).  Clearly, Plaintiff's block-style allegations against the so-called Fuel Oil Supplier Participants or the Laboratory Participants, for instance, all fail to comply with the specificity  requirements of Rule 9(b).

**a. Plaintiffs fail to specifically plead the existence of *conduct* (*i.e.*, mail and wire fraud).**

Plaintiffs assert that the *conduct* (also known as "predicate acts") for which they are seeking relief consist on certain --yet undisclosed-- incidents of alleged mail and wire fraud supposedly perpetrated by the Defendants. The problem is that those predicate acts are not pled with any degree of specificity.  Mere conclusory allegations of fraud are insufficient. Moore v. Kayport Package Exp., Inc., 885 F. 2d. 531, 540 (9th Cir. 1989).

To the contrary, "in civil RICO claims alleging mail or wire fraud, Fed.R.Civ.P. 9(b) applies such that plaintiffs must plead those acts with specificity." Uviles v. RYS Int'l Corp., 443 F. Supp. 2d 233, 237 (D.P.R. 2006)). Rule 9(b)'s specificity requirement means that a plaintiff alleging fraud must: "1) specify the statements that the plaintiff contends were fraudulent; 2) identify the speaker; 3) state where and when the statements were made; and 4) explain why the statements were fraudulent".[8] Rombach v. Chang, 335 F. 3d 164, 170 (2d Cir. 2004).  Thus, to satisfy Rule 9(b) pleading requirements, "…plaintiffs are required 'to go beyond a showing of fraud and state the *time, place and content* of the alleged mail and wire communications perpetrating that fraud.'" Uviles, 443 F. Supp. 2d at 237.

Here, Plaintiffs' contentions as to Defendants' supposed performance of any "predicate acts" of mail and/or wire fraud fail to comply with Rule 9(b). In fact, STUSCO is not mentioned even once in connection with any such mail or wire incidents. Instead, Plaintiffs just include two generic paragraphs claiming, generally, that:

i. "Defendants used thousands of mail and interstate wire communications to create and manage the fraudulent scheme and RICO enterprise…" See, ¶ 248 of Docket No. 1; and

---

[8] In many respects, this Court's Standing Order regarding RICO cases mirrors these requirements.

ii.   "Defendants use of the mails and wires to perpetrate the fraud involved thousands of communications…" <u>See</u>, ¶ 249 of Docket No. 1.

The Complaint simply fails to identify any specific instance of mail and/or wire fraud as against the Defendants, much less regarding STUSCO.  It is totally devoid of any specific allegations as to the time, place and content of any supposed communications constituting mail or wire fraud, nor does it provide any information regarding the individuals that sent or received such mail/wires, nor what participation (if any) STUSCO supposedly had in the alleged fraudulent conduct. In order to disprove these unspecific allegations, STUSCO would have to engage in an "unwarranted and expensive fishing expedition". <u>Rodriguez-O'Ferral v. Trebol Motors Corp.</u>, 1993 U.S. App. LEXIS 17077, at *14 (1st Cir. 1993).

In short, Plaintiffs do not comply with the pleading requirements regarding the existence of any "predicate act" against STUSCO, as it fails to identify the "who, what, when, where and how" of the supposed fraudulent actions asserted against STUSCO. Thus, Counts I and II of the Complaint should be dismissed against STUSCO pursuant to Fed. R. Civ. P. 12(b)(6).

**b.  Plaintiffs fail to properly plead the existence of an *enterprise*.**

"The existence of an enterprise at all times remains a separate element which must be proved". <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981). <u>See</u>, <u>Cedric Kushner Ltd. v. King</u>, 533 U.S. 158, 161 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same "person" referred to by a different name."); <u>see</u> <u>also</u> <u>Bessette v. Avco Fin. Servs., Inc.</u>, 230 F.3d 439, 448 (1st Cir. 2000) (the "person" alleged to be engaged in a racketeering activity must be distinct from the "enterprise").

