**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ISMAEL MARRERO ROLÓN, et al., | Civil No. 15-01167 (JAG) |
| Plaintiffs, | CLASS ACTION |
| v. | |
| AUTORIDAD DE ENERGÍA ELÉCTRICA a/k/a PUERTO RICO ELECTRIC POWER AUTHORITY, et al., | |
| Defendants. | |

**MOTION TO DISMISS PERSUANT RULE 12(B)(6)**
**AND MEMORANDUM OF LAW**

TO THE HONORABLE COURT:

COMES NOW co-defendant **Engineer Edwin Rodríguez** and submits this Motion to Dismiss the Class Action Complaint filed in Case No. 3:15-cv-01167-JAG (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   PRELIMINARY STATEMENT

In their Complaint, Plaintiffs claim Eng. Edwin Rodríguez violated the Racketeer Influenced Corrupt Organizations Act ("RICO"), conspired to violate RICO, and further incurred in unjust enrichment. According to their allegations, a certain group of "Fuel Oil Suppliers" provided fuel oil to the Puerto Rico Electricity Power Authority (PREPA) which did not meet contractual or Environmental Protection Agency ("EPA") specifications, but was nonetheless accepted by PREPA in exchange for undisclosed kickbacks or commissions from unspecified Defendants. For the reasons discussed herein below, these allegations fail to state a claim against Eng. Edwin Rodríguez and,

thus, must be dismissed.

(i)     Plaintiffs cannot establish RICO standing, which requires them to claim the suffering of a "concrete and actual" injury "directly and proximately" caused by the Defendants' conduct. Plaintiffs maintain that they were overcharged on their monthly electricity bills as a result of an alleged RICO conspiracy. However, Plaintiffs have not alleged, did not suffer, and cannot prove any harm whatsoever arising from the allegations found in the Complaint. Also and equally important is the fact that Plaintiffs have failed to demonstrate that Eng. Edwin Rodríguez is "directly and proximately" responsible for any of their alleged injuries.

(ii)    Plaintiffs have failed to allege a viable RICO enterprise.  The predicate RICO violation for Plaintiffs' claim – Section 1962(c) –makes it unlawful for a "person employed by or associated with" an "enterprise" to conduct the affairs of the "enterprise" through a pattern of racketeering. Plaintiffs allege that the enterprise in the present case is composed of all the Defendants. RICO, however, does not permit the same entity to be both the Defendant "person" and the "enterprise". Moreover, the Complaint fails to show that Eng. Edwin Rodríguez and the rest of the Defendants shared a common purpose. As such, Plaintiffs' allegations are insufficient to support a RICO claim.

(iii)   The Complaint fails to plead a pattern of racketeering activity. Plaintiffs purport to allege predicate acts of mail fraud and wire fraud, but such claims must be pled with particularity under Federal Rule of Civil Procedure 9(b). The Complaint makes allegations against a generalized, undifferentiated group of Defendants. Courts consistently reject these types of vague allegations that merely lump together multiple Defendants in an effort to show guilt-by-association.

(iv)   Plaintiffs' claims are untimely for they were on notice of their alleged injuries more than a decade before filing the present lawsuit and have not pleaded any facts sufficient to toll the statute of limitations.

(v)   The filed rate doctrine bars Plaintiffs' RICO claim, as Plaintiffs' damages would be determined by comparing the rate set by a regulated utility – PREPA – and the rate they contend would have been approved absent the fraudulent scheme.

(vi)   Plaintiffs fail to establish a concrete and substantial RICO violation, which is fatal to their conspiracy claim.

(vii)   Plaintiffs are precluded from pursuing an unjust enrichment claim because in their own allegations they establish that they have not suffered any loss. Furthermore, they have other potential venues of relief at their disposal.

For all of the aforementioned reasons, the **Complaint against Eng. Rodríguez should be dismissed, with prejudice,** in its entirety.

