# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

ISMAEL MARRERO ROLÓN, ANNE
CATESBY JONES, JORGE VALDES
LLAUGER, PUERTO RICO BATHROOM
REMODELING, INC., PERFORMANCE
CHEMICALS COMPANY INC.,

        Plaintiffs,

        v.

AUTORIDAD DE ENERGÍA ELÉCTRICA
A/K/A PUERTO RICO ELECTRIC POWER
AUTHORITY; WILLIAM RODNEY
CLARK; EDWIN RODRIGUEZ; CÉSAR
TORRES MARRERO; INSPECTORATE
AMERICA CORPORATION; BUREAU
VERITAS HOLDING, INC.; CORE
LABORATORIES N.V. D/B/A SAYBOLT;
ALTOL CHEMICAL ENVIRONMENTAL
LABORATORY INC. D/B/A ALCHEM
LABORATORY; ALTOL
ENVIRONMENTAL SERVICES, INC. D/B/A
ALTOL ENTERPRISES; PETROBRAS
AMERICA, INC.; PETROLEO BRASILEIRO
S.A.; CARLOS R. MÉNDEZ &
ASSOCIATES; SHELL TRADING (US)
COMPANY; PUMA ENERGY CARIBE
LLC; PUMA ENERGY INTERNATIONAL,
B.V.; TRAFIGURA A.G.; TRAFIGURA
BEHEER, B.V.; PETROWEST, INC.; VITOL
S.A., INC.; VITOL, INC.; JOHN DOES 1-100,

        Defendants.

CIVIL NO. 3:15-cv-01167-JAG

## DEFENDANT PUERTO RICO ELECTRIC POWER AUTHORITY'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT................................................................................1

THE COMPLAINT'S ALLEGATIONS..................................................................3

ARGUMENT .........................................................................................................4

I.   RULE 12 (b)(6) Fed. R. Civ. P. STANDARD .........................................4

II.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER RICO ...................5

    A.   Plaintiffs Lack Standing................................................................5

        1.   Plaintiffs Were Not Harmed, As They Paid Exactly What They Were Supposed to Pay for the Electricity They Consumed ................5

        2.   The Complaint Fails To Allege That PREPA Proximately Caused Any Injury……………………………………………………...…7

    B.   The Complaint Fails to Allege a Viable RICO Enterprise…………………..9

        1 .   Plaintiffs Have Not Alleged a Distinct Enterprise ............................ 10

        2.   Plaintiffs Have Not Alleged a Common Purpose ............................ 11

    C.   The Complaint Fails to Allege a Pattern of Racketeering Activity ............. 11

        1.   The Complaint Fails to Plead Mail and Wire Fraud with Particularity…………………………………………..……………12

        2.   The Complaint Fails to Allege that PREPA Specifically Intended to Defraud Plaintiffs……………………………………………..…13

    D.   Plaintiffs' Claims Are Time-Barred............................................................. 14

    E.   Plaintiffs' RICO Claim is Barred by the Filed Rate Doctrine .................... 16

III. PLAINTIFFS FAIL TO ALLEGE A RICO CONSPIRACY CLAIM ...................17

IV.  PLAINTIFFS FAIL TO ALLEGE AN UNJUST ENRICHMENT CLAIM..........19

V.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.................20

CONCLUSION .....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                 **<u>Page(s)</u>**

*In re Abbott Labs Norvir Antitrust Litig.,*
    562 F. Supp. 2d 1080 (N.D. Cal. 2008), *reversed on other grounds,*
    571 F.3d 930 (9th Cir. 2009)......................................................................19

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,*
    483 U.S. 143 (1987) ................................................................................15

*Ambrosia Coal & Const. Co. v. Pages Morales,*
    482 F.3d 1309 (11th Cir. 2007) ...............................................................13

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006)………………………………………………………....8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................4, 5

*BancOklahoma Mortg. Corp. v. Capital Title Co.,*
    194 F.3d 1089 (10th Cir. 1999) ...............................................................18

*Bankers Trust v. Rhoades,*
    859 F.2d 1096 (2d Cir. 1988) ..................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)………………………………………………………4, 5

*Berkson v. Del Monte Corp.,*
    743 F.2d 53 (1st Cir. 1984)......................................................................16

*Bessette v. Avco Fin. Servs., Inc.,*
    230 F.3d 439 (lst Cir. 2000) ....................................................................10

*Brennan v. Hendrigan,*
    888 F.2d 189 (1st Cir. I989) ....................................................................19

*COFACREDIT, S.A. v. Windsor Plumbing Supply Co.,*
    187 F.3d 229 (2d Cir. 1999) ....................................................................18

*Cedric Kushner Ltd. v. King,*
    533 U.S. 158 (2001) ................................................................................10

*Cordero-Hernandez. v. Hernandez-Ballesteros,*
    449 F.3d 240 (1st Cir. 2006)....................................................................13

*In re Digital Music Antitrust Litig.,*
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) .......................................................19

*Evans v. City of Chicago,*
    434 F.3d 916 (7th Cir. 2006), *overruled on other grounds by*
    *Hill v. Tangherlini,* 724 F.3d 965 (7th Cir. 2013) ........................................5

*Feinstein v. Resolution Trust Corp.,*
    942 F.2d 34 (1st Cir. 1991)...................................................................12, 18

*George Lussier Enters., Inv. v. Subaru of New England, Inc.,*
    393 F.3d 36 (1st Cir. 2004)……………………………………………………....8

*Glassman v. Computervision Corp.,*
    90 F.3d 617 (1st Cir. 1996)……………………………………………………..20

