# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ISMAEL MARRERO-ROLON, *et al.*, <br><br> **Plaintiffs**, <br><br> v. <br><br> AUTORIDAD DE ENERGIA ELECTRICA DE P.R., *et al.*, <br><br> **Defendants** | CIVIL NO. 15-1167 (JAG) |

## MEMORANDUM & ORDER

GARCIA-GREGORY, D.J.

Before the Court are sixteen different Motions to Dismiss filed by Defendants.[1] Docket Nos. 82, 102, 105, 106, 108, 110, 116, 121, 126, 130, 133, 135, 136, 137, 161, 164. The motions were referred to Magistrate Judge Silvia Carreño-Coll, Docket No. 207, who issued a Report and Recommendation, Docket No. 214. After considering the parties' objections, and a *de novo* review of the record and the parties' arguments, the Court determines that the Magistrate's Report & Recommendation is mostly well grounded in both fact and law. Therefore, the Court hereby ADOPTS in part and REJECTS in part the Magistrate's Report & Recommendation.

## Analysis[2]

Plaintiffs assert RICO violations under 18 U.S.C. § 1962(c), (d), as well as Puerto Rico law unjust enrichment violations. Docket No. 1. As to the unjust enrichment claims, after considering Plaintiffs' objections, Docket No. 223, and upon *de novo* review, the Court adopts the

---

[1] The Magistrate lists each individual Defendant in footnotes 2-4 of her Report and Recommendation and establishes an abbreviation for each. Docket No. 214 at 4. The Court adopts the Magistrate's abbreviations for each Defendant, except that Petroleo Brasileiro S.A. and Petrobras America Inc. are separately referred to as "Petroleo" and "Petrobras America" respectively.

[2] The Magistrate adequately describes the factual background of this case in her Report and Recommendation, Docket No 214 at 2-6, and thus the Court need not repeat it here.

Magistrate's recommendation and hereby dismisses all Plaintiffs' unjust enrichment claims. As to Plaintiffs' RICO claims, the Court will analyze the Magistrate's recommendations as to each specific Defendant or group of Defendants. For each Defendant, the Court will examine the Magistrate's recommendation and state why this Court agrees or disagrees that specific recommendation.

I. **Bureau Veritas**

The Magistrate recommended that Bureaus Veritas's Motion to Dismiss be granted in full. Docket No. 214 at 54. Plaintiffs expressly did not object to this recommendation. Docket No. 223 at 1. Thus, the Court GRANTS Bureau Veritas's Motion to Dismiss in full *without prejudice.*

II. **Trafigura**

The Magistrate recommended that Trafigura's Motion to Dismiss be granted in full because Plaintiffs failed to put forth sufficient factual allegations against Trafigura. Docket No. 214 at 51-53, 62. In their objections, Plaintiffs only add that they have a good faith reason to believe that Trafigura supplied PREPA with non-compliant fuel oil, and, accordingly, they request a 90 day period to conduct discovery concerning Trafigura's participation in the scheme. Docket No. 223 at 4. However, Plaintiffs' good faith belief is not enough to overcome the deficiencies in their complaint as to Trafigura. Accordingly, the Court adopts the Magistrate's recommendation as to Trafigura and GRANTS its Motion to Dismiss in full. The motion is granted *without prejudice*, so that Plaintiffs may amend the complaint should they learn any new facts that would implicate Trafigura.

III.    Alchem

The Magistrate concluded that "while the allegations allege that Alchem intended to join the enterprise, and while it is alleged to have taken steps (like firing an employee) for the enterprise's benefit, nothing in the Complaint can be read to allege Alchem's actual participation in a pattern of racketeering activity." Docket No. 214 at 51. Specifically, the Magistrate pointed out that although the complaint stated that Alchem switched its testing methodology to satisfy PREPA, it failed to allege "whether Alchem actually performed any tests with the new, non-standard methodology." *Id.* at 50. Accordingly, the Magistrate recommended that the 18 U.S.C. § 1962(c) claim against Alchem be dismissed, while the 18 U.S.C. § 1962(d) conspiracy claim remain. *Id.* at 51, 62.

