IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ISMAEL MARRERO ROLÓN, ANNE CATESBY JONES, JORGE VALDES LLAUGER, PUERTO RICO BATHROOM REMODELING, INC., PERFORMANCE CHEMICALS COMPANY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AUTORIDAD DE ENERGÍA ELÉCTRICA A/K/A PUERTO RICO ELECTRIC POWER AUTHORITY; WILLIAM RODNEY CLARK; EDWIN RODRIGUEZ; CÈSAR TORRES MARRERO; INSPECTORATE AMERICA CORPORATION; CORE LABORATORIES N.V. D/B/A SAYBOLT; ALTOL CHEMICAL ENVIRONMENTAL LABORATORY INC. D/B/A ALCHEM LABORATORY; ALTOL ENVIRONMENTAL SERVICES, INC. D/B/A ALTOL ENTERPRISES; PETROBRAS AMERICA INC.; PETROLEO BRASILEIRO S.A; CARLOS R. MÈNDEZ & ASSOCIATES; SHELL TRADING (US) COMPANY; TRAFIGURA A.G.; TRAFIGURA BEHEER B.V.; PETROWEST, INC.; VITOL S.A., INC.; VITOL, INC.; JOHN DOES 1-100,<br><br>Defendants. | Civil Case No. 15-1167-JAG-ML |

**STUSCO'S MOTION REQUESTING CERTIFICATION
FOR INTERLOCUTORY APPEAL**

TO THE HONORABLE COURT:

COMES NOW Defendant Shell Trading (US) Company, through its counsel of record, and for the reasons stated below, very respectfully requests that the Court amend its Order (Docket No. 305) denying STUSCO's motion for reconsideration (Docket No. 292) of the

Court's March 31, 2016 Memorandum and Order (Docket No. 254), so as to certify it for interlocutory appeal to the United States Court of Appeals for the First Circuit pursuant to 28 U.S.C. § 1292(b).

## **INTRODUCTION**

In its Order denying STUSCO's motion for reconsideration of its prior Order adopting the Magistrate Judge's Report and Recommendation, and thus denying STUSCO's motion to dismiss, the Court stated:

> Before the Court is Defendant Shell Trading Company's ("STUSCO") Motion for Reconsideration of the Court's March 31, 2016 Memorandum and Order, Docket No. 254. Docket No. 292. The motion is DENIED. STUSCO's motion merely rehashes arguments that Defendants have already made, or could have made, before the Magistrate or in its Objections to the Magistrate's Report & Recommendation. . . . Furthermore, STUSCO mischaracterizes this Court's and the Magistrate's conclusion as to Defendants' *indirect purchaser* argument. As Plaintiffs correctly point out, rather than creating an exception to the *indirect purchaser* doctrine developed in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), this Court and the Magistrate held that the doctrine simply does not apply because Plaintiffs "are the scheme's most direct victims." Docket Nos. 214 at 29, 254 at 12. Thus, this case provides a "fundamentally different factual scenario" than *Illinois Brick*. *See* Docket No. 214 at 30-31 n.23.

(Docket No. 305; internal citations omitted). STUSCO respectfully disagrees with both of the Court's conclusions,[1] but is aware that the Court has made its decision. STUSCO therefore does not seek reconsideration again but, instead, requests only that the Court amend its March 31 Order to certify the latter issue for interlocutory appeal.

---

[1] Although the Court reasoned that reconsideration was improper because the motion merely "rehashe[d]" STUSCO's earlier argument, presenting a new argument is not a prerequisite for the filing of a motion pursuant to Rule 59(e). "To secure relief under Rule 59(e), a party normally must demonstrate either that new and important evidence, previously unavailable, has surfaced *or that the original judgment was premised on a manifest error of law or fact.*" Ira Green, Inc. v. Military Sales & Serv. Co., 775 F.3d 12, 28 (1st Cir. 2014) (emphasis added; cited in motion for reconsideration). STUSCO expressly noted in its motion that it relied on the latter ground: "the Court's Order at Docket No. 254 is 'premised on manifest errors of law.'" (Docket No. 292). There was nothing procedurally improper, therefore, about the motion.

2

The reason is that the Court's Order presents a textbook example of the type of issue for which interlocutory appeal was intended. Certification of an order for interlocutory appeal is appropriate when it "involves a controlling question of law as to which there is a substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Interlocutory appeal is therefore appropriate. As the Supreme Court has explained:

> The preconditions for § 1292(b) review—"a controlling question of law," the prompt resolution of which "may materially advance the ultimate termination of the litigation"--are most likely to be satisfied when [the court's order] involves a new legal question or is of special consequence, and district courts *should not hesitate* to certify an interlocutory appeal in such cases.