There are only two basic categories of RICO *enterprises*: legal entities and associations-in-fact. <u>See</u>, 18 U.S.C. § 1961(4). The first category (legal entity) is not applicable in this case,

-20-

and, therefore, the focus here are the various requirements necessary to prove the existence of an association-in-fact enterprise.  These are:

> First, ***the enterprise must be an "ongoing organization"***. This requirement is satisfied by showing that some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual. There must be a mechanism for controlling the group on a constant basis rather than an ad-hoc basis. Second, ***the various members must function as a continuing unit***. Thus, each person must perform a role in the group consistent with the organizational structure established by the first element and which furthers the activities of the organization. Third, ***that the organization must be an entity separate and apart from the pattern of activity which it engages***. The plaintiff is required to plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts.

Ponce Fed. Bank, F.S.B. v. Muñoz, 1996 U.S. Dist. LEXIS 15103, 45-46 (D.P.R. July 1996) (emphasis supplied) (citing Libertad v. Welch, 854 F. Supp. 19, 26 (D.P.R. 1993)).

As previously explained, the Complaint identifies the operations of the so-called Fuel Oil Cartel Enterprise with very broad strokes. See, Docket No. 1 at ¶¶ 3, 71, 73 – 75.  For starters, the Complaint states that the Fuel Oil Cartel Enterprise is composed of all the Defendants (Docket No. 1 at ¶ 2). In other words, the Defendants and the supposed enterprise are exactly the same entities, thus the Complaint fails to adequately allege the existence of a separate *enterprise*. See, Miranda, 948 F.2d at 44-45 ("[T]he same entity cannot do double duty as both the RICO defendant and the RICO enterprise.").

Further, aside from raising numerous conclusory allegations and speculations to the effect that the PREPA Participants somehow controlled the Fuel Oil Cartel Enterprise (and that said control was supposedly later transferred to Petrobras in September 2014)[9], the Complaint fails to allege: (i) the existence of a hierarchical or consensual structure for the Fuel Oil Cartel Enterprise; (ii) of any mechanisms for decision-making between the different co-Defendants;

---

[9] See, Docket No. 1 at ¶ 227.

(iii) the particular role for each of the co-Defendants as part of the alleged Fuel Oil Cartel Enterprise; and (iv) how the role of these co-Defendants is consistent with the organizational structure established.

Instead, the Complaint only provides mere assertions as to alleged inappropriate data gathering and measurements by certain laboratories and, based on this, Plaintiffs speculate that the Fuel Oil Supplier Participants (including STUSCO) were all somehow "in" on a same "scheme" to allegedly defraud PREPA. Note, furthermore, that no specific mention as to STUSCO's involvement in the "scheme" is identified anywhere in the Complaint.  Absent any assertion as to the particular role, functions, organization and structure of the supposed Fuel Oil Cartel Enterprise, and the participation and coordination therein between the different co-Defendants, Plaintiffs cannot meet the *enterprise* prong of a RICO claim.

Moreover, Plaintiffs fail to explain how the various members of the alleged Cartel function as a "continuing unit," which is a fundamental requirement for an association-in-fact *enterprise*. Boyle v. United States, 556 U.S. 938, 946 (2009).  In the instant case, the alleged members of the Fuel Oil Cartel Enterprise have no common purpose because they have fundamentally different interests. See, Gregory P. Joseph, Civil RICO: A Definitive Guide 93–94 (3d ed. 2010) ("If the constituents are competitors, if they are acting independently or at cross purposes—or if the allegation of common purpose is purely conclusory—this prong will not be satisfied."). Each co-Defendant in this case has completely different interests: PREPA purchases fuel, generates electricity, and charges its customers for the electricity used; Fuel Oil Suppliers who compete among themselves to sell fuel to PREPA; and the Laboratory Participants who also compete for the testing business.   Therefore, the "common purpose" requirement is not met.