## II.   THE COMPLAINT'S ALLEGATIONS

Puerto Rico gets two-thirds of its electricity from petroleum or fuel oil (Compl. at paragraph 46). PREPA is a public corporation and government instrumentality that owns the electric distribution system for Puerto Rico's main island, as well as the islands of Vieques and Culebra.  *(Id.* at 12). PREPA also owns all but two of Puerto Rico's power generation stations.  *(Id.).*  Because Puerto Rico neither produces nor refines fuel oil itself, all of the petroleum that PREPA converts into electricity is imported. (*Id.* at 46)

The fuel oil PREPA imports must meet certain chemical specifications set by the EPA and by contract with PREPA's suppliers. *(Id.* at 1). The Complaint categorizes the imported oil into two types: "Compliant Fuel Oil" that meets these specifications and

"Non-Compliant Fuel Oil" which does not. *(Id.).* Plaintiffs state that Non-Compliant Fuel Oil is cheaper than Compliant Fuel Oil. *(Id.* at 3).

Plaintiffs claim that PREPA and certain of its employees, including co defendant Eng. Edwin Rodríguez, conspired with fuel oil suppliers and laboratories –which tested the specifications of the fuel oil provided by the suppliers – to engage in a scheme where PREPA ordered and paid for more expensive Compliant Fuel Oil, but instead accepted less expensive Non-Compliant Fuel Oil provided by the fuel oil suppliers. *(Id.* at l -2, 74-75). Plaintiffs further claim that in return for receiving payment for a more expensive grade of fuel oil than what they actually provided, the fuel oil suppliers allegedly agreed to pay PREPA and its agents "undisclosed kickbacks, including lavish trips and parties." *(Id.* at 1-2, 75-76, 263-64, 271, 274-75). It is further alleged that in order to facilitate the scheme, in exchange for repeat business, the laboratories allegedly falsified analyses, thereby certifying that Non-Compliant Fuel Oil provided by the fuel oil suppliers was compliant *(Id.* at 2, 73-74).

According to the Complaint, "[a]s a result of this scheme, PREPA overpaid its fuel suppliers for fuel oil and passed through the entire cost of the Non-Compliant Fuel Oil to Plaintiffs and the Class on their regular monthly electricity bills." *(Id.* at 1).

Plaintiffs are suing on behalf of "[a]ll persons or entities that paid [PREPA] for electricity during the period January 1, 2002 to the present." *(Id.* at 251). In other words, during a period of 13 years.

### III.    ARGUMENT

**A.  RULE 12 (b)(6) Fed. R. Civ. P. STANDARD**

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must both assert a plausible claim and set forth sufficient factual allegations to support the claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). Neither a "'formulaic recitation of the elements of a cause of action'" nor "'naked assertion[s] [of fact]' devoid of 'further factual enhancement'" is sufficient to withstand dismissal. *Id.* (citing Twombly, 550 U.S. at 555, 557). To satisfy the standard under Twombly and Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing Twombly, 550 U.S. at 570).

A claim is facially plausible when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that the defendant is liable under the alleged claim. *Id.* (citing Twombly, 550 U.S. at 556). "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* In other words, when evaluating whether a complaint states a claim for relief, conclusory allegations should be disregarded. *Id.* at 679.

For the reasons set forth below, Plaintiffs fail to allege sufficient facts in support of their claims to satisfy the pleading standards set forth in Twombly and Iqbal.

**B.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER RICO ACT**

    **1.  Plaintiffs Lack Standing**

The civil RICO provision in 18 U.S.C. § l964(c) grants standing to "[a]ny person injured in his business or property by reason of" a RICO violation. Plaintiffs fail that threshold test for the following two (2) reasons: they do not adequately allege harm to their business or property and they fail to assert that PREPA proximately caused their alleged injury.

### 2. Plaintiffs Were Not Harmed, As They Paid Exactly What They Were Supposed to Pay for the Electricity They Consumed

A threshold requirement in any civil RICO case is that the plaintiffs *actually suffered an injury* to their business or property. *See* 18 U.S.C. § 1964(c). "[E]very court that has addressed this issue has held that injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous." Evans v. City of Chicago, 434 F.3d 916, 932 (7th Cir. 2006), *overruled on other grounds by* Hill v. Tangherlini, 724 F.3d 965, 967 n.l (7th Cir. 2013); *see also* World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 520-21 (S.D.N.Y. 2007), *aff'd,* 328 F. App'x 695 (2d Cir. 2009) ("[T]he requirement of a concrete financial loss proximately caused by the wrongful conduct of RICO defendants is not easily met.") (internal citations omitted). Here, there is no injury as the Complaint fails to demonstrate that Plaintiffs paid anything other than the amount they were supposed to pay for the electricity they consumed.