*H.J., Inc. v. Northwestern Bell Tel. Co.,*
    954 F.2d 485 (8th Cir. 1992)...................................................................17

*Haroco, Inc. v. Am. Nat. Bank & Trust Co. of Chicago,*
    747 F.2d 384 (7th Cir. 1984), *aff'd,* 473 U.S. 606 (1985)...........................10

*Haskin v. R.J. Reynolds Tobacco Co.,*
    995 F. Supp. 1437 (M.D. Fla. 1998) .......................................................13

*Hatton v. Municipality of Ponce,*
    1994 P.R.-Eng. 909, 605, 134 D.P.R. 1001 (P.R. 1994)……………………....19

*Hemi Grp., LLC v. City of New York, N.Y,*
    559 U.S. 1 (2010)…………………………………………………………....8

*Holmes v. Sec. Invest. Prot. Corp.,*
    503 U.S. 258 (1992) ...............................................................................8

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977).............................................................................19

*Kansas v. UtiliCorp United, Inc.,*
    497 U.S. 199 (1990) ...........................................................................8, 19

*Keough v. Chicago & Northwestern Ry.,*
    260 U.S. 156 (1922) ............................................................................17

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179 (1997)............................................................................16

*Koch v. Christie's Int'l PLC,*
    699 F.3d 141 (2d Cir. 2012) ..................................................................15

*Koch v. Christie's Int'l PLC,*
    785 F. Supp. 2d 105 (S.D.N.Y. 2011) ......................................................15

*LaChapelle v. Berkshire Life Ins. Co.,*
    142 F.3d 507 (1st Cir. 1998).................................................................14

*Lares Group II v. Tobin,*
    221 F.3d 41 (1st Cir. 2000)...................................................................15

*Libertad v. Welch,*
    53 F.3d 428 (1st Cir. 1995) .................................................................9, 11

*Macomb Interceptor Drain Drainage Dist. v. Kilpatrick,*
   896 F. Supp. 2d 650 (E.D. Mich. 2012)……………………………………………9

*McCarthy v. Recordex Serv., Inc.,*
   80 F.3d 842 (3d Cir. 1996)…………………………………………………………8

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,*
   904 F.2d 786 (1st Cir. 1990)....................................................................13

*Miranda v. Ponce Fed. Bank,*
   948 F.2d 41 (1st Cir. 1991)....................................................................10, 18, 19

*Mulligan v. Choice Mortg. Corp. USA, No. CIV 96-596-B,*
   1998 WL 544431 (D.N.H. Aug. 11, 1998)................................................ 13

*Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Tech. Inc.,*
   420 F. Supp. 2d 253 (S.D.N.Y. 2006)....................................................... 16

*Ortiz Andujar v. E.L.A.,*
   1998 P.R.-Eng. 580, 122 D.P.R. 817 (P.R. 1988) ...................................... 19

*Powers v. Boston Cooper Corp.,*
   926 F.2d 109 (1st Cir. 1991) .................................................................. 12

*Puerto Rico Tel. Co. v. SprintCom, Inc.,*
   662 F.3d 74 (1st Cir. 2011) ..................................................................19

*Rodriguez v. Banco Central Corp.,*
   917 F.2d 664 (1st Cir. 1990)..................................................................15

*Schultz v. Rhode Island Hosp. Trust Nat. Bank, N.A.,*
   94 F.3d 721 (1st Cir. 1996)....................................................................13

*Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.,*
   476 U.S. 409 (1986) ............................................................................17

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) .................................................................13

*Taffet v. Southern Co.,*
   967 F.2d 1483 (11th Cir. 1992)..............................................................17

*Texas & Pacific Ry. v. Abilene Cotton Oil Co.,*
   204 U.S. 426 (1907)............................................................................17

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.,*
   524 F.3d 315 (1st Cir. 2008)..................................................................14

*Trollinger v. Tyson Foods, Inc.,*
   370 F.3d 602 (6th Cir. 2004)……………………………………………………8

*Turner v. Cook,*
   362 F.3d 1219 (9th Cir. 2004) ...............................................................18

*US. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.,*
   147 F. Supp. 2d 39 (D. Mass. 2001)........................................................12

*United States v. Turkette,*
   452 U.S. 576 (1981) ........................................................................................ 9, 11

*Wegoland Ltd.* v. *NYNEX Corp.,*
   27 F.3d 17 (2d Cir. 1994)…………………………………………………...17

*Wooten v. Loshbough,*
   951 F.2d 768 (7th Cir. 1991)…………………………………...…………………..9

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,*
   530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd,* 328 F. App'x 695 (2d Cir. 2009) ......5

## Statutes

22 L.P.R.A. § 196……………………………………………………………….14

18 U.S.C. § 1961(4)……………………………………………………………....11

18 U.S.C. § 1961(5)................................................................................................ 12

18 U.S.C. § 1962(c) ……………………………………………………….9, 10, 18

18 U.S.C. § 1962(d) ……………………………………………....……..17, 18

18 U.S.C. § 1964(c) ………………………………………………………….....5

42 U.S.C. § 1983……………………………………………………….....19

Fed. R. Civ. P. 9(b) ...................................................................................2, 12, 13, 16

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 4, 14

## Miscellaneous

Gregory P. Joseph, Civil RICO: A Definitive Guide 93 (3d ed. 2010)……………..…11

2 MOORE'S FEDERAL PRACTICE § 9.03[1][f]….........................................................13

Defendant Puerto Rico Electric Power Authority ("PREPA") submits this Memorandum of Law in support of its Motion to Dismiss the Class Action Complaint filed in Case No. 3:15-cv-01167-JAG (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In their Complaint, Plaintiffs claim PREPA violated the Racketeer Influenced Corrupt Organizations Act ("RICO"), conspired to violate RICO, and further incurred in unjust enrichment. According to their allegations, a certain group of "Fuel Oil Suppliers" provided fuel oil to PREPA which did not meet contractual or Environmental Protection Agency ("EPA") specifications, but was nonetheless accepted by PREPA in exchange for undisclosed kickbacks or commissions from unspecified Defendants. For the reasons discussed herein below, these allegations fail to state a claim against PREPA and, thus, must be dismissed.