However, after the Magistrate's Report and Recommendation, Plaintiffs filed a Motion to Amend the Complaint where they proffer additional facts as to Alchem. Docket No. 245. Specifically, Plaintiffs allege, *inter alia*, that Alchem switched its testing methodology to satisfy PREPA on December 31, 2010 and that it used the new testing methodology to falsify test results for every PREPA sample tested after this date. Docket No. 245 at 9. As evidence of this, Plaintiffs contrast a sample page of Alchem's log book on December 14, 2010 (before the change in testing methodology) with a sample log book page from December 31, 2010 and one from January 7, 2011 (both after the change). *Id.* at 6-10. Plaintiffs show that the log book page before the change in testing methodology reflects that every sample tested was rendered non-compliant, whereas the two log book pages after the change show that every sample tested was deemed compliant. *Id.* Furthermore, the two log book entries taken after the testing methodology change contain a note at the bottom saying that they used the new calibration curve 3 as instructed by a manager. *Id.* Plaintiffs further allege that Alchem reported these results to PREPA via telephone, email, or

text. *Id.* at 10. Plaintiffs provide, as an example, a fax sent to PREPA officials on January 21, 2011 that reported compliant fuel oil which would have been deemed non-compliant had the correct testing methodology been used. *Id.*

Based on Plaintiffs' new allegations, the Court finds that Plaintiffs have adequately pled that Alchem committed two or more RICO predicates and thus have alleged Alchem's participation in a "pattern of racketeering activity." *See* 18 U.S.C. § 1962(c). The Court also does not find any reason to deny Plaintiffs leave to amend the complaint at this stage. Thus, the court GRANTS Plaintiffs' Motion to Amend the Complaint. Based on the additional facts alleged, the Court also DENIES Alchem's Motion to Dismiss as to both the § 1962(c) claim and the § 1962(d) conspiracy claim.

IV. **Petroleo**

The Magistrate recommended that Petroleo's Motion to Dismiss based on the Foreign Sovereign Immunity Act ("FSIA") be denied. Docket No. 214 at 10. The FSIA provides that a foreign state is immune from the jurisdiction of United States courts unless one of its enumerated exceptions apply. 28 U.S.C. § 1604. One of these exceptions is the commercial activity exception, which provides that a foreign state shall not be immune in an action which is based upon

> a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Once a defendant shows that it is a foreign state, the plaintiff has an initial burden of production to offer evidence that supports an exception to immunity. *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 727 F.3d 10, 17

(1st Cir. 2013). If the plaintiff satisfies its burden of production, then the foreign state holds the ultimate burden of persuasion. *Id.*

The parties agree that Petroleo is a "foreign state" under the FSIA. Docket No. 194 at 4. However, Plaintiffs contend that Petroleo is not immune under the FSIA because of the commercial activity exception. *Id.* The Magistrate rejected Petroleo's argument that the commercial activity exception did not apply because Petroleo did not have any contracts with PREPA. Docket No. 214 at 9. The Magistrate then concluded that Petroleo had not satisfied its burden of persuading the court of its immunity. *Id.* at 10. The Magistrate stated that in this case it was not necessary to resolve any factual disputes because Petroleo had not challenged any of Plaintiffs' facts. *Id.* Thus, the Magistrate concluded that Plaintiffs' claims against Petroleo should not be dismissed for sovereign immunity. Docket No. 214 at 10.

In its objections, Petroleo argues that Plaintiffs have failed to put forth sufficient evidence to establish the commercial activity exception. Docket No. 224 at 6-10.[3] This Court agrees. Although the ultimate burden of persuasion rests with Petroleo, Plaintiffs must first satisfy their burden of producing evidence that supports the commercial activity exception. The Court finds that Plaintiffs have not met this burden.

Determining whether a foreign state has sovereign immunity is not an issue a district court should take lightly. *See Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988). Accordingly, a district court often must go beyond the pleadings in determining whether to grant a motion to dismiss based on the FSIA. *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990); *see also Gould*, 853 F.2d at 451 ("the parties have the

---

[3] Petroleo also reiterates its argument that without a contract between itself and PREPA, Plaintiffs cannot show the existence of the commercial activity exception. Docket No. 224 at 6-10. However, the Court disagrees and concurs with the Magistrate that "contracts with PREPA are not the *sine qua non* of commercial activity." Docket No. 214 at 9.

responsibility, and must be afforded a fair opportunity, to . . . submit evidence necessary to the resolution of the issues."). Although courts have not specifically defined the minimum threshold a plaintiff must meet to satisfy its burden of production, *compare Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001) (stating that a court must look at the allegations in the complaint and any undisputed facts before determining if a plaintiff has satisfied its burden of production), *with Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1248 (10th Cir. 2013) (holding that the plaintiffs had not satisfied their burden of production when they had not offered any admissible evidence to support a FSIA exception), Plaintiffs must at least allege facts in the complaint that support the commercial activity exception.