Mohawk Indus. v. Carpenter, 130 S. Ct. 599, 607 (2009) (emphasis added). Indeed, even before the Supreme Court's clear statement in Mohawk Industries, the First Circuit had found interlocutory appeal appropriate where the district court had allowed claims to proceed based on its adoption of a rule as to which the lower federal courts are divided. See Rodríguez v. Banco Cent. Corp., 917 F.2d 664, 665-68 (1st Cir. 1990) (reversing, on a § 1292(b) interlocutory appeal, Puerto Rico district court's denial of summary judgment that was based on a Third Circuit precedent not followed by other circuits).[2]

---

[2] In terms of procedure, this Honorable Court retains wide discretion as to the timing of any order for certification. A leading treatise summarizes the state of the law thusly: "The ten-day limit for seeking permission to appeal runs from entry of the district court order certifying the underlying order for appeal, not from entry of the underlying order itself. Appellate Rule 5(a)(3) explicitly provides that a district court may amend an order to include the prescribed statement, and '[i]n that event, the time to petition runs from entry of the amended order.' This latitude makes it possible to employ § 1292(b) with some precision, deferring the question of appeal until it is clear that prompt appeal is apt to be useful. . . . The wisdom of certification may extend in unexpected directions. For example, reassignment of a case to a new judge after the first judge has made an order that the new judge believes to be wrong, with costly consequences, may justify certification." The Late Charles Alan Wright, Arthur R. Miller, et al., 16 FEDERAL PRACTICE AND PROCEDURE § 3929 (3d ed.).

STUSCO has already explained in its Motion for Reconsideration (Docket No. 292) why it believes that the Court erred in concluding that the Illinois Brick rule does not apply. STUSCO incorporates those arguments here, adding only a few additional observations in the body of this motion. Some of those observations are intended to respond to statements in the Court's subsequent order denying the motion for reconsideration (Docket No. 305). But the main point that STUSCO wishes to put forward is that, even though the Court ruled against STUSCO's arguments as to the applicability of Illinois Brick, it remains true that "there [was] a substantial ground for difference of opinion" on that issue.

Moreover, the time is ripe for an interlocutory appeal. The Magistrate Judge who initially handled the case and who drafted the Report & Recommendation to which STUSCO objected has recused herself due to her prior participation in, and knowledge of, some of the underlying controversies in this case. (Docket No. 315). A new Magistrate Judge has therefore been appointed (Docket Nos. 316, 317), and the parties are scheduled to appear before him for an Initial Scheduling Conference this coming Friday, July 29, 2016 (Docket No. 320). In the meantime, the parties provided each other with Rule 26(a) Initial Disclosures,[3] and also agreed upon a proposed pretrial plan (Docket No. 313). As befits a complicated RICO Act litigation, the proposed plan provides for extensive discovery, which will include the taking of tens of depositions, and the production of hundreds of thousands if not millions of pages of documents,

---

[3] Defendants are united in their view that Plaintiffs' disclosures were inadequate, a point that has been made in their respective filings over the past few days (Docket Nos. 328-336). The reference to initial disclosures, therefore, should not be read as anything other than a recognition that, for purposes of the current motion, this case is still in its early stages, and consequently, that there is still a window of opportunity for resolving the Illinois Brick issue before the parties are forced to expend monies unnecessarily in discovery, and before the new Magistrate Judge has been forced to spend untold dozens of hours in familiarizing himself with the record of this case.

all of which will entail collective litigation expenditures by the various defendants rising into the millions of dollars – as well as a significant expenditure of time by this Court and the new Magistrate Judge.

STUSCO advises this Court that it intends to appeal to the First Circuit from the Court's ruling on the Illinois Brick issue. If still necessary, STUSCO will do so after judgment is entered. But STUSCO believes that it would be far more efficient and convenient if the matter were resolved now, at the outset of the case. After all, if STUSCO is correct, the Complaint should be dismissed immediately as a matter of law because Plaintiffs lack standing – which is "a threshold, pleading-stage inquiry." NicSand, Inc. v. 3M Co., 507 F.3d 442, 450 (6th Cir. 2007). As the Supreme Court noted, "[i]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007). The same is true of RICO Act complaints. It certainly would not comport with Fed. R. Civ. P. 1's prescription that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding" to wait for one or two years to go by and millions of dollars to be incurred in litigation expenses before allowing this dispositive question of law – as to which there is a substantial ground for difference of opinion – to be taken up on appeal.