### c. **Plaintiffs also fail to show a *pattern*.**

A *pattern* of racketeering activity "requires at least two acts of racketeering activity…the last of which occurred within ten years…after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). While a minimum of two predicate acts is required to satisfy the pattern requirement, this is not sufficient in and on itself. See, H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238 (1989) (RICO's legislative history leaves no doubt that "there is something to a RICO pattern *beyond* simply the number of predicate acts involved"). Thus, "[f]or there to be a pattern, a plaintiff must demonstrate not only the existence of two or more predicate acts, but also that they are **related** [(i.e., the "relatedness test")] and pose at least a **threat of continued criminal activity** [(i.e, the "continuity test")]." Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44 (1st Cir. 1991) (emphasis supplied); Birch, 2000 U.S. Dist. LEXIS 12172 at 37.

The relatedness test is usually met by showing that the predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. H.J., 492 U.S. at 240; Fleet Credit Corp. v. Sion, 893 F.2d 441, 444 (1st Cir. 1990). As previously discussed, the Complaint fails to present sufficient specific factual assertions with regards to the alleged relationship between the co-Defendants and the Fuel Oil Enterprise.  As such, Plaintiffs' generic conclusory allegations in the Complaint do not satisfy the relatedness test.

Similarly, the Complaint also fails under the continuity test, which is scrutinized under two different methodologies: (i) the "amounting to" and (ii) the "threat" approach. Plaintiffs are unable to satisfy the *continuity test* under either of these approaches.  First, under the "amounting to" approach, "[f]or there to be continuity, the plaintiff must show that the related predicates

'amounted to, or posed a threat of, continued criminal activity.'" <u>Feinstein</u>, 942 F.2d at 44 (quoting <u>Sion</u>, 893 F.2d at 445-46). "To establish continuity by the first method, a plaintiff must establish that the predicate acts extended over a substantial period of time." <u>Birch</u>, 2000 U.S. Dist. LEXIS 12172 at 39 (citation omitted). "Because RICO was intended by Congress to apply only to enduring criminal conduct, 'predicate acts extending over a few weeks or months…do not satisfy this requirement.'" <u>Feinstein</u>, 942 F.2d at 44 (quoting <u>H.J.</u>, 492 U.S. at 242). <u>See</u>, e.g., <u>Kehr Packages v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1418 (3d Cir. 1991) (eight-month period of fraudulent activity did not constitute a pattern, absent threat of future criminal acts); <u>Parcoil Corp. v. Nowsco Well Service, Ltd.</u>, 887 F.2d 502, 503-05 (4th Cir. 1989) (seventeen falsified reports sent over a period of four months did not establish continuity); <u>Sutherland v. O'Malley</u>, 882 F.2d 1196, 1204-05 (7th Cir. 1989) (three acts of mail fraud within five months did not satisfy continuity plus relatedness requirement); <u>see</u>, <u>generally</u> <u>H.J.</u>, 492 U.S. at 242-43; <u>Sion</u>, 893 F.2d at 447.

In contrast, under the "threat" approach, it has long been established in the First Circuit that, "in assessing the longevity of a RICO scheme…the scheme's duration must be measured by reference to the particular defendant's fraudulent activity, rather than by otherwise innocuous or routine mailings that may continue for a long period of time thereafter." <u>Feinstein</u>, 942 F.2d at 46 (citing <u>Kehr Packages</u>, 926 F.2d at 1418).

The Complaint fails under both approaches. Under the "amounting to approach," the problem for Plaintiffs is that the few allegations that specifically mention STUSCO cover very short periods of time (two or three months in 2009, Docket No. 1 at ¶ 123), the May 19, 2010 shipment and surrounding circumstances (Docket No. 1 at ¶ 127), three to four months in 2010 (Docket No. 1 at ¶ 207), and the 2011 renewal of a contract between PREPA and STUSCO (no

particular month or date is provided) (Docket No. 1 at ¶ 25). In addition to the fact that none of the alleged actions asserted against STUSCO constitute, in and of themselves, any predicate acts under RICO, STUSCO's supposed involvement spanned a short period of time between 2009 and 2010 (or 2011, at most). This is precisely the sort of "sporadic activity" that RICO is not intended to target. H.J., 492 U.S. at 239 - 242; Sedima, 473 U.S. at 496 n. 14.