PREPA uses the fuel oil it imports to combust and produce electricity "and passes the cost of the fuel oil directly onto its customers, which appears on the customers' bills within two billing cycles." (Compl. at paragraph 66). According to the Complaint, PREPA was required to use fuel oil that met certain specifications dictated by the EPA in a 1999 Consent Decree, as amended in 2004. *(Id.* at 1). Plaintiffs do not suggest that Non-Compliant Fuel Oil is less efficient or that it somehow results in the generation of less

electricity than Compliant Fuel Oil. Rather, in entirely conclusory fashion, the Complaint merely states, without any supporting facts, that Non-Compliant Fuel Oil is cheaper than Compliant Fuel Oil.  *(Id.* at 3). Notably, the Complaint fails even to quote comparative prices for Compliant and Non-Compliant Fuel Oil.  Based solely on that conclusory statement, Plaintiffs claim that they "have made thousands of dollars in payments for fuel oil that they would not have made had Defendants not engaged in their pattern of racketeering activity." (*Id.* at 279)

In fact, the Complaint shows otherwise. The Complaint explains that, absent fraud, PREPA was supposed to reject Non-Compliant Fuel Oil and only accept Compliant Fuel Oil on threat of substantial monetary and criminal penalties from the EPA.  *(Id.* at 65, 150).  Since PREPA was only permitted to accept Compliant Fuel Oil, it necessarily was required to pass the cost of Compliant Fuel Oil on to the Plaintiffs. *(Id.* at 66). Combined with the failure to allege or show that Non-Compliant Fuel Oil is any less efficient, the Complaint makes clear that Plaintiffs would have used the same amount of electricity and paid exactly the same amount – the cost of Compliant Fuel Oil – irrespective of the alleged RICO scheme.

In other words, *even accepting Plaintiffs' allegations as true*, Plaintiffs' theory is that PREPA paid the higher prices of Compliant Fuel Oil and passed along that cost to consumers even though it allegedly received at times Non-Compliant Fuel Oil. So, on Plaintiffs' case, consumers paid prices for electricity as if they were receiving electricity generated on the basis of Compliant Fuel Oil, which is precisely what the putative class members were supposed to pay for their electricity if the Defendants had not allegedly delivered Non-Compliant Fuel Oil to PREPA. This means that there necessarily can be no

damages caused to Plaintiffs from the alleged RICO scheme.

Furthermore, Plaintiffs cannot rely on their claim that Non-Compliant Fuel Oil "is dirtier and more harmful to the environment" to establish a "concrete and actual" injury. *(Id.* at 3). Nowhere does the Complaint allege or even suggest that any supposed environmental harm injured the Plaintiffs in their business or property, as required for RICO standing. Accordingly, the Court should dismiss the RICO claim against Eng. Edwin Rodríguez for failure to allege a RICO injury and hence for lack of standing.

### 3.   The Complaint Fails To Allege That PREPA (therefore Eng. Edwin Rodríguez) Proximately Caused Any Injury

To establish standing, it is not enough that a plaintiff be injured in their business or property. A plaintiff also must show that their injury was "directly" and "proximately" caused by the defendant's RICO violation. Holmes v. Sec. Invest. Prat. Corp., 503 U.S. 258, 266-68 (1992); George Lussier Enters., Inv. v. Subaru of New England, Inc., 393 F.3d 36, 51 (1st Cir. 2004).

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006) (emphasis added). Courts routinely dismiss civil RICO claims at the pleading stage where plaintiffs fail to allege a *direct* causal link between their injury and the defendant's alleged RICO violation. In fact, the Supreme Court has repeatedly ruled that RICO claims are subject to dismissal at the pleading stage for failure to plead a *direct* causal link between defendant's conduct and plaintiff's injury. *See* Hemi Grp., LLC v. City of New York, NY, 559 U.S. I, 18 (2010); Anza, 547 U.S. at 457-60.

In Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 207-08 (1990), petitioners

asserted that utility customers should be permitted to bring claims under the Clayton Act (Clayton Antitrust Law) in cases involving regulated public utilities that pass on 100 percent of their costs to their customers. *See* UtiliCorp, 497 U.S. at 208. The Supreme Court rejected this argument and held that the utilities had suffered antitrust injury as direct purchasers but that their customers, as indirect purchasers, had not. *See id*.