*First,* Plaintiffs cannot establish RICO standing, which requires them to claim the suffering of a "concrete and actual" injury "directly and proximately" caused by the Defendants' conduct. Plaintiffs maintain that they were overcharged on their monthly electricity bills as a result of an alleged RICO conspiracy. However, Plaintiffs have not alleged, did not suffer, and cannot prove any harm whatsoever arising from the allegations found in the Complaint. Also and equally important is the fact that Plaintiffs have failed to demonstrate that PREPA is "directly and proximately" responsible for any of their alleged injuries.

*Second,* Plaintiffs have failed to allege a viable RICO enterprise. The predicate RICO violation for Plaintiffs' claim – Section 1962(c) – makes it unlawful for a "person

- 1 -

employed by or associated with" an "enterprise" to conduct the affairs of the "enterprise" through a pattern of racketeering. Plaintiffs allege that the enterprise in the present case is composed of all the Defendants. RICO, however, does not permit the same entity to be both the Defendant "person" and the "enterprise". Moreover, the Complaint fails to show that the assorted Defendants shared a common purpose. As such, Plaintiffs' allegations are insufficient to support a RICO claim.

*Third*, the Complaint fails to plead a pattern of racketeering activity. Plaintiffs purport to allege predicate acts of mail fraud and wire fraud, but such claims must be pled with particularity under Federal Rule of Civil Procedure 9(b). The Complaint makes allegations against a generalized, undifferentiated group of Defendants. Courts consistently reject these types of vague allegations that merely lump together multiple Defendants in an effort to show guilt-by-association.

*Fourth*, Plaintiffs' claims are untimely for they were on notice of their alleged injuries more than a decade before filing the present lawsuit and have not pleaded any facts sufficient to toll the statute of limitations.

*Fifth*, the filed rate doctrine bars Plaintiffs' RICO claim, as Plaintiffs' damages would be determined by comparing the rate set by a regulated utility – PREPA – and the rate they contend would have been approved absent the fraudulent scheme.

*Sixth*, Plaintiffs fail to establish a concrete and substantial RICO violation, which is fatal to their conspiracy claim.

*Seventh*, Plaintiffs are precluded from pursuing an unjust enrichment claim because in their own allegations they establish that they have not suffered any loss.

For all of the aforementioned reasons, the Complaint against PREPA should be dismissed in its entirety.

<u>**THE COMPLAINT'S ALLEGATIONS**</u>

Puerto Rico gets two-thirds of its electricity from petroleum or fuel oil. (Compl. ¶ 46). PREPA is a public corporation and government instrumentality that owns the electric distribution system for Puerto Rico's main island, as well as the islands of Vieques and Culebra.  (*Id.* ¶ 12). PREPA also owns all but two of Puerto Rico's power generation stations. (*Id.*).  Because Puerto Rico neither produces nor refines fuel oil itself, all of the petroleum that PREPA converts into electricity is imported. (*Id.* ¶ 46).

The fuel oil PREPA imports must meet certain chemical specifications set by the EPA and by contract with PREPA's suppliers. (*Id.* ¶ 1). The Complaint categorizes the imported oil into two types: "Compliant Fuel Oil" that meets these specifications and "Non-Compliant Fuel Oil" which does not.  (*Id.*).  Plaintiffs state in conclusory fashion that Non-Compliant Fuel Oil is cheaper than Compliant Fuel Oil. (*Id.* ¶ 3).

Plaintiffs claim that PREPA and certain of its employees conspired with fuel oil suppliers and laboratories – which tested the specifications of the fuel oil provided by the suppliers – to engage in a scheme where PREPA ordered and paid for more expensive Compliant Fuel Oil, but instead accepted less expensive Non-Compliant Fuel Oil provided by the fuel oil suppliers. (*Id.* ¶¶ 1-2, 74-75). Plaintiffs further claim that in return for receiving payment for a more expensive grade of fuel oil than what they actually provided, the fuel oil suppliers allegedly agreed to pay PREPA and its agents "undisclosed kickbacks, including lavish trips and parties." (*Id.* ¶¶ 1-2, 75-76, 263-64, 271, 274-75).  It is further alleged that in order to facilitate the scheme, in exchange for repeat

business, the laboratories allegedly falsified analyses, thereby certifying that Non-Compliant Fuel Oil provided by the fuel oil suppliers was compliant (*Id.* ¶¶ 2, 73-74).

According to the Complaint, "[a]s a result of this scheme, PREPA overpaid its fuel suppliers for fuel oil and passed through the entire cost of the Non-Compliant Fuel Oil to Plaintiffs and the Class on their regular monthly electricity bills." (*Id.* ¶ 1). Plaintiffs are suing on behalf of "[a]ll persons or entities that paid [PREPA] for electricity during the period January 1, 2002 to the present." (*Id.* ¶ 251). In other words, thirteen years.

## ARGUMENT

### I.      RULE 12 (b)(6) Fed. R. Civ. P. STANDARD

A complaint is subject to dismissal if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must both assert a plausible claim and set forth sufficient factual allegations to support the claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570 (2007)). Neither a "'formulaic recitation of the elements of a cause of action'" nor "'naked assertion[s] [of fact]' devoid of 'further factual enhancement'" is sufficient to withstand dismissal. *Id.* (citing *Twombly,* 550 U.S. at 555, 557). To satisfy the standard under *Twombly* and *Iqbal,* "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly,* 550 U.S. at 570).