In this case, Plaintiffs' proffered evidence in support of the commercial activity exception is very weak. Plaintiffs' complaint contains no specific allegations against Petroleo. Throughout the complaint, Plaintiffs refer to Petroleo and its wholly-owned American subsidiary, Petrobras America, collectively as "Petrobras." Although the allegations against "Petrobras" are substantial, none of them are specifically attributed to Petroleo. Moreover, the Magistrate read the allegations against "Petrobras" to mainly pertain to Petrobras America, not Petroleo. Docket No. 214 at 55. This Court believes that, at a minimum, a plaintiff should have to provide specific allegations against a foreign state to abrogate that state's sovereign immunity. Therefore, the Court refuses to attribute Plaintiffs' general allegations against "Petrobras" to Petroleo for FSIA purposes.

Plaintiffs attempt to correct the lack of specificity in their complaint by providing allegations against Petroleo in their response to Petroleo's Motion to Dismiss. Docket No. 194 at 2-9. Specifically, Plaintiffs state that Petroleo supplied oil to Shell Trading to fulfill its contract with PREPA, and that a former Petroleo executive was "an instrumental player" in securing contracts with PREPA. *Id.* However, this Court refuses to allow Plaintiffs to amend its

complaint through its response. *See O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). Furthermore, even if the Court were to accept these allegations, it is uncertain that these acts alone would suffice to meet the commercial activity exception. Therefore, this Court finds that Plaintiffs have failed to meet their burden of producing evidence to support the commercial activity exception.[4]

Alternatively, Plaintiffs request leave to conduct jurisdictional discovery regarding Petroleo's "commercial activities in or related to the United States, as well as its alter ego status." Docket No. 194 at 9. The Court finds this request is appropriate. A district court has discretion to order limited discovery to permit a plaintiff to develop the facts necessary to support FSIA jurisdiction. *See, e.g., In re Papandreou*, 139 F.3d 247, 252 (D.C. Cir. 1998). In this case, further fact-finding is necessary to determine the applicability of the commercial activity exception. Accordingly, the Court DENIES Petroleo's Motion to Dismiss based on the FSIA *without prejudice*. The Court grants Plaintiffs' 90 days to conduct jurisdictional discovery. Plaintiffs shall thereafter amend their complaint with specific allegations against Petroleo, and Petroleo may then renew its Motion to Dismiss based on the FSIA only.

V.   The Remaining Defendants[5]

The Magistrate recommended that the remaining Defendants' Motions to Dismiss be denied as to the RICO claims. Docket No. 214 at 64-65. Defendants timely objected. Docket Nos. 219, 220, 221, 222, 225, 226, 227, 228, 229, 231. After considering Defendants' objections, and

---

[4] Plaintiffs also contend that Petroleo controlled the operations of Petrobras America to such an extent that Petrobras America is the alter ego of Petroleo, and, therefore the actions of Petrobras America can be attributed to Petroleo. Docket No. 194 at 3, 7-9. However, Plaintiffs do not provide sufficient allegations in the complaint to overcome the presumption of corporate separateness. Thus, the Court declines to attribute all of Petrobras America's actions to Petroleo.

[5] The remaining Defendants are PREPA, William Rodney Clark, Edwin Rodriguez, Cesar Torres-Marrero, Petrobras America, Shell Trading, Vitol, Mendez, Inspectorate, and Saybolt.

upon *de novo* review, the Court ADOPTS the Magistrate's Recommendation as to the remaining Defendants. Accordingly, the remaining Defendants' Motions to Dismiss are denied as to the RICO claims.

Defendants' objections mostly repeated arguments that were already evaluated and properly rejected by the Magistrate. Therefore, the Court will not rehash the Magistrate's analysis on every objection. For any issue not expressly considered below, the Court ADOPTS the Magistrate's recommendation and analysis on that issue. However, some objections require further discussion from the Court.

i. <u>Statute of Limitations:</u>

The Magistrate concluded that Plaintiffs' claims were not time-barred by the statute of limitations because Defendants had not shown that Plaintiffs knew or should have known of their injuries more than four years before they filed suit. Docket No. 214 at 17-24. The Magistrate positioned that there was no reason to think that a 2002 lawsuit PREPA filed against a laboratory for allegedly falsifying test results had put Plaintiffs on inquiry notice because there was no evidence suggesting that the lawsuit had been the subject of substantial press coverage. *Id.* at 19. Furthermore, the Magistrate concluded that the questions of what Plaintiffs knew or should have known, and when they knew it could not be resolved as a matter of law in Defendants' favor. *Id.* at 22.