## DISCUSSION

### A. The Order Involves a Controlling Question of Law

The core ruling by the Court in its Order was its "agree[ment] with the Magistrate Judge that the indirect purchaser rule does not bar Plaintiffs' suit if PREPA was in fact a co-conspirator." (Docket No. 254, at 12). But if Illinois Brick applies, then Plaintiffs have no

5

standing, and the case *must* be dismissed. Consequently, it cannot be seriously denied that the question of law presented controls the outcome of the dispositive motions and, indeed, the very future of this litigation.

**B.       There Is Substantial Ground for Difference of Opinion**

There also can be no doubt, in view of the state of the case law, that "there is substantial ground for difference of opinion," 28 U.S.C. § 1292(b), concerning the application of Illinois Brick.

In its orders, the Court adopted the Magistrate Judge's reasoning that there supposedly was an "obvious difference between the facts of Utilicorp and this case": "that while the utility in that case was an innocent victim of the suppliers' price fixing, PREPA in this case is a co-conspirator with responsibility for inflating the fuel's price." (Docket No. 214 at 28-29, citing Kansas v. Utilicorp. United, Inc., 497 U.S. 199 (1990)). The Court also agreed with the Magistrate "that Plaintiffs have sufficiently pled that PREPA…is a co-conspirator and therefore Plaintiffs are the most direct victim outside of the conspiracy." (Docket No. 254, at 12).

STUSCO set forth in its Motion for Reconsideration (Docket No. 292) the reasons why it disagreed with both the Magistrate and this Court. Among other things, the facts alleged did not state a claim for a conspiracy to "inflate the fuel's price," in general, and much less against STUSCO or PREPA. Most pertinent to the motion at hand, however, STUSCO also argued against what it understood to be the Court's recognition of a broad exception to the Illinois Brick doctrine whenever the direct purchaser is alleged to have participated in a conspiracy.

In its Order denying STUSCO's motion for reconsideration (Docket No. 305), however, the Court responded by insisting that it had not really created an exception to Illinois Brick, but rather merely held that the doctrine "simply does not apply because Plaintiffs are the scheme's

6

most direct victims," and, thus, that "this case provides a fundamentally different factual scenario than Illinois Brick." (Docket No. 305; internal citations omitted).[4]

STUSCO does not agree with the Court's characterization of what it (and the Magistrate Judge) had written in their prior rulings. A court's opinion holding that a given rule does not apply to a factual scenario otherwise identical to the one in which the rule would normally apply is precisely what most lawyers would consider to be the creation of an exception to the rule. But, in any case, this semantic dispute does not matter for purposes of certification under section 1292(b). That is to say that, whether one describes what the Court did as creating an exception to Illinois Brick, on the one hand, or simply recognizing a factual scenario to which Illinois Brick does not apply, on the other, the result is the same: either way, there is a substantial ground for a difference of opinion on the underlying question of law[5] of whether the Illinois Brick rule applies to the facts of this case. After all, what the Court held was that Plaintiffs' allegation that PREPA

---

[4]  The Court was quoting the Magistrate Judge's statement that she "disagree[d] that this case presents an 'exception' to Illinois Brick rather than a fundamentally different factual scenario." (Docket No. 214, at 31-32 & n.23). But note that some of the very cases cited by the Magistrate in support of that statement involved price-fixing conspiracies. For example, one of the cases she relied on, Laumann v. Nat'l Hockey League, 907 F. Supp. 2d 465, 480-83 (S.D.N.Y. 2012), relied, in turn, on a Seventh Circuit opinion that *did* involve a price-fixing conspiracy. See 907 F. Supp. 2d at 482 (citing Paper Sys. Inc. v. Nippon Paper Indus. Co., Ltd., 281 F.3d 629, 631-32 (7th Cir. 2002), for the proposition that Illinois Brick "allocate[s] to the first non-conspirator in the distribution chain the right to collect 100% of the damages"). The same is true of the other Circuit Court opinions cited by Laumann. See, Lowell v. American Cyanamid Co., 177 F.3d 1228, 1233 (11th Cir. 1999) (cited at 907 F. Supp. 2d at 482 n.90, and also involving a vertical price-fixing conspiracy); In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599, 604 (7th Cir. 1997) (also cited in note 90, and also involving a vertical price-fixing conspiracy). In sum, the Laumann court's holding (the only one cited by the Magistrate in which a non-price-fixing vertical conspiracy was by itself sufficient to prevent the application of Illinois Brick) was unsupported by the cases it cited.