The Complaint also fails under the "threat approach" because Plaintiffs fail to specify STUSCO's alleged fraudulent activity, and how the same may have had a realistic prospect of continuity over an open-ended period yet to come. The Complaint is devoid of any allegations or assertions with regards to STUSCO as to periods beyond 2011, which is not sufficient to show a court that there exists an open-ended threat that STUSCO would commit any alleged fraudulent acts in the future.

In sum, Plaintiffs fail to plausibly allege that there exists an open-ended threat that STUSCO has been involved or will continue to participate in a *pattern* of racketeering activities in the future.

### C. Even if Plaintiffs' allegations against STUSCO were properly pled -- which they are not -- the claims would nonetheless be time-barred.

In case this Honorable Court declines to dismiss Plaintiffs' RICO claims for the reasons stated above, STUSCO's alternatively requests that Plaintiffs' claims be dismissed as time-barred.

While RICO does not contain a specific period of limitations, the Supreme Court held that civil RICO claims are subject to a four-year statute of limitations, using as a reference the four–year statute of limitations applicable in antitrust litigation. Agency Holding, 483 U.S. at 156. In Rotella v. Wood, 528 U.S. 549, 554 n.2 (2000), the Court further clarified that the statute of limitations in a civil RICO action is subject to the "discovery rule" and begins to run at the

time the plaintiff knew or should have known of his injury: "...discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Id.* at 554-555. See also Lares Group, II v. Tobin, 221 F.3d 41, 43 (1st Cir. 2000); Frankel v. Cole, 313 Fed.Appx. 418, 419–20 (2d Cir. 2009) ("The statute of limitations is triggered when plaintiffs discover or should have discovered their RICO injury, **not when they discover or should have discovered the underlying pattern of racketeering activity, even if the pattern of racketeering activity includes fraud**.") (emphasis supplied).

The first step in the statute of limitations analysis for RICO claims "is to determine when the plaintiff sustained the alleged injury for which the plaintiff seeks redress". In re Merrill Lynch P'ship Litig., 154 F.3d 56, 59 (2d Cir. 1998). After that, "[t]he court then determines when the plaintiff "discovered or should have discovered the injury and begin[s] the four-year statute of limitations period at that point." *Id.* See also Kerik v. Tacopina, No. 14 CV 2374 JGK, 2014 WL 6791615, at *9 (S.D.N.Y. Dec. 3, 2014); Frankel, 313 Fed. Appx. at 419.

Plaintiffs attempt to seek redress under RICO for actions spanning from January 1, 2002 to the present. See, Docket No. 1 at ¶ 4. As previously discussed, the only alleged actions specifically involving STUSCO consist of periods of time between 2009 and 2011. See, Docket No. 1 at ¶¶ 71 and 73-75. In light of the fact that Plaintiffs' claims for damages against STUSCO correspond to periods prior to February 24, 2011, and the fact that Plaintiffs filed the instant Complaint on February 24, 2015, Counts I and II of the Complaint against STUSCO are time-barred (the earliest period for which Plaintiffs' could have sought redress against STUSCO would have been February 24, 2011). Dickey v. Kennedy, 583 F. Supp. 2d 183, 188 (D. Mass. 2008). Notwithstanding this, Plaintiffs argue that the statute of limitations in this case should be tolled due to "fraudulent concealment." See, Docket No. 1 at ¶¶ 263 – 267. That doctrine does

not avail them, however, because had they exercised due diligence, Plaintiffs could easily have known of their alleged injuries.

Equitable tolling is a doctrine "that provides that in exceptional circumstances, a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute creating the limitations period'". Vazquez-Castro v. United States, No. CIV. 13-1230CCC, 2014 WL 5302972, at *6 (D.P.R. 2014) (citing Ramos–Martínez v. United States, 638 F.3d 315, 321 (1st Cir. 2011). In order to avail himself of the fraudulent concealment doctrine, a plaintiff must demonstrate that defendant "'…engaged in fraud or deliberate concealment of material facts relating to his wrongdoing and the plaintiff must have failed to discover these facts within the normal limitations period **despite his exercise of due diligence**.'" Callahan v. United States, 426 F.3d 444, 454 (1st Cir. 2005) (emphasis added).  The Court "must determine that '(1) sufficient facts were [not] available to put a reasonable [person] in plaintiff[s'] position on inquiry notice of the *possibility* of fraud, and (2) plaintiff exercised due diligence in attempting to uncover the factual basis underlying this alleged fraudulent conduct.'" Salois v. Dime Sav. Bank, FSB, 128 F.3d 20, 25-26 (1st Cir.1997). Mere "**allegations of fraudulent concealment do not modify the requirement that plaintiffs must have exercised reasonable diligence**". Id. (emphasis supplied). See also Truck Drivers & Helpers Union v. NLRB, 993 F.2d 990, 998 (1st Cir.1993) ("Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence, and is thus charged with notice of a potential claim.").