Importantly, courts have made clear that this antitrust analysis applies with equal force in the RICO context. *See* Trollinger v. Tyson Foods, Inc., 370 F.3d 602, 616 (6th Cir. 2004) ("[I]ndirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen . . . ."); McCarthy v. Record.ex Serv., Inc., 80 F.3d 842, 855 (3d Cir. 1996) (explaining that "antitrust standing principles apply equally to allegations of RICO violations"); Wooten v. Loshbaugh, 951 F.2d 768, 770 (7th Cir. 1991) (Posner, J.) ("[I]n RICO as in antitrust and in tort and contract law generally, liability stops at the first victim."); Macomb Interceptor Drain Drainage Dist. v. Kilpatrick, 896 F. Supp. 2d 650, 668 (E.D. Mich. 2012) ("The antitrust-standing analysis also bars [plaintiff] from establishing standing to assert its RICO claim.").

Plaintiffs cannot establish that Eng. Rodríguez proximately caused the alleged overcharges on their monthly electricity bills since, as established in the preceding section, there were no overcharges. Moreover, the Complaint states that Plaintiffs were only indirectly injured by the alleged RICO violations when PREPA supposedly passed along the cost of the fuel oil to its customers, who on Plaintiffs' allegations were indirect purchasers of the fuel oil at the end of the supply chain by way of consuming electricity. Due to the lack of any proximate causation between the alleged RICO violation and Eng. Rodríguez, **Plaintiffs lack standing to bring a RICO claim against him.**

### 4.     The Complaint Fails to Allege a viable RICO Enterprise

The RICO statute makes it unlawful for a "person employed by or associated with" an "enterprise" to conduct the affairs of the "enterprise" through a pattern of racketeering. 18 U.S.C. § 1962 (c).

"The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity apart and distinct from the pattern of activity in which it engages. The existence of an enterprise is, therefore, a separate element which must be proven." Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995) (citing United States v. Turkette, 452 U.S. 576, 583 (1981)). Plaintiffs fail to satisfy this element because they have not alleged:  (1) the required "distinctness" between the "persons" that committed the alleged violations and the "enterprise" through which the violation was committed, nor (2) a common purpose among the various Defendants.

### 5.   Plaintiffs Have Not Alleged a Distinct Enterprise

Section 1962(c) requires Plaintiffs to distinguish between the "person" that committed the predicate RlCO violation and the "enterprise" through which the "person" conducted the violation. See Cedric Kushner Ltd. v. King, 533 U.S. 158, 161 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same "person" referred to by a different name."); see also Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 448 (1st Cir. 2000) (the "person" alleged to be engaged in a racketeering activity must be distinct from the "enterprise"). This requirement stems from the text of the RlCO statute, which mandates a clear separation between the culpable party and the alleged racketeering enterprise-and forbids any claims against the alleged enterprise itself. *See*

18 U.S.C. § 1962(c); <u>Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago</u>, 747 F.2d 384, 400 (7th Cir. 1984), <u>aff'd</u>, 473 U.S. 606 (1985) ("[S]ection 1962(c) requires separate entities as the liable person and the enterprise which has its affairs conducted through a pattern of racketeering activity.").

Here, the Complaint states that the enterprise is composed of *all the Defendants*. (Compl. at 2). Because the Defendants and the enterprise are, plaintiffs allege, exactly the same entities, *the Complaint has failed to adequately allege the existence of a separate enterprise.* See <u>Miranda v. Ponce Fed Bank</u>, 948 F.2d 41, 44-45 (1st Cir. 1991) ("[T]he same entity cannot do double duty as both the RICO defendant and the RICO enterprise.").

### 6.  Plaintiffs Have Not Alleged a Common Purpose

The RICO statute defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. *§* 1961(4). Thus, there are two types of RICO enterprises: legal entities and associations-in-fact. *Libertad,* 53 F.3d at 441 (citing <u>Turkette,</u> 452 U.S. at 580-81). Here, because the Complaint alleges that the enterprise is composed of various separate legal entities (PREPA, oil suppliers and laboratories), plaintiffs unsuccessfully are attempting to allege the existence of an association-in-fact enterprise. An association-in-fact enterprise must be "a group of persons associated together for a *common purpose* of engaging in a course of conduct." <u>Turkette</u>, 452 U.S. 583 (emphasis added).