A claim is facially plausible when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that the defendant is liable under the alleged claim. *Id.* (citing *Twombly,* 550 U.S. at 556). "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." (*Id.*). In other words, when evaluating whether a complaint states a claim for relief, conclusory allegations should be disregarded. (*Id.* ¶ 679).

For the reasons set forth below, Plaintiffs fail to allege sufficient facts in support of their claims to satisfy the pleading standards set forth in *Twombly* and *Iqbal*.

## II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER RICO

### A.  Plaintiffs Lack Standing

The civil RICO provision in 18 U.S.C. § l964(c) grants standing to "[a]ny person injured in his business or property by reason of" a RICO violation. Plaintiffs fail that threshold test for the following two (2) reasons: they do not adequately allege harm to their business or property and they fail to assert that PREPA proximately caused their alleged injury.

### 1.      Plaintiffs Were Not Harmed, As They Paid Exactly What They Were Supposed to Pay for the Electricity They Consumed

A threshold requirement in any civil RICO case is that the plaintiffs actually suffered an injury to their business or property. *See* 18 U.S.C. § 1964(c). "[E]very court that has addressed this issue has held that injuries proffered by plaintiffs in order to confer RICO standing must be 'concrete and actual,' as opposed to speculative and amorphous." *Evans v. City of Chicago,* 434 F.3d 916, 932 (7th Cir. 2006), *overruled on other grounds by Hill* v. *Tangherlini,* 724 F.3d 965, 967 n.l (7th Cir. 2013); *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,* 530 F. Supp. 2d 486, 520-21 (S.D.N.Y. 2007), *aff'd,* 328 F. App'x 695 (2d Cir. 2009) ("[T]he requirement of a concrete financial loss proximately caused by the wrongful conduct of RICO defendants is not easily met.") (internal citations omitted). Here, there is no injury as the Complaint fails to

demonstrate that Plaintiffs paid anything other than the amount they were supposed to pay for the electricity they consumed.

PREPA uses the fuel oil it imports to combust and produce electricity "and passes the cost of the fuel oil directly onto its customers, which appears on the customers' bills within two billing cycles." (Compl. ¶ 66). According to the Complaint, PREPA was required to use fuel oil that met certain specifications dictated by the EPA in a 1999 Consent Decree, as amended in 2004. (*Id.* ¶ 1). Plaintiffs do not suggest that Non-Compliant Fuel Oil is less efficient or that it somehow results in the generation of less electricity than Compliant Fuel Oil. Rather, in entirely conclusory fashion, the Complaint merely states, without any supporting facts, that Non-Compliant Fuel Oil is cheaper than Compliant Fuel Oil. (*Id.* ¶ 3). Notably, the Complaint fails to quote comparative prices for Compliant and Non-Compliant Fuel Oil. Based solely on that conclusory statement, Plaintiffs claim that they "have made thousands of dollars in payments for fuel oil that they would not have made had Defendants not engaged in their pattern of racketeering activity." (*Id.* ¶ 279).

In fact, the Complaint shows otherwise. The Complaint explains that, absent fraud, PREPA was supposed to reject Non-Compliant Fuel Oil and only accept Compliant Fuel Oil on threat of substantial monetary and criminal penalties from the EPA. (*Id.* ¶¶ 65, 150). Since PREPA was only permitted to accept Compliant Fuel Oil, it necessarily was required to pass the cost of Compliant Fuel Oil on to the Plaintiffs. (*Id.* ¶ 66). Combined with the failure to allege or show that Non-Compliant Fuel Oil is any less efficient, the Complaint makes clear that Plaintiffs would have used the same

- 6 -

amount of electricity and paid exactly the same amount – the cost of Compliant Fuel Oil – irrespective of the alleged RICO scheme.

In other words, even accepting Plaintiffs' allegations as true, Plaintiffs' theory is that PREPA paid the higher prices of Compliant Fuel Oil and passed along that cost to consumers even though it allegedly received at times Non-Compliant Fuel Oil. So, on Plaintiffs' case, consumers paid prices for electricity as if they were receiving electricity generated on the basis of Compliant Fuel Oil, which is precisely what the putative class members were supposed to pay for their electricity if the Defendants had not allegedly delivered Non-Compliant Fuel Oil to PREPA. This means that there necessarily can be no damages caused to Plaintiffs from the alleged RICO scheme.

Furthermore, Plaintiffs cannot rely on their claim that Non-Compliant Fuel Oil "is dirtier and more harmful to the environment" to establish a "concrete and actual" injury. (*Id.* ¶ 3). Nowhere does the Complaint allege or even suggest that any supposed environmental harm injured the Plaintiffs in their business or property, as required for RICO standing. Accordingly, the Court should dismiss the RICO claim against PREPA for failure to allege a RICO injury and hence for lack of standing. Plaintiffs' statements regarding the environmental injury or detrimental health consequence to Plaintiffs, of the alleged purchase of Non-Compliant fuel is completely inapplicable to the allegations made in the complaint, since the injury would only be possible if such Non-Compliant fuel is actually burn during the process of generation. Such is not the case here.