Multiple Defendants object to the Magistrate's conclusion. *See* Docket No. 219 at 7; Docket No. 220 at 6; Docket No. 222 at 12; Docket No. 229 at 2. Saybolt provides the most novel argument by attaching six additional newspaper articles that were not previously submitted for consideration. Docket No. 219. Saybolt argues that these articles prove that the 2002 lawsuit did receive substantial press coverage and thus should have put Plaintiffs on inquiry notice. *Id.* at 7. However, the Court does not consider these articles since they were not presented to the

Magistrate. *Rafael Refojos & Associates, Inc. v. Ideal Auto. & Truck Assessories, Inc.*, No. CIV. 03-1797 (DRD), 2006 WL 695806, at *2 (D.P.R. Mar. 15, 2006) ("New arguments, or new known evidence, are to be excluded as reconsideration arguments originally available to movant at the time of the submission to the Magistrate Judge."). Furthermore, even if the Court did consider these articles, this Court agrees with the Magistrate's conclusion that the question of whether Defendants had inquiry notice should not be resolved as a matter of law at the motion to dismiss stage. *See Young v. Lepone*, 305 F.3d 1, 9 (1st Cir. 2002) ("In the archetypical case, therefore, it is for the factfinder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice."); *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 183 (D. Mass. 2003) ("Whether a plaintiff knew or should have known of an injury so as to trigger the running of a statute of limitations is, with rare exception, a jury issue.") (citing *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633 (1st Cir. 1990)). Accordingly, Plaintiffs' claims should not be dismissed as time-barred.

ii. <u>Common Purpose:</u>

The Magistrate concluded that Plaintiffs had successfully pled that Defendants shared a common purpose. Docket No. 214 at 36-40. The Magistrate stated that this common purpose was "to falsify laboratory tests such that Non-compliant Fuel Oil could be passed off as Compliant Fuel Oil." *Id.* at 37. However, Defendants object to this conclusion on various grounds. *See* Docket No. 219 at 11; Docket No. 220 at 11; Docket No. 225 at 7; Docket No. 227 at 10; Docket No. 231 at 7. Some of Defendants' arguments merit further consideration.

First, Shell Trading argues that Plaintiffs failed to meet the common purpose requirement as to the Fuel Oil Supplier Participants.[6] Docket No. 227 at 10-12. Shell Trading

---

[6] Saybolt also briefly touches on this point in its objections, Docket No. 219 at 11, but Shell Trading further develops the argument.

argues that the Magistrate erred by relying on *Negrete v. Allianz Life Ins. Co. of N. Am.*, No. CV 05-6838, 2011 WL 4852314 (C.D. Cal. Oct. 13, 2011), and *In re Nat. W. Life Ins. Deferred Annuities Litig.*, 635 F. Supp. 2d 1170 (S.D. Cal. 2009) to conclude that competitors can be members of a RICO enterprise as long as they are operating with a common purpose. Docket No. 227 at 10. Instead, Shell Trading argues that Plaintiffs' case is more analogous to the situation in *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1362 (M.D. Fla. 2005), where the competitors operated in a limited market with only one client. Shell Trading argues that the rule in *Lockheed* is that competitors can meet the common purpose requirement but only if plaintiffs show that the competitors shared a common purpose *and that they associated together*. Docket No. 227 at 11. Shell Trading argues that Plaintiffs have not shown that the Fuel Oil Supplier Participants associated together, and thus have failed to meet the common purpose requirement as to the Fuel Oil Supplier Participants. *Id.* at 12.

However, this Court finds Shell Trading's argument unconvincing. First, there are allegations in the complaint to suggest the Fuel Oil Supplier Participants, even if competitors, did associate together to achieve their common purpose by, *inter alia*, supplying fuel to fulfill each other's' contracts with PREPA. Docket No. 1 ¶¶ 23, 25, 29, 31, 37.