[5]  In that regard, note that the application of law to allegations of fact necessarily incorporates subsidiary determinations of law: (a) whether the facts have been properly alleged pursuant to the applicable pleading standard; and (b) whether the properly-alleged facts are relevant as a matter of law.

was a conspirator necessarily (in other words, as a matter of law) meant that Illinois Brick did not apply – and it is far from clear that most other federal courts would reach the same conclusion as this Court.

To the contrary, as argued in the Motion for Reconsideration, two federal Circuit Courts of Appeals have accepted a rule pursuant to which Illinois Brick remains applicable even if the nominal "direct purchaser" is alleged to be a co-conspirator, *unless* it is also specifically alleged that the conspiracy was one for price-fixing:

> [S]everal courts have recognized a "coconspirator exception" to Illinois Brick. [Plaintiff] asserts that these cases stand for the proposition that Illinois Brick is inapplicable when *any conspiracy* has been alleged, but we interpret these cases as standing for the more narrow proposition that Illinois Brick is inapplicable to *a particular type of conspiracy -- price-fixing conspiracies*. . . . Far more reasonable is the proposition that, to the extent a court were to recognize a co-conspirator exception to Illinois Brick, such an exception would be grounded on the damages theory underlying the alleged conspiracy. For example, the rationale for concluding that Illinois Brick does not apply to a price-fixing conspiracy is that no overcharge has been passed on to the consumer.

Dickson v. Microsoft Corp., 309 F.3d 193, 214-215 (4th Cir. 2002) (emphasis supplied and citations omitted). This narrower version of the exception was also adopted by the Ninth Circuit. See, Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.), 686 F.3d 741, 752 (9th Cir. 2012) ("[W]e agree with the Fourth Circuit and decline to extend the co-conspirator exception past the situation when alleged co-conspirators set the price paid by the plaintiffs."). Cf. Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 204 (1990) (involving a price-fixing conspiracy – "defendants had conspired to inflate the price of their gas").

Indeed, three other Circuits (the Third, Fifth and Eighth) recognize a "co-conspirator" exception but *expressly* require that it be a vertical price-fixing conspiracy, *and* that the parties immediately upstream (*i.e.*, the "middlemen") be joined as co-defendants. See, Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 424 F.3d 363, 371 (3d Cir. 2005); In re Beef Indus.

Antitrust Litig., 600 F.2d 1148, 1163 (5th Cir. 1979); In re Midwest Milk Monopolization Litig., 730 F.2d 528, 530 (8th Cir. 1984).

In addition, of the Circuits that have considered the issue, only two (the Seventh and Eleventh) failed to expressly require that the conspiracy involve price-fixing; and even then, the cases in which those two Circuits applied the exception involved price-fixing anyway. See, Fontana Aviation, Inc. v. Cessna Aircraft Co., 617 F.2d 478, 481 (7th Cir. 1980); Lowell v. Am. Cyanamid Co., 177 F.3d 1228, 1230 n.4 (11th Cir. 1999).

In fact, to date, STUSCO has not found any published opinion by a U.S. Circuit Court of Appeals that has applied the co-conspirator exception to Illinois Brick to non-price-fixing conspiracies.

Finally, there are the five remaining Circuits (namely, the First, Second, Sixth, Tenth, and D.C. Circuits) that have yet to address the applicability of any version of "co-conspirator" exception. See, e.g., Laumann, 907 F. Supp. at 481 ("The Second Circuit has not addressed the 'co-conspirator exception'"); In re Nifedipine Antitrust Litig., 335 F. Supp. 2d 6, 14 (D.D.C. 2004) (The D.C. Circuit has neither accepted nor "rejected a 'co-conspirator' exception to the Illinois Brick…rule").

Specifically with respect to the First Circuit, the closest that it has come to resolving the issue was in its opinion in a case involving allegations of a vertical conspiracy between automobile manufacturers and dealers; tellingly, the First Circuit declined to follow case law from a District Court in the Third Circuit that recognized an exception to Illinois Brick for vertical price-fixing conspiracies:

> Plaintiffs assert vigorously that their case is almost identical to that of In re Mercedes–Benz Anti–Trust Litigation, 364 F. Supp. 2d 468 (D.N.J.2005), in which the district court declined to dismiss a class action brought by lessees against a car manufacturer and its dealers because the court determined that the

lessees were direct purchasers under Illinois Brick. Whether or not we would
reach the same conclusion as was reached in that case, it is easily distinguishable.