Pursuant to the above, if a defendant proves that the plaintiff had actual or constructive knowledge of the facts giving rise to the claim, the doctrine of fraudulent concealment becomes ineffective. Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012). "The

plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to the discovery of the fraud." <u>Id</u>. (citations omitted).

As previously indicated, there is no question that Plaintiffs' causes of action under RICO are time-barred. <u>Dickey</u>, 583 F. Supp. 2d at 188. Cognizant of that reality, Plaintiffs' argue -- again, based on general and conclusory assertions-- that the running of the statute of limitations should be tolled in light of the fact that: (i) "Defendants' fraudulent scheme depended on concealing their involvement in the Fuel Oil Cartel Enterprise" (Docket No. 1 at ¶ 263); (ii) that "[a]ny applicable statutes of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein" (Docket No. 1 at ¶ 264); and (iii) "Plaintiffs were not and could not have been on notice of Defendants' scheme until at least on or about May 12, 2014, when the television program entitled '¿Por qué pagamos tanto? En su totalidad,' aired in Puerto Rico." <u>See</u>, Docket No. 1 at ¶ 265. According to Plaintiffs, it was on May 12, 2014 that they could have known, for the first time, of the alleged fraudulent scheme of the Fuel Oil Cartel Enterprise, which they "could not have discovered …in the exercise of reasonable diligence". <u>See</u>, Docket No. 1 at ¶ 263.

Their contention is demonstrably incorrect. Since at least 2005, Puerto Rico's newspapers have been reporting and warning as to certain irregularities regarding PREPA's formula of "fuel oil adjustment." Indeed, this Honorable Court can take judicial notice under Fed. R. Evid. 201 that on August 24, 2005, *El Nuevo Día* presented as its front-page headline a news that read: "*The True Story about Fuel Adjustment: PREPA Swindles the People's Pockets*".  <u>See</u>, **Exhibit B-1** and **B-2** (including the original and an official translation of the article). Moreover, and as highlighted at footnote 6 of this Motion, these irregularities have been extensively reported and

-28-

discussed in various forums throughout the past decade. "Where events receive widespread publicity, plaintiffs may be charged with knowledge of their occurrence." Callahan, 426 F.3d at 452-53. Further, Plaintiffs should have known of the causes of the alleged injury since it was the subject of a federal action that commenced 16 years ago, in Migdalia Negrón et al v. Caleb Brett USA., Inc. d/b/a Inchcape Testing Services, Civil No. 95-2478, 1999 U.S. Dist. LEXIS 22109 (D.P.R. 1999).[10] Plaintiffs acknowledge that they know of this opinion, and this bars the application of any fraudulent concealment doctrine in this case with regards to supposed lack of awareness of falsified lab test reports.[11]

In sum, the continuous news reporting of events related to irregularities in the "fuel oil adjustment" formula, coupled with Plaintiffs' knowledge of the Migdalia Negrón case, would cause a reasonable person to inquire and seek the origin of the alleged irregularities. The reason that Plaintiff should have known of these facts is that they were easily discoverable if they kept themselves informed of the events closely related to the supposed "scheme" alluded in the Complaint. Evidently, Plaintiffs were not diligent in seeking to obtain the purportedly concealed information, and therefore there is no question that Plaintiffs' causes of action against STUSCO are time-barred.