Aside from vague and conclusory allegations, nothing in the Complaint states that PREPA and or co-defendant Eng. Edwin Rodríguez shared a common purpose with any of

the other Defendants or conspired with any of them. The claims made in the Complaint are insufficient to establish an association-in-fact enterprise. See Gregory P. Joseph, Civil RICO: A Definitive Guide 93-94 (3d ed. 2010) ("If the constituents are competitors, if they are acting independently or at cross purposes-or if the allegation of common purpose is purely conclusory-this prong will not be satisfied.")

### 7.    The Complaint Fails to Allege a Pattern of Racketeering Activity

Under the RICO statute, a "pattern of racketeering activity" requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [October 15, 1979] and the last of which occurred within 10 years... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  The Complaint identifies mail and wire fraud as the predicate acts that it alleges constitute the "pattern of racketeering activity."   (Compl. at 248-50, 272, 288). As explained below, the Complaint *fails to adequately allege that PREPA and or Eng. Edwin Rodríguez engaged in any predicate acts of mail or wire fraud.*

### 8.    The Complaint Fails to Plead Mail and Wire Fraud with Particularity

Federal Rule of Civil Procedure 9 (b) requires that claims alleging fraud be pled with particularity. That rule extends to pleading predicate acts of mail and wire fraud under RICO. <u>Feinstein v. Resolution Trust Corp.</u>, 942 F.2d 34, 42 (lst Cir. 1991). "To pass Rule 9(b) muster, the complaint must plead with particularity the time, place and contents of the false representations as well as the identity of the person making the[m]...." <u>U S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.</u>, 147 F. Supp. 2d 39, 46 (D. Mass. 2001); see also <u>Powers v. Boston Cooper Corp.</u>, 926 F.2d 109, 111 (1st Cir.  1991) ("[Rule 9(b)] entails specifying in the pleader's complaint the time, place, and

content of the alleged false or fraudulent representations."); <u>Feinstein</u>, 942 F.2d at 42 (affirming dismissal of a civil RICO complaint, explaining that it failed to satisfy Rule 9(b)'s specificity requirement because plaintiffs did not "supply any… detail as to when the [allegedly fraudulent] communications occurred, where they took place, or what they contained").

The Complaint falls short of the Rule 9(b) standard as it fails to offer any particularized claims of mail or wire fraud against co-defendant Eng. Edwin Rodríguez. Instead, Plaintiffs resort to making generalized allegations that an undifferentiated group of Defendants made false statements in the course of the alleged scheme. *(See, e.g., id.* 249).   But lumping all the Defendants together and making blanket allegations against them fails to satisfy Rule 9(b)'s heightened pleading standard. "If a claim involves multiple defending parties, a claimant usually may not group all claimed wrongdoers together in a single set of allegations. Rather, the claimant must make specific and separate allegations against each defendant." 2 Moore's Federal Practice § 9.03[1][f]; see also <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs  to  differentiate their allegations when suing more than one defendant… and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'") (quoting <u>Haskin v. R.J Reynolds Tobacco Co.</u>, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)); <u>Ambrosia Coal & Const. Co. v. Pages Morales</u>, 482 F.3d 1309, 1316-17 ( 11th Cir. 2007) (civil RICO claim dismissed because "it was devoid of specific allegations with respect to each defendant" and "plaintiffs lumped together all of the defendants in their allegations of fraud")

9.    **The Complaint Fails to Allege that PREPA Specifically Intended to Defraud Plaintiffs**

"In order to make out a civil claim under RICO by way of wire fraud, a plaintiff must allege that a group of defendants 'engaged in a scheme to defraud with the specific intent to defraud and that they used... the interstate wires in furtherance of the scheme....'" Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 243-44 (1st Cir. 2006) (quoting McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 790 (1st Cir. 1990)); see also Mulligan v. Choice Mortg. Corp. *USA,* No. CIV. 96-596-B, 1998 WL 544431, at *7 (D.N.H. Aug. 11, 1998) (same); Schultz v. Rhode Island Hosp. Trust Nat. Bank, N.A., 94 F.3d 721, 731 (1st Cir. 1996) (explaining that lack of fraudulent intent on the defendant's part "dooms plaintiffs' allegations" that the defendant committed predicate acts of mail or wire fraud to support a civil RICO claim).