### 2.   The Complaint Fails To Allege That PREPA Proximately Caused Any Injury

To establish standing, it is not enough that a plaintiff be injured in their business or property. A plaintiff must also show that their injury was "directly" and "proximately" caused

by the defendant's RICO violation. *Holmes v. Sec. Invest. Prat. Corp.,* 503 U.S. 258, 266-68 (1992); *George Lussier Enters., Inv. v. Subaru of New England, Inc.,* 393 F.3d 36, 51 (1st Cir. 2004). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (2006) (emphasis added). Courts routinely dismiss civil RICO claims at the pleading stage where plaintiffs fail to allege a "direct" causal link between their injury and the defendant's alleged RICO violation. In fact, the Supreme Court has repeatedly ruled that RICO claims are subject to dismissal at the pleading stage for failure to plead a "direct" causal link between defendant's conduct and plaintiff's injury. *See Hemi Grp., LLC v. City of New York, NY,* 559 U.S. 1, 18 (2010); *Anza,* 547 U.S. at 457-60.

In *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 207-08 (1990), the petitioners asserted that utility customers should be permitted to bring claims under the Clayton Act in cases involving regulated public utilities that pass on 100 percent of their costs to their customers. *See UtiliCorp,* 497 U.S. at 208. The Supreme Court rejected this argument and held that the utilities had suffered antitrust injury as direct purchasers but that their customers, as indirect purchasers, had not. (*Id.*).

Importantly, courts have made clear that this antitrust analysis applies with equal force in the RICO context. *See Trollinger v. Tyson Foods, Inc.,* 370 F.3d 602, 616 (6th Cir. 2004) ("[I]ndirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen . . . ."); *McCarthy v. Recordex Serv., Inc.,* 80 F.3d 842, 855 (3d Cir. 1996) (explaining that "antitrust standing principles

apply equally to allegations of RICO violations"); *Wooten v. Loshbough,* 951 F.2d 768, 770 (7th Cir. 1991) (Posner, J.) ("[I]n RICO as in antitrust and in tort and contract law generally, liability stops at the first victim."); *Macomb Interceptor Drain Drainage Dist. v. Kilpatrick,* 896 F. Supp. 2d 650, 668 (E.D. Mich. 2012) ("The antitrust-standing analysis also bars [plaintiff] from establishing standing to assert its RICO claim.").

Plaintiffs cannot establish that PREPA proximately caused the alleged overcharges on their monthly electricity bills since, as established in the preceding section, there were no overcharges. Moreover, the Complaint states that Plaintiffs were only indirectly injured by the alleged RICO violations when PREPA supposedly passed along the cost of the fuel oil to its customers, who on Plaintiffs' allegations were indirect purchasers of the fuel oil at the end of the supply chain by way of consuming electricity. Due to the lack of any proximate causation between the alleged RICO violation and PREPA, Plaintiffs lack standing to bring a RICO claim against PREPA.

**B.    The Complaint Fails to Allege a Viable RICO Enterprise**

The RICO statute makes it unlawful for a "person employed by or associated with" an "enterprise" to conduct the affairs of the "enterprise" through a pattern of racketeering. *See* 18 U.S.C. § 1962 (c). "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity apart and distinct from the pattern of activity in which it engages. The existence of an enterprise is, therefore, a separate element which must be proven." *Libertad v. Welch,* 53 F.3d 428, 441 (1st Cir. 1995) (citing *United States v. Turkette,* 452 U.S. 576, 583 (1981)). Plaintiffs fail to satisfy this element because they have not alleged (1) the required "distinctness" between the "persons" that committed the violation and the

"enterprise" through which the violation was committed, or (2) a common purpose among the various Defendants.

### 1.  Plaintiffs Have Not Alleged a Distinct Enterprise

Section 1962(c) requires Plaintiffs to distinguish between the "person" that committed the predicate RICO violation and the "enterprise" through which the "person" conducted the violation. *See Cedric Kushner Ltd. v. King,* 533 U.S. 158, 161 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same "person" referred to by a different name."); *see also Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 448 (1st Cir. 2000) (the "person" alleged to be engaged in a racketeering activity must be distinct from the "enterprise"). This requirement stems from the text of the RICO statute, which mandates a clear separation between the culpable party and the alleged racketeering enterprise-and forbids any claims against the alleged enterprise itself. *See* 18 U.S.C. § 1962(c); *Haroco, Inc.* v. *Am. Nat. Bank & Trust Co. of Chicago,* 747 F.2d 384, 400 (7th Cir. 1984), *aff'd,* 473 U.S. 606 (1985) ("[S]ection 1962(c) requires separate entities as the liable person and the enterprise which has its affairs conducted through a pattern of racketeering activity.").

Here, the Complaint states that the enterprise is composed of *all the Defendants.* (Compl. ¶ 2). Because the Defendants and the enterprise are exactly the same entities, the Complaint has failed to adequately allege the existence of a separate enterprise. *See Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44-45 (1st Cir. 1991) ("[T]he same entity cannot do double duty as both the RICO defendant and the RICO enterprise.").

### 2.      Plaintiffs Have Not Alleged a Common Purpose

The RICO statute defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Thus, there are two types of RICO enterprises: legal entities and associations-in-fact.  *Libertad,* 53 F.3d at 441 (citing *Turkette,* 452 U.S. at 580-81).  Here, because the Complaint alleges that the enterprise is composed of various separate legal entities, it necessarily is attempting to allege the existence of an association-in-fact enterprise.  An association-in-fact enterprise must be "a group of persons associated together for a *common purpose* of engaging in a course of conduct." *Turkette,* 452 U.S. 583  (emphasis added).