In addition, the Court does not agree that Plaintiffs must allege that the Fuel Oil Supplier Participants associated with each other to satisfy the common purpose requirement in this case. A RICO plaintiff need not show that all members of an enterprise were directly working with all other members of the enterprise to satisfy the common purpose requirement. *In re Nat. W. Life Ins. Deferred Annuities Litig.*, 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009) (citing *United States v. Feldman*, 853 F.2d 648 (9th Cir. 1988)); *see also Schwartz v. Lawyers Title Ins. Co.*, 970 F. Supp. 2d 395, 404-05 (E.D. Pa. 2013) ("there is no need for a [RICO] plaintiff to prove that each conspirator had

contact with all other members."); *United States v. Friedman*, 854 F.2d 535, 562–63 (2d Cir. 1988) ("So long as the alleged RICO co-conspirators have agreed to participate in the affairs of the same enterprise, the mere fact that they do not conspire directly with each other 'does not convert the single agreement to conduct the affairs of an enterprise through a pattern of racketeering activity into multiple conspiracies.'"); *United States v. De Peri*, 778 F.2d 963, 975 (3d Cir. 1985) ("This knowledge [of the identities of all other participants] is not essential to the finding of a RICO conspiracy."). A common purpose is simply shown by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Plaintiffs have successfully shown this by alleging that the three groups of participants—the Fuel Oil Supplier Participants, the PREPA Participants, and the Laboratory Participants—all coordinated together for the common purpose of falsifying laboratory results to pass off Non-compliant Fuel Oil as Compliant Fuel Oil. Plaintiffs are not also required to show that the individual Fuel Oil Supplier Participants associated with one another. To the extent that *Lockheed* says otherwise, the Court finds it unpersuasive.

Next PREPA argues that Plaintiffs fail to allege a common purpose as to PREPA because there is no allegation of any economic gain for PREPA. Docket No. 220 at 11-12. However, as Plaintiffs correctly point out, PREPA's argument incorrectly "conflates purpose with motive." Docket No. 235 at 3. "'Common purpose' does not mean commonality of motive, it means coordinated activity in pursuit of a common objective." *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 173 (D. Mass. 2003) (citing *Libertad v. Welch*, 53 F.3d 428, 443 (1st Cir. 1995)). Plaintiffs have properly alleged that all participants in the enterprise coordinated to further their common objective. Thus, Plaintiffs have adequately alleged a common purpose.

iii. <u>Proximate Cause-Indirect Purchaser Rule:</u>

The Magistrate rejected Defendants' argument based on *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990) that Plaintiffs cannot show proximate causation because they were indirect purchasers of the fuel. Docket No. 214 at 27-33. In *UtiliCorp*, the Court held that consumers of natural gas who purchased their gas from a utility company did not have the right to sue the suppliers who had conspired to fix the price of gas. *UtiliCorp*, 497 U.S. at 207, 218. The Court held that only the utility, as the most direct purchaser, had the right to sue the suppliers. *Id.* The Magistrate differentiated the holding of *UtiliCorp* because, in that case, the utility was "an innocent victim of the suppliers' price fixing, PREPA, in this case is a co-conspirator with responsibility for inflating the fuel's price." Docket No. 214 at 29. Thus, the Magistrate concluded that Plaintiffs are the scheme's most direct victims, and accordingly their suit is not barred by the indirect purchaser doctrine. Docket No. 214 at 29-33. The Court agrees with the Magistrate that the indirect purchaser rule does not bar Plaintiffs' suit if PREPA was in fact a co-conspirator.

Shell Trading argues, however, that Plaintiffs have not sufficiently alleged that PREPA is a co-conspirator. Docket No. 227 at 10. Rather, Shell Trading argues that the Magistrate incorrectly assumed that PREPA, the public corporation as a whole, and the individual PREPA Participants, employees and agents of PREPA, are one and the same. *Id.* at 9. This Court disagrees. Plaintiffs' allegations against PREPA are extensive. Thus, at this stage, the Court finds that Plaintiffs have sufficiently pled that PREPA, the public corporation, is a co-conspirator and therefore Plaintiffs are the most direct victim outside of the conspiracy. However, should it later be revealed that PREPA did not participate in the conspiracy and that PREPA, instead of Plaintiffs, is the most direct victim of the RICO enterprise, then Plaintiffs' ability to show proximate causation may be affected.

## Conclusion

For the reasons stated above, the Court GRANTS Bureau Veritas's and Trafigura's Motion to Dismiss in full *without prejudice*. As for all other Defendants, the Court GRANTS their Motions to Dismiss as to the Puerto Rico unjust enrichment claims *with prejudice* and DENIES them in all other respects. Petroleo's Motion to Dismiss based on the FSIA is DENIED *without prejudice* and Plaintiffs are granted a 90 day period to conduct jurisdictional discovery concerning Petroleo. Petroleo may then renew its Motion to Dismiss based on the FSIA only. Alchem's Motion to Amend the Complaint is also granted.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2016.

> S/ Jay A. Garcia-Gregory
> JAY A. GARCIA-GREGORY
> United States District Judge