In re New Motor Vehicles Canadian Export Antitrust Litigation, 533 F.3d 1, 4 (1st Cir. 2008). At least three conclusions can be derived from this opinion: (a) the First Circuit did not, in fact, adopt any exception to Illinois Brick; (b) the First Circuit scrutinized the allegations of a vertical conspiracy *extremely* closely, and found it lacking;[6] and (c) in any case, the only exception that it was even considering adopting would have been limited to vertical *price-fixing* conspiracies. Unless one takes isolated sentences from this opinion out of context – as Plaintiffs did in their briefing – it is clear that this opinion does not furnish any support whatsoever for the contention that, whenever there is an allegation of a vertical conspiracy, Illinois Brick falls by the wayside. To the contrary, the case clearly stands for the proposition that the First Circuit hews closely to the Supreme Court's admonition in Utilicorp that lower courts should be slow to recognize any exceptions to Illinois Brick. The opinion also suggests that, at most, the Circuit might be willing to consider an exception for vertical *price-fixing* conspiracies.

---

[6] The First Circuit spends almost three full pages explaining why the allegations were insufficient to allege a vertical price-fixing conspiracy. See, 533 F.3d at 4-6. This Honorable Court should have employed a similarly-exacting degree of scrutiny. Had the Court done so, it would have concluded that Plaintiffs' conclusory allegations of a vertical ***non***-price conspiracy did not pass muster, if for no other reason than the one that STUSCO has previously put forward; namely, that the allegations relating to PREPA – which furnished the only "vertical" component of the putative conspiracy – could not plausibly establish a claim that it was a co-conspirator. To put matters plainly, if there was a conspiracy, then the individual co-defendants would have been engaged in a scheme to defraud their employer, PREPA, which after all was the entity that allegedly paid too much for non-compliant fuel. Their alleged acts cannot be imputed to PREPA because it would mean that PREPA would have been conspiring to defraud itself – which is absurd. And if PREPA was not a conspirator, then there is no "vertical" component to the alleged conspiracy; it would simply be a horizontal conspiracy, which does not furnish grounds for avoiding the application of Illinois Brick.

The point of the discussion above is not to persuade the Court that it was wrong to decide as it did; much as STUSCO would want the Court to reconsider its decision, it does not expect such a result at this stage. Instead, the point is simply that reasonable persons can differ on how to decide the issue. It seems evident that five Circuits would disagree with this Court's ruling. Moreover, In re New Motor Vehicles suggests that the First Circuit is also likely to disagree. Thus, regardless of which path the First Circuit ends up taking, at least one thing is clear: the case-law summarized above plainly evinces a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Under these circumstances, it is highly appropriate for the First Circuit to be given an early opportunity to address and resolve this issue.

C.  **An Immediate Appeal from the Order Would Materially Advance the Ultimate Termination of the Litigation**

Finally, an immediate appeal of the Order would materially accelerate the ultimate termination of this litigation. Notice that Plaintiffs have not alleged a vertical price-fixing conspiracy. That means that, if the First Circuit declines to adopt a co-conspirator exception to Illinois Brick, or adopts one but limits it to price-fixing conspiracies, Plaintiffs would lack any basis on which to sustain their Complaint, and the action would have to be dismissed.

The possibility that an interlocutory appeal could lead to the dismissal of the Complaint at this stage of the proceedings highlights an additional reason why interlocutory review is particularly appropriate here. As noted in Twombly and its progeny, discovery in complex cases (antitrust in Twombly, RICO here) is particularly burdensome and costly, and thus courts should examine a complaint closely at the threshold stage to determine whether there is a proper basis for the claims to go forward before moving the parties into the burdens of antitrust discovery. See, e.g., Twombly, 550 U.S. at 558 (explaining that because "proceeding to antitrust discovery can be expensive," scrutiny is critical at the pleading stage "before allowing a potentially massive factual controversy to proceed" (internal quotation marks omitted)); In re Insurance

11

Brokerage Antitrust Litigation, 618 F.3d 300, 370 (3rd Cir. 2010) (applying same rationale to case involving RICO Act claim).[7] The same logic supports an early appeal.