### D.  Plaintiffs' RICO claim is barred by the filed rate Doctrine.

Plaintiffs' RICO claim is also barred by the "filed rate" doctrine, which precludes claims against regulated utilities (such as PREPA) on the basis that the rates charged are unreasonable.

---

[10] Pursuant to Fed. Rule 201 of Evidence (judicial notice of adjudicative facts), STUSCO respectfully requests that this Honorable Court take judicial notice of the mentioned case and all of its appellate proceedings.

[11] Pursuant to the Migdalia Negrón case, sufficient information regarding the allegedly fraudulent scheme as to falsified lab testing in petroleum products was available to the Plaintiffs since, at least, December 4, 1995 (Id. at 8-10), or, alternatively, since May 24, 2000, when the First Circuit Court of Appeals entered its opinion in Negron v. Caleb Brett U.S.A., Inc., 212 F. 3d 666 (1st Cir. 2000). It is well settled that "[t]he filing of lawsuits by private parties has been held … to put plaintiffs on notice of their potential claims." Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 381 F. Supp. 2d 334, 339 (S.D.N.Y. 2005) (emphasis supplied).

See, Square D. Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409, 416, 426 (1986); Keough v. Chicago & Northwestern Ry., 260 U.S. 156, 163-65 (1922); Texas & Pacific Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 448 (1907).  This defense has been incorporated in civil RICO cases by different Circuits. See, Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 20-22 (2d Cir. 1994); H.J., Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485, 492 (8th Cir. 1992); Taffet v. Southern Co., 967 F.2d 1483, 1491-94 (11th Cir. 1992).

In sum, Plaintiffs' RICO claims cannot proceed because, in order to show their supposed "damages", the Complaint is dependent on challenging the rates charged to them by PREPA-- which challenge is precluded under the "filed rate" doctrine.

### E.  The state law claim for unjust enrichment should also be dismissed.

Count III of the Complaint seeks full restitution of Defendants' alleged "unjust enrichment" as a result of the so-called unlawful payments received for Non-Compliant Fuel Oil sold to PREPA.  As discussed in greater detail above, because Plaintiffs do not have a viable federal claim, and considering the incipient state of this case, this Court should decline to continue exercising supplemental jurisdiction over Plaintiff's purported state-law claim pursuant to 28 U.S.C. § 1367(c).  See, Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

Nevertheless, even if this Court were to decide not to decline exercising supplemental jurisdiction, it should nevertheless dismiss Plaintiffs' unjust enrichment claim.

Under Puerto Rico law, recovery for unjust enrichment requires (1) an enrichment; (2) a corresponding loss; (3) a connection between the enrichment and the loss; and (4) the absence of

a legal precept that would preclude application of the concept of unjust enrichment. Municipio de Cayey v. Soto Santiago, 131 D.P.R. 304, 320, 1992 P.R.-Eng. 754, 881 (1992); Ortiz Andújar v. Commonwealth of Puerto Rico, 122 D.P.R. 817, 1988 P.R.-Eng. 580, 737 (1988).

As indicated previously, the Complaint does not set forth sufficient factual assertions to support the first three elements of an unjust enrichment action. Specifically, the Complaint does not contain any basis on the existence of an alleged "scheme" between the Defendants, does not sufficiently allege the existence of any fraudulent activity by and between STUSCO, the so-called Fuel Oil Supplier Participants and/or the Fuel Oil Cartel Enterprise, and Plaintiffs' contentions of damages by way of "over-payment" through the "fuel oil adjustment" line item in their monthly electricity bills is pure speculation and too far remote (if existent, at all), to demonstrate either a supposed enrichment, a loss, and a connection between them.