In the present case, the Complaint fails to allege that Eng. Edwin Rodríguez intended to defraud Plaintiffs.

10.    **Plaintiffs' Claims Are Time-Barred**

Additionally, Plaintiffs' decision to wait for more than a decade before bringing this lawsuit dooms their claims. When the allegations in a Complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds the applicable limitations period, a district court should grant a 12(b)(6) motion if the Complaint (and any other properly considered documents) "fails to 'sketch a factual predicate' that would" provide a basis for tolling the statute of limitations. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509-10 (1st Cir. 1998)). Plaintiffs' claims accrued long ago. The Complaint not only fails to provide a basis for tolling the statute of

limitations; it directly forecloses it.

The statute of limitations for civil RICO claims is *four years.* Agency Holding Corp. v. Malley-Duff & Assocs., *Inc.,* 483 U.S. 143, 156 (1987); Rodriguez v. Banco Central Corp., 917 F2d 664, 665 (1st Cir. 1990). In a RICO case, a plaintiff's action accrues against a defendant on the date that plaintiff discovers or should have discovered their injury. *See* Lares Group II v. Tobin, 221 F.3d 41, 43 (1st Cir. 2000); *Rodriguez,* 917 F.2d at 665-66 (citing Bankers Trust v. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988)).

In the present case, Plaintiffs' alleged injury occurred each time when they were charged for the cost of fuel oil on their monthly electricity bill. The critical question then is *when* Plaintiffs knew or *should have known* of that alleged injury. A plaintiff is considered to be on inquiry notice and the RICO statute of limitations starts to run "'even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry.'" Koch v. Christie's Int'l PLC, 699 F.3d 141, 151 (2d Cir. 2012) (quoting Koch v. Christie's Int'l PLC, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011)). Such storm warnings are sufficient where "'a person of ordinary intelligence would consider it 'probable' that fraud had occurred.'" *Id.* (quoting *Koch,* 785 F. Supp. 2d at 114).

As the Complaint makes clear, storm warnings put Plaintiffs at least on inquiry notice of their alleged RICO injuries more than a decade ago therefore, the *statute of limitations began to run far more than four years before this lawsuit was filed*.

Recognizing that their claims are time-barred, Plaintiffs attempt to seek refuge behind the doctrine of fraudulent concealment. *(See* Comp. at 263-67). But fraudulent concealment may toll a limitations period only in "exceptional circumstances." *See* Nat'l

Grp. for Commc'ns & Computers Ltd. v. Lucent Tech. Inc., 420 F. Supp. 2d 253, 264-65 (S.D.N.Y. 2006). To meet this heavy burden, a plaintiff must establish three elements: (1) wrongful concealment of the relevant conduct by the defendant; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts. See Berkson v. Del Monte Corp., 743 F.2d 53, 55 (1st Cir. 1984). Each of these three elements must be pleaded with particularity under Rule 9(b).

*The Plaintiffs in the present case miss the mark on all three.*

(i)      Plaintiffs have offered no facts to show that Eng. Edwin Rodríguez or any other Defendant took steps to wrongfully conceal any aspect of the fuel oil contracts or deliveries.

(ii)     Plaintiffs were not prevented from discovering any of the facts underlying their claims.

(iii)    The Complaint fails to plead that Plaintiffs engaged in any kind of investigation or were otherwise diligent in trying to discover their claims. See Kiehr v. A. O. Smith Corp., 521 U.S. 179, 194 (1997) ("[A] plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'").

Given their failure to plead any of the three elements with the particularity required under Rule 9(b), Plaintiffs are unable to properly invoke the fraudulent concealment doctrine, and their claims remain untimely.