Aside from vague and conclusory allegations, nothing in the Complaint states that PREPA shared a common purpose with any of the Defendants or conspired with any of them.  It should be noted that the Complaint is completely devoid of any allegation of an economic gain for PREPA through the alleged conspiracy.  If the allegations of overpayment would be true, PREPA would only lose through the conspiracy. The claims made in the Complaint are insufficient to establish an association-in-fact enterprise.  *See* Gregory P. Joseph, Civil RICO: A Definitive Guide 93-94 (3d ed. 2010) ("If the constituents are competitors, if they are acting independently or at cross purposes – or if the allegation of common purpose is purely conclusory – this prong will not be satisfied.").

### C.      The Complaint Fails to Allege a Pattern of Racketeering Activity

Under the RICO statute, a "pattern of racketeering activity" requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [October 15, 1979] and the last of which occurred within ten years… after the commission

of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The Complaint identifies mail and wire fraud as the predicate acts that it alleges constitute the "pattern of racketeering activity." (Compl. ¶¶ 248-50, 272, 288). As explained below, the Complaint fails to adequately allege that PREPA engaged in any predicate acts of mail or wire fraud.

### 1.   The Complaint Fails to Plead Mail and Wire Fraud with Particularity

Federal Rule of Civil Procedure 9 (b) requires that claims alleging fraud be pled with particularity. That rule extends to pleading predicate acts of mail and wire fraud under RICO. *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 42 (1st Cir. 1991). "To pass Rule 9(b) muster, the complaint must plead with particularity the time, place and contents of the false representations as well as the identity of the person making the[m]...." *U S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.,* 147 F. Supp. 2d 39, 46 (D. Mass. 2001); *see also Powers v. Boston Cooper Corp.,* 926 F.2d 109, 111 (1st Cir. 1991) ("[Rule 9(b)] entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations."); *Feinstein,* 942 F.2d at 42 (affirming dismissal of a civil RICO complaint, explaining that it failed to satisfy Rule 9(b)'s specificity requirement because plaintiffs did not "supply any... detail as to when the [allegedly fraudulent] communications occurred, where they took place, or what they contained").

The Complaint falls short of the Rule 9(b) standard as it fails to offer any particularized claims of mail or wire fraud against PREPA. Instead, Plaintiffs resort to making generalized allegations that an undifferentiated group of Defendants made false statements in the course of the alleged scheme. (Compl. ¶ 249). However, lumping all the Defendants together and making blanket allegations against them fails to satisfy Rule

9(b)'s heightened pleading standard. "If a claim involves multiple defending parties, a claimant usually may not group all claimed wrongdoers together in a single set of allegations. Rather, the claimant must make specific and separate allegations against each defendant." 2 Moore's Federal Practice § 9.03[1][f]; *see also Swartz v. KPMG LLP,* 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'") (quoting *Haskin v. R.J. Reynolds Tobacco Co.,* 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)); *Ambrosia Coal & Const. Co. v. Pages Morales,* 482 F.3d 1309, 1316-17 ( 11th Cir. 2007) (civil RICO claim dismissed because "i t w a s devoid of specific allegations with respect to each defendant" and "plaintiffs lumped together all of the defendants in their allegations of fraud"). As previously stated, even if the allegations were true, PREPA could only be deemed to have been used as means for the conspiracy to take place, not as an actual participant.

### 2.    The Complaint Fails to Allege that PREPA Specifically Intended to Defraud Plaintiffs

"In order to make out a civil claim under RICO by way of wire fraud, a plaintiff must allege that a group of defendants 'engaged in a scheme to defraud with the specific intent to defraud and that they used... the interstate wires in furtherance of the scheme....'" *Cordero-Hernandez* v. *Hernandez-Ballesteros,* 449 F.3d 240, 243-44 (1st Cir. 2006) (quoting *McEvoy Travel Bureau, Inc.* v. *Heritage Travel, Inc.,* 904 F.2d 786, 790 (1st Cir. 1990)); *see also Mulligan* v. *Choice Mortg. Corp. USA,* No. CIV. 96-596-B, 1998 WL 544431, at 7 (D.N.H. Aug. 11, 1998) (same); *Schultz* v. *Rhode Island Hosp. Trust Nat. Bank, N.A.,* 94 F.3d 721, 731 (1st Cir. 1996) (explaining that

- 13 -

lack of fraudulent intent on the defendant's part "dooms plaintiffs' allegations" that the defendant committed predicate acts of mail or wire fraud to support a civil RICO claim).

In the present case, the Complaint fails to allege that PREPA intended to defraud Plaintiffs. Quite the contrary, if the allegations of overpayment of fuel oil were to be true, PREPA would be self-inflicting its own damages since, even though the fuel costs are passed onto the consumers, PREPA's actions would be adversely affecting its own operations and mission. As PREPA's Organic Law states, the Authority was created "for the purpose of conserving, developing and utilizing, and aiding in the conservation, development and utilization of water and energy resources of Puerto Rico, for the purpose of making available to the inhabitants of the Commonwealth, in the widest economic manner, the benefits thereof, and by this means to promote the general welfare and increase commerce and prosperity…". 22 L.P.R.A. § 196

### D.    Plaintiffs' Claims Are Time-Barred

Additionally, Plaintiffs' decision to wait for more than a decade before bringing this lawsuit dooms their claims. When the allegations in a complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds the applicable limitations period, a district court should grant a 12(b)(6) motion if the complaint (and any other properly considered documents) "fails to 'sketch a factual predicate' that would" provide a basis for tolling the statute of limitations. *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 320 (1st Cir. 2008) (quoting *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 509-10 (1st Cir. 1998)). Plaintiffs'

claims accrued long ago. The Complaint not only fails to provide a basis for tolling the statute of limitations, it directly forecloses it.