There can be no doubt that discovery in this case will require a huge investment of time, effort, and money. For example, Plaintiffs are requesting from all **nineteen** defendants every conceivable document relating to every single sale of fuel to PREPA over a **fourteen-year** period of time. It should thus come as no surprise that one of the other defendants currents estimating that it will need to review approximately 20 **Terabytes** of electronically-stored information in order to respond to Plaintiffs' initial set of document requests. It bears emphasizing that that is just one out of nineteen defendants. Each document will be reviewed by at least one lawyer for each of the parties in the case. Even working from a very conservative estimate of hundreds of thousands of documents, one can easily project a combined expenditure of attorneys' fees that rises into the millions of dollars. And this is simply for document review.

Similarly, although the number of depositions has not yet been set, we can safely estimate that, based on the number of defendants and individuals mentioned in the Complaint, there will be at least 30 depositions, and probably a lot more. As the Court is aware, each deposition typically lasts one business day, but requires substantial preparation beforehand. Again, for purposes of example only, and working from an extremely conservative estimate of just one day's preparation time for each deposition, one can project that each party's attorneys will have to spend at least sixty business days dealing with depositions. Factoring in the number of attorneys involved, as well as their hourly fees, it is evident that the depositions alone will also require an expenditure well into the millions of dollars in attorney's fees.

---

[7] See, generally, Memorandum from Paul V. Niemeyer, Chair, Advisory Committee on Civil Rules, to Hon. Anthony J. Scirica, Chair, Committee on Rules of Practice and Procedure (May 11, 1999), 192 F.R.D. 354, 357 (2000) ("the cost of discovery represents approximately 50% of the litigation costs in all cases, and as much as 90% of the litigation costs in the cases where discovery is actively employed") (cited in Twombly, 550 U.S. at 559).

Another factor to keep in mind is that this case has been styled as a class action. Discovery on class certification issues, as well as the subsequent briefing and hearing, will require an additional and very substantial expenditure of time and resources, over and beyond what a regular RICO Act case would entail.

Finally, an interlocutory appeal will not prejudice Plaintiffs. For example, all relevant documents are being preserved and will continue to be preserved during the appeal, and witnesses' memories will not be any different if they are deposed in 6 months rather than 9 or 12 months. In that regard, differences measured in months pale before the fourteen-year class period that Plaintiffs are alleging.

Indeed, appellate review at this stage could save the Court and the parties – including Plaintiffs – enormous amounts of time, effort and money on discovery disputes that may well prove to be unnecessary should the First Circuit conclude that Illinois Brick did apply to this case. That pure issue of law should be resolved at the outset, rather than after lengthy, burdensome and expensive discovery has taken place.[8]

An interlocutory appeal would be beneficial to all parties even if it does not result in dismissal. That is because the First Circuit's opinion would still be likely to help the Court and the parties to focus discovery and reduce overall costs. In that regard, notice that, *without* an interlocutory appeal, it is likely that both sides are going to seek discovery that is broader than they would if, instead, they already knew exactly what kind of a conspiracy the First Circuit concludes will fit into the Illinois Brick exception.

---

[8] The fact that the case is now before a new Magistrate Judge who has yet to make a substantial investment of time and effort in familiarizing himself with this case provides further support to STUSCO's point; an interlocutory appeal now could make such an expenditure of scarce judicial resources unnecessary at this juncture.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, STUSCO respectfully requests that the Court amend its Order at Docket No. 254 (together with its Order at Docket No. 305) pursuant to 28 U.S.C. § 1292(b) by expressly stating that the Order "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," and by certifying the following question for interlocutory appeal: "Does the Illinois Brick indirect purchaser doctrine apply in cases where the putative direct purchaser is alleged to be a co-conspirator but not in a vertical price-fixing conspiracy?"

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico on July 29, 2016.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the case participants appearing in said system.

**O'NEILL & BORGES** LLC
*Attorneys for SHELL TRADING (US) COMPANY*
250 Muñoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*s/Carlos A. Valldejuly-Sastre*
Carlos A. Valldejuly -Sastre
USDC No. 209505
carlos.valldejuly@oneillborges.com

*s/Salvador J. Antonetti-Stutts*
Salvador J. Antonetti-Stutts
USDC No. 215002
salvador.antonetti@oneillborges.com

*s/Carla García-Benítez*
Carla García-Benítez
USDC-PR No. 203708
carla.garcia@oneillborges.com

*s/Nayuan Zouairabani*
Nayuan Zouairabani
USDC No. 226411
nayuan.zouairabani@oneillborges.com

*s/Janice M. Ramírez Vélez*
Janice M. Ramírez-Vélez
USCD-PR 230207
janice.ramirez@oneillborges.com