In addition, even if Plaintiffs were somehow able to show the existence of any of these elements, which STUSCO denies, the final element --availability of other legal remedies-- is fatal to their claim.  This element precludes application of the unjust enrichment doctrine when *any* other form of legal relief is available.   Under Puerto Rico law, the doctrine of unjust enrichment is recognized as a general principle of equity and is, therefore, only applicable where there are no laws or statutes to correct a harm caused. E.L.A. v. Colé Vázquez, 164 D.P.R. 608, 632 (2005). Indeed, "actions for unjust enrichment are subsidiary to other remedies provided by law and [unjust enrichment] is unavailable if the plaintiff may seek other forms of relief." Rivera-Muñiz v. Horizon Lines Inc., 737 F. Supp. 2d 57, 65-66 (D.P.R. 2010).  This bar applies even where plaintiffs seek such relief in the alternative or when their legal claims are insufficient to survive a motion to dismiss.  See, Westernbank P.R. v. Kachkar, 2009 U.S. Dist. LEXIS 126405, at *101, 2009 WL 6337949, at *29 (D.P.R. 2009) ("That the [claimants] have failed to

plead these claims adequately to survive the motion to dismiss, or that [the] affirmative defenses have defeated them, **does not render the underlying tort and contract laws inapplicable to the situation.   [Therefore,] the doctrine of unjust enrichment is precluded**") (emphasis supplied).

Plaintiffs initially sought redress against the Defendants pursuant to civil RICO remedies (Counts I and II of the Complaint).  Where there are claims under other statutes, there is no legal void to be filled by the application of the unjust enrichment doctrine. Thus, where the party has a cause of action in concrete provisions of the law, those must be used as opposed to unjust enrichment. See, II-Puig Brutau, Compendio de Derecho Civil at 621 (Barcelona, Ed. Bosch, 1997). The unjust enrichment action (Count III) is precluded in the instant case due to the existence of relief under other causes of action. This preclusion is applicable regardless of whether the RICO claims asserted by Plaintiffs are ultimately dismissed, see Kachkar, 2009 U.S. Dist. LEXIS 126405 at *101, since, as explained above, Plaintiffs would still have available an appropriate forum before the Energy Commission to vindicate their rights.

Based on the foregoing, the Court should refrain from exercising supplemental jurisdiction over Count III of the Complaint or, in the alternative, Count III of the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

## V. <u>CONCLUSION</u>

Finally, by asking Plaintiffs to comply with this Court's RICO Standing Order, they were, in effect, given an opportunity to demonstrate that there is actually some substance behind their generic allegations. But, Plaintiffs missed their chance.  Their RICO Statement (Docket No. 35) is little more than a repetition of the litany of conclusory allegations included in the Complaint.   Indeed, Plaintiffs unabashedly dock important questions and simply refuse to

address the *what, when, where* and *how* inquiries required by the Standing Order, including

failing to identify the persons to whom and by whom the alleged misrepresentations were made.

See, for example, Docket 35, at pp. 13-26.  In sum, this Court can and should "flush out" and

dismiss the Complaint with prejudice. Figueroa Ruiz, 896 F.zd 645, 650.  There can be no

question that Plaintiffs flunk the plausibility standard that they were required to meet before

submitting Defendants to this sort of "stigmatizing" and costly "thermonuclear" litigation.

Miranda, 948 F. 2d. at 41, 44.

**WHEREFORE**, SHELL TRADING (US) COMPANY respectfully requests that the

Honorable Court grant the instant Motion to Dismiss in its entirety, with prejudice.

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico on May 1, 2015.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with
the Clerk of the Court using the CM/ECF system, which will send notification of such filing to
the case participants appearing in said system.

**O'NEILL & BORGES** <sup>LLC</sup>
*Attorneys for SHELL TRADING (US) COMPANY*
250 Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
Tel:    (787) 764-8181
Fax:    (787) 753-8944

*s/Carlos A. Valldejuly-Sastre*
Carlos A. Valldejuly -Sastre
USDC No.  29505
carlos.valldejuly@oneillborges.com

*s/Salvador J. Antonetti-Stutts*
Salvador J. Antonetti-Stutts
USDC No. 215002
salvador.antonetti@oneillborges.com

*s/Carla García-Benítez*
Carla García-Benítez
USDC-PR No. 203708
carla.garcia@oneillborges.com

*s/Nayuan Zouairabani*
Nayuan Zouairabani
USDC No. 226411
nayuan.zouairabani@oneillborges.com

*s/Janice M. Ramírez Vélez*
Janice M. Ramírez-Vélez
USCD-PR 230207
janice.ramirez@oneillborges.com