**11.      Plaintiffs' RICO Claim is Barred by the Filed Rate Doctrine**

Plaintiffs' RICO claim is also barred by the filed rate doctrine, a common law rule which precludes suits against regulated utilities, such as PREPA, grounded on the allegation that the rates charged by the utility are unreasonable. Said doctrine, set forth in <u>Keogh v. Chicago & Northwestern Railway Co.</u>, "imposes a limitation on private claims for damages based on challenges to filed rates". See, e.g., <u>Square D. Co. v. Niagara  Frontier  Tariff Bureau</u>,  *Inc.,* 476 U.S. 409, 416, 426 (1986); <u>Keough v. Chicago  & Northwestern  Ry.,</u> 260 U.S.  156, 163-65 (1922); <u>Texas & Pacific Ry. v. Abilene Cotton Oil Co.</u>, 204 U.S. 426, 448 (1907).

While the First Circuit has not yet considered a filed rate defense to a civil RICO claim, other Circuits have done so. *See, e.g.,* <u>Wegoland Ltd. v. NYNEX Corp.</u>, 27 F.3d  17, 20-22 (2d Cir. 1994) (rejecting civil RICO claim alleging that telephone companies obtained rate increases by providing misleading information to regulatory agencies); <u>H J, Inc. v. Northwestern Bell Tel. Co.</u>, 954 F.2d 485, 492 (8th Cir. 1992) (rejecting civil RICO claim alleging that telephone company bribed public utilities commission to set higher rates); <u>Taffet v. Southern Co., 967</u> F.2d 1483, 1491-94 (11th Cir. 1992)  (affirming dismissal of the Plaintiffs' civil RICO claims pursuant to the filed rate doctrine).

In the present case, Plaintiffs cannot maintain or sustain their civil RICO claim since their measure of alleged damages will be "determined by comparing the approved rate and the rate that allegedly would have been approved absent the wrongful conduct." *H J,* 954 F.2d at 488 (internal citations omitted). Moreover, because the filed rate doctrine precludes Plaintiffs' from challenging the rates charged to them by PREPA, Plaintiffs' cannot establish that they have been damaged. This precludes their claims, as Plaintiffs' cannot sustain claims where they cannot prove that they have been damaged.

### C.  PLAINTIFFS FAIL TO ALLEGE A RICO CONSPIRACY CLAIM

In addition to a substantive RICO claim, Plaintiffs also allege a RICO conspiracy in violation of 18 U.S.C. § 1962(d). In order to make out a claim under Section 1962(d), Plaintiffs must satisfy the same elements as a substantive RICO claim, plus they must show that each Defendant "knowingly *entered into an agreement* to commit two or more predicate crimes." Miranda, 948 F.2d at 47-48 (emphasis added); see also COFACREDIT, SA. v. Windsor Plumbing Supply Co., 187 F.3d 229, 244 (2d Cir. 1999) ("To establish the existence of a RICO conspiracy, a plaintiff must prove 'the existence of an agreement to violate RICO's substantive provisions.'") (internal citations omitted).

As an initial matter, Plaintiffs' inability to establish a substantive RICO violation *(see* Section II *supra)* is fatal to their conspiracy claim. *See Miranda,* 948 F.2d at 45 n.4 (RICO conspiracy count "need not be discussed separately" when substantive claim is dismissed for failure to plead a cognizable "enterprise"); *see also Turner v. Cook,* 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) ("Because appellants failed to allege the requisite substantive elements of a RICO claim under 18 U.S.C. § 1962(c), appellants' claim under 18 U.S.C. § 1962(d)... also fails."); BancOklahoma Mortg. Corp. v. Capital Title Co., 194 F.3d 1089, 1103 (10th Cir. 1999) ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit.").

Further, a conspiracy claim under Section 1962(d) "must charge that defendants knowingly entered into an agreement to commit two or more predicate crimes."   See Miranda, 948 F.2d at 47-48; see also Feinstein, 942 F.2d at 41 ("[E]ach defendant in a RICO conspiracy case must have joined knowingly in the scheme and been involved himself, directly or indirectly, in the commission of at least two predicate offenses."). The

Complaint's conspiracy allegations are perfunctory and fail to adequately allege an agreement between PREPA, Eng. Edwin Rodríguez and any of the other Defendants to commit criminal predicate acts. And, as noted above, Plaintiffs fail to show the commission of predicate RICO acts by PREPA and or Eng. Edwin Rodríguez. "Like RICO claims generally... a RICO conspiracy claim that is alleged in wholly conclusory terms will not withstand a motion to dismiss." See Miranda, 948 F.2d at 48; *cf* Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989) (conclusory allegations of conspiracy are insufficient to state a claim under 42 U.S.C. § 1983). Accordingly, Plaintiffs' RICO conspiracy claim is without merit and should be dismissed.