The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 156 (1987); *Rodriguez v. Banco Central Corp.,* 917 F2d 664, 665 (1st Cir. 1990). In a RICO case, a plaintiff's action accrues against a defendant on the date that plaintiff discovers or should have discovered their injury. *See Lares Group II v. Tobin,* 221 F.3d 41, 43 (1st Cir. 2000); *Rodriguez,* 917 F.2d at 665-66 (citing *Bankers Trust v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir. 1988)).

In the present case, Plaintiffs' alleged injury occurred when they were charged for the cost of fuel oil on their monthly electricity bill. The critical question then is *when* Plaintiffs knew or *should have known* of that injury. A plaintiff is considered to be on inquiry notice and the RICO statute of limitations starts to run "'even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry.'" *Koch v. Christie's Int'l PLC,* 699 F.3d 141, 151 (2d Cir. 2012) (quoting *Koch v. Christie's Int'l PLC,* 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011)). Such storm warnings are sufficient where "'a person of ordinary intelligence would consider it 'probable' that fraud had occurred.'" *Id.* (quoting *Koch,* 785 F. Supp. 2d at 114).

As the Complaint makes clear, storm warnings put Plaintiffs at least on inquiry notice of their alleged RICO injuries more than a decade ago therefore, the statute of limitations began to run far more than four years before this lawsuit was filed.

Recognizing that their claims are time-barred, Plaintiffs attempt to seek refuge behind the doctrine of fraudulent concealment. (Compl. ¶¶ 263-67). But fraudulent

concealment may toll a limitations period only in "exceptional circumstances." *See Nat'l Grp. for Commc'ns & Computers Ltd. v. Lucent Tech. Inc.,* 420 F. Supp. 2d 253, 264-65 (S.D.N.Y. 2006). To meet this heavy burden, a plaintiff must establish three elements: (1) wrongful concealment of the relevant conduct by the defendant; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts. *See Berkson v. Del Monte Corp.,* 743 F.2d 53, 55 (1st Cir. 1984). Each of these three elements must be pleaded with particularity under Rule 9(b). The Plaintiffs in the present case miss the mark on all three.

First, Plaintiffs have offered no facts to show that PREPA or any other Defendant took steps to wrongfully conceal any aspect of the fuel oil contracts or deliveries. Second, Plaintiffs were not prevented from discovering any of the facts underlying their claims. And third, the Complaint fails to plead that Plaintiffs engaged in any kind of investigation or were otherwise diligent in trying to discover their claims. *See Klehr v. A. O. Smith Corp.,* 521 U.S. 179, 194 (1997) ("[A] plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'").

Given their failure to plead any of the three elements with the particularity required under Rule 9(b), Plaintiffs are unable to properly invoke the fraudulent concealment doctrine, and their claims remain untimely.

### E.     Plaintiffs' RICO Claim is Barred by the Filed Rate Doctrine

Plaintiffs' RICO claim is also barred by the filed rate doctrine, a common law rule which precludes suits against regulated utilities, such as PREPA, grounded on the allegation that the rates charged by the utility are unreasonable. Said doctrine, set forth in *Keough v.*

*Chicago & Northwestern Railway Co.,* "imposes a limitation on private claims for damages based on challenges to filed rates". *See, e.g., Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 416, 426 (1986); *Keough v. Chicago & Northwestern Ry.,* 260 U.S. 156, 163-65 (1922); *Texas & Pacific Ry. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 448 (1907).

While the First Circuit has not yet considered a filed rate defense to a civil RICO claim, other Circuits have done so. *See, e.g., Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 20-22 (2d Cir. 1994) (rejecting civil RICO claim alleging that telephone companies obtained rate increases by providing misleading information to regulatory agencies); *H.J., Inc. v. Northwestern Bell Tel. Co.,* 954 F.2d 485, 492 (8th Cir. 1992) (rejecting civil RICO claim alleging that telephone company bribed public utilities commission to set higher rates); *Taffet v. Southern Co.,* 967 F.2d 1483, 1491-94 (11th Cir. 1992)  (affirming dismissal of the plaintiffs' civil RICO claims pursuant to the filed rate doctrine).

In the present case, Plaintiffs cannot maintain their civil RICO claim seeing as their measure of damages will be "determined by comparing the approved rate and the rate that allegedly would have been approved absent the wrongful conduct." *H.J.,* 954 F.2d at 488 (internal citations omitted). Moreover, because the filed rate doctrine precludes Plaintiffs from challenging the rates charged to them by PREPA, Plaintiffs cannot establish that they have been damaged. This precludes their claims, as Plaintiffs cannot sustain claims where they cannot prove that they have been damaged.

## III.    PLAINTIFFS FAIL TO ALLEGE A RICO CONSPIRACY CLAIM

In addition to a substantive RICO claim, Plaintiffs also allege a RICO conspiracy in violation of 18 U.S.C. § 1962(d).  In order to make out a claim under Section 1962(d), Plaintiffs must satisfy the same elements as a substantive RICO claim, plus they must

show that each Defendant "knowingly *entered into an agreement* to commit two or more predicate crimes." *Miranda,* 948 F.2d at 47-48 (emphasis added); *see also COFACREDIT, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 244 (2d Cir. 1999) ("To establish the existence of a RICO conspiracy, a plaintiff must prove 'the existence of an agreement to violate RICO's substantive provisions.'") (internal citations omitted).

As an initial matter, Plaintiffs' inability to establish a substantive RICO violation *(see* Section II *supra)* is fatal to their conspiracy claim. *See Miranda,* 948 F.2d at 45 n.4 (RICO conspiracy count "need not be discussed separately" when substantive claim is dismissed for failure to plead a cognizable "enterprise"); *see also Turner v. Cook,* 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) ("Because appellants failed to allege the requisite substantive elements of a RICO claim under 18 U.S.C. § 1962(c), appellants' claim under 18 U.S.C. § 1962(d)... also fails."); *BancOklahoma Mortg. Corp. v. Capital Title Co.,* 194 F.3d 1089, 1103 (10th Cir. 1999) ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit.").