### D.  PLAINTIFFS FAIL TO ALLEGE AN UNJUST ENRICHMENT CLAIM

Finally, Plaintiffs claim that Eng. Edwin Rodríguez and the other Defendants were unjustly enriched through the alleged scheme.  (Compl. at paragraphs 290-92).  To the extent Plaintiffs are seeking to use unjust enrichment to recover where their indirect purchaser claims are otherwise barred by Utilicorp, *supra*, and its predecessor, Illinois Brick Co. v. Illinois, 431 U.S. 720, (1977), that effort is foreclosed.  Cf. In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011) ("[I]t is beyond peradventure that indirect purchasers may not employ unjust enrichment to skirt the limitation on recovery imposed by *[Illinois Brick]*."); In re Abbott Labs Norvir Antitrust Litig., 562 F. Supp. 2d I 080, l 090 (N.D. Cal. 2008), *reversed on other grounds,* 571 F.3d 930 (9th Cir. 2009) ("[B]ecause Plaintiffs' unjust enrichment claim appears to be premised wholly on [defendant's] alleged violation of federal antitrust law, Illinois Brick bars them from obtaining restitution based on those claims.").

Nor can Plaintiffs make out a claim for unjust enrichment on the merits.

The elements of unjust enrichment are: (i) occurrence of an enrichment; (ii) a correlative loss; (iii) a connection between the loss and the enrichment; (iv) absence of cause to justify the enrichment; and (v) lack of a legal provision which precludes application of an enrichment without cause. *See* Puerto Rico Tel. Co. v. SprintCom, Inc., 662 F.3d 74, 97 (1st Cir. 2011) (citing Hatton v. Municipality of Ponce, 1994 P.R.-Eng. 909, 605, 134 D.P.R. 1001, 1010 (P.R. 1994)); Ortiz Andujar v. E L.A.,1998 P.R.-Eng. 580, 737, 122 D.P.R. 817, 823 (P.R. 1988).

Plaintiffs cannot satisfy the aforementioned elements since, as set forth above, the Complaint fails to plead that Plaintiffs suffered or that Eng. Edwin Rodríguez proximately caused any loss. *(See* Section II.A, *supra*).

### E.  THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

For the foregoing reasons, Plaintiffs' claims against Mr. Edwin Rodríguez should be dismissed. Although leave to amend is often freely given after a complaint is dismissed for failure to state a claim, leave is not required where amendment of the complaint would be futile. See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996) (holding that a motion to amend should be denied as futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted").

While some of the deficiencies in Plaintiffs' Complaint stem from a failure to plead with adequate particularity, there are others that are beyond repair, such as the staleness of Plaintiffs' claims, Plaintiffs' inability to prove damages, Plaintiffs' status as indirect purchasers, and the fact that Plaintiffs' claims run afoul of the filed rate doctrine. Since any further amendment of the Complaint would be fruitless, the Court should dismiss the Complaint with prejudice.

**CONCLUSION**

Defendant Eng. Edwin Rodríguez respectfully requests that the Honorable Court dismiss the Complaint against him.

**RESPECTFULLY SUBMITTED**

**WE HEREBY CERTIFY** that on this same date copy of this document has been served via the CM/ECF system upon counsel of record in this matter.

In San Juan, Puerto Rico, this 8th day of May, 2015.

**LAW OFFICES OF IVAN M. FERNANDEZ**
ATTORNEYS FOR CODEFENDANT
ENG. EDWIN RODRIGUEZ
P O BOX 192386
SAN JUAN, PUERTO RICO 00919-2386
Tel: 787-753-1215  Fax: 787-759-9313
Email: fernandez@lawofimf.com

s/IVAN M. FERNANDEZ
IVAN M. FERNANDEZ
USDC-PR NO. 119513

**VICENTE & CUEBAS**
P.O. Box 11609
San Juan, P.R. 00910-1609
Phone    (787) 751-8000
Facsimile (787) 756-5250

/s Harold D. Vicente
**Harold D. Vicente**
USDC-PR 117711
E-Mail: hvicente@vc-law.net