Further, a conspiracy claim under Section 1962(d) "must charge that defendants knowingly entered into an agreement to commit two or more predicate crimes." *See Miranda,* 948 F.2d at 47-48; *see also Feinstein,* 942 F.2d at 41 ("[E]ach defendant in a RICO conspiracy case must have joined knowingly in the scheme and been involved himself, directly or indirectly, in the commission of at least two predicate offenses."). The Complaint's conspiracy allegations are perfunctory and fail to adequately allege an agreement between PREPA and any of the other Defendants to commit criminal predicate acts. And, as noted above, Plaintiffs fail to show the commission of predicate RICO acts by PREPA. "Like RICO claims generally... a RICO conspiracy claim that is alleged in wholly

conclusory terms will not withstand a motion to dismiss." *See Miranda,* 948 F.2d at 48; *cf. Brennan v. Hendrigan,* 888 F.2d 189, 195 (1st Cir. 1989) (conclusory allegations of conspiracy are insufficient to state a claim under 42 U.S.C. § 1983). Accordingly, Plaintiffs' RICO conspiracy claim is without merit and should be dismissed.

## IV.   PLAINTIFFS FAIL TO ALLEGE AN UNJUST ENRICHMENT CLAIM

Finally, Plaintiffs claim that the Defendants were unjustly enriched through the alleged scheme.   (Compl. ¶¶ 290-92).   To the extent Plaintiffs are seeking to use unjust enrichment to recover where their indirect purchaser claims are otherwise barred by *Utilicorp*, *supra*, and its predecessor, *Illinois Brick Co. v. Illinois,* 431 U.S. 720, (1977), that effort is foreclosed.  *Cf. In re Digital Music Antitrust Litig.,* 812 F. Supp. 2d 390, 412 (S.D.N.Y. 2011) ("[I]t is beyond peradventure that indirect purchasers may not employ unjust enrichment to skirt the limitation on recovery imposed by *[Illinois Brick].*"); *In re Abbott Labs Norvir Antitrust Litig.,* 562 F. Supp. 2d 1080, 1090 (N.D. Cal. 2008), *reversed on other grounds,* 571 F.3d 930 (9th Cir. 2009) ("[B]ecause Plaintiffs' unjust enrichment claim appears to be premised wholly on [defendant's] alleged violation of federal antitrust law, *Illinois Brick* bars them from obtaining restitution based on those claims.").

Nor can Plaintiffs make out a claim for unjust enrichment on the merits. The elements of unjust enrichment are: (1) occurrence of an enrichment; (2) a correlative loss; (3) a connection between the loss and the enrichment; (4) absence of cause to justify the enrichment; and (5) lack of a legal provision which precludes application of an enrichment without cause. *See Puerto Rico Tel. Co. v. SprintCom, Inc.,* 662 F.3d 74, 97 (1st Cir. 2011) (citing *Hatton v. Municipality of Ponce,* 1994 P.R.-Eng. 909, 605, 134 D.P.R. 1001, 1010 (P.R. 1994)); *Ortiz Andujar v. E.L.A.,* 1998 P.R.-Eng. 580, 737, 122

D.P.R. 817, 823 (P.R. 1988).  There is not one allegation in the 286 paragraph complaint establishing that PREPA gained one cent through this alleged conspiracy. The enrichment requirement therefore, against PREPA, is non-existent. In addition, Plaintiffs cannot satisfy the aforementioned elements since, as set forth above, the Complaint fails to plead that Plaintiffs suffered or that PREPA proximately caused any loss.  (*See* Section II.A, *supra*).

## V.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

For the foregoing reasons, Plaintiffs' claims against PREPA should be dismissed. Although leave to amend is often freely given after a complaint is dismissed for failure to state a claim, leave is not required where amendment of the complaint would be futile. *See Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996) (holding that a motion to amend should be denied as futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted").  While some of the deficiencies in Plaintiffs' Complaint stem from a failure to plead with adequate particularity, there are others that are beyond repair, such as the staleness of Plaintiffs' claims, Plaintiffs' inability to prove damages, Plaintiffs' status as indirect purchasers, and the fact that Plaintiffs' claims run afoul of the filed rate doctrine. Since any further amendment of the Complaint would be fruitless, the Court should dismiss the Complaint with prejudice.

## CONCLUSION

Defendant Puerto Rico Electric Power Authority respectfully requests that the Honorable Court dismiss the Complaint against it.

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the form and length requirements of Local Rule 7(d) of the Local Rules of the United States District Court for the District of Puerto Rico

because it has been prepared in a proportionally spaced 12 point Times New Roman font and does not exceed 25 pages.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY** that on this same date copy of this document has been served via the CM/ECF system upon counsel of record in this matter.

In San Juan, Puerto Rico, this 8th day of May, 2015.

> s/Arturo Díaz-Angueira, 117907
> s/Rafael Barreto Solá, 211801
> s/Victoria D. Pierce-King, 201410
> s/Doris M. Gongón-Colón, 300902
> Attorneys for Defendant
> **CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.**
> PO Box 364966
> San Juan, PR  00936-4966
> Tel. (787) 767-9625
> Fax  (787) 764-4430
> adiaz@cnrd.com
> rbarreto@cnrd.com
> vpierce@cnrd.com
> dgongon@cnrd.com

#374672

- 21 -