## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ISMAEL MARRERO-ROLON, *et al.*,

    **Plaintiffs,**

        v.

PUERTO RICO ELECTRIC POWER AUTHORITY, *et al.*,

    **Defendants.**

CIVIL NO. 15-1167 (JAG)

## OPINION AND ORDER

GARCIA GREGORY, D.J.

    Pending before the Court is Plaintiffs'[1] Motion for Class Certification. Docket No. 535. Defendants'[2] timely opposed the Motion, Docket No. 563; Plaintiffs replied, Docket No. 573; Defendants sur-replied, Docket No. 581; and Plaintiffs opposed Defendants' Sur-Reply, Docket No. 588. In their Opposition, Defendants argue (i) that Plaintiffs have failed to satisfy the adequacy and predominance requirements; (ii) that Plaintiffs' damages model does not meet the *Comcast* standard; and (iii) that Plaintiffs have not offered a trial plan to meet the manageability requirement. Docket No. 563. For the reasons stated below, Plaintiffs' Motion for Class Certification is hereby **GRANTED**.

---

[1] The named Plaintiffs are Anne Catesby Jones and Jorge Valdes Llauger. The Court refers to them collectively as "Plaintiffs."

[2] Plaintiffs divide Defendants into three groups: Fuel Oil Suppliers, Laboratories, and PREPA Participants. The "Fuel Oil Suppliers" include: Petrobras America Inc.; Petroleo Brasileiro S.A; Carlos R. Mendez & Associates; Shell Trading (US) Company; Trafigura A.G.; Trafigura Beheer B.V.; Trafigura Limited; Trafigura Argentina S.A.; Petrowest, Inc.; Vitol S.A., Inc.; and Vitol, Inc. The "Laboratories" include: Inspectorate America Corporation; Core Laboratories N.V. d/b/a Saybolt; Altol Chemical Environmental Laboratory Inc. d/b/a Alchem Laboratory; Altol Environmental Services, Inc. d/b/a Altol Enterprises. The "PREPA Participants" include the Puerto Rico Electric Power Authority; William Rodney Clark; Edwin Rodriguez; and Cesar Torres Marrero.

## BACKGROUND

The Puerto Rico Electric Power Authority ("PREPA") is a public utility company responsible for generating, transmitting, and distributing approximately 70% of the electricity used in Puerto Rico. Docket Nos. 542 at 6-7; 564-1 at 19. Two-thirds of the electricity that PREPA generates comes from the burning of fuel oil. Docket Nos. 542 at 6, 9; 564-1 at 19. In 1999, PREPA and the United States Environmental Protection Agency ("EPA") entered into a Consent Decree to settle a lawsuit filed against PREPA. Docket Nos. 542 at 11; 564-1 at 21. The Consent Decree, which was modified in 2004, provides that the fuel burned by PREPA must meet certain minimum specifications. Docket Nos. 542 at 12; 564-1 at 21. The parties refer to fuel oil that meets these specifications as compliant fuel oil; otherwise, it is referred to as non-compliant fuel oil. PREPA included these specifications in each of its fuel oil purchase contracts. Docket Nos. 542 at 12; 564-1 at 23. Fuel oil in its natural state, however, does not satisfy these requirements, making compliant oil more expensive than non-compliant oil. *See generally* Docket Nos. 542 at 31-32, 34-36; 544 at 22, 46-47; 564-1 at 22-24, 27, 40.

Every shipment of fuel oil must be tested by at least two laboratories—one chosen by the fuel oil supplier and another chosen by PREPA—to assess compliance with the contractual specifications. Docket Nos. 544 at 23; 564-1 at 25. If these two laboratories yield inconsistent results, a third test would be conducted. Docket No. 564-1 at 25. Once the fuel oil is deemed compliant, it is unloaded into PREPA's storage tank and made available for combustion. Docket Nos. 544 at 24; 564-1 at 26. PREPA then passes the entire costs of purchasing fuel oil to its consumers through the fuel adjustment charge in their monthly electricity bill. Docket Nos. 542 at 20-21; 564-1 at 32.

Plaintiffs filed the instant civil action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. §§ 1962(c) and (d). Docket No. 367. In essence, Plaintiffs allege that the PREPA Participants conspired with the Fuel Oil Suppliers and Laboratories to falsify laboratory results so that non-compliant fuel oil shipments could be accepted as compliant and, by extension, purchased at the higher price for compliant fuel oil. *Id.* at 1. PREPA, by overpaying for non-complaint fuel oil, would thereafter overcharge its customers in their monthly electricity bills. *Id.*

## ANALYSIS

Class certification is governed by Fed. R. Civ. P. 23. As a threshold matter, Plaintiffs bear the burden of establishing the four requirements for class certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."). Plaintiffs must then show that the purported class qualifies as one of the types of class actions in Rule 23(b).

To determine whether Plaintiffs have met these requirements, the Court "must undertake a rigorous analysis." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 17 (1st Cir. 2015) (quotation marks and citations omitted). While this assesment "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (quotation marks and citation omitted). As such, the Court may consider merits issues

"only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466 (citations omitted).

## I.   Rule 23(a) Requirements

For purposes of Rule 23(a) compliance, Defendants only challenge whether Plaintiffs have satisfied the adequacy requirement, effectively conceding Plaintiffs' compliance with the remaining Rule 23(a) requirements. Nevertheless, the Court must evaluate each requirement in turn.

### A.  Numerosity

The proposed class easily meets the numerosity requirement. To do so, Plaintiffs must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This, in turn, merely requires a showing that "it is extremely difficult or inconvenient to join all the members of the class." 7A Charles Alan Wright *et al.*, Fed. Prac. & Proc. Civ. § 1762 (3d ed. 2018). Here, the proposed class consists of "[a]ll persons or entities that paid a fuel oil surcharge on their electricity bill to the Puerto Rico Electric Power Authority (a/k/a Autoridad de Energía Eléctrica) during the period January 1, 2002 to April 30, 2016." Docket No. 535 at 1.[3] PREPA's electronic business records—which will serve to readily identify all the members of the class[4]—reflect more than a million customers. Docket Nos. 542 at 9; 564-1 at 19.

---

[3] The following persons and entities are excluded from the class: "this Court and its personnel, Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, predecessors, successors, assigns and employees. Also excluded are PREPA's public lighting customers, public authority customers, and residential customers charged a fixed residential rate for public housing facilities." Docket No. 535 at 1 n.4.

[4] Courts have identified an additional "implied requirement" for class certification: "that the class be definite or ascertainable." 1 Newberg on Class Actions § 3:1 (5th ed. 2018); *see In re Nexium Antitrust Litig.*, 777 F.3d at 19. Here, the class is ascertainable through objective criteria, namely PREPA's business records. *See Matamoros v. Starbucks Corp.*, 699

Given the size of the class, joinder is clearly impracticable for purposes of Rule 23(a)(1). *See Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (finding that a class of 500,000 "far exceeds the low threshold for numerosity."). Therefore, Plaintiffs have satisfied the numerosity requirement.

### B. Commonality

Plaintiffs have also established the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)(2)'s commonality requirement, "[e]ven a single [common] question will do." *Wal-Mart Stores, Inc.*, 564 U.S. at 359; *see In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008) ("Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'") (quoting 7A Charles Alan Wright *et al.*, Fed. Prac. & Proc. Civ. § 1763 (3d ed. 2005)). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotation marks and citation omitted); *see Wal-Mart Stores, Inc.*, 564 U.S. at 349-50 (noting that commonality requires claims dependent on "a common contention . . . of such a nature that it is

---

F.3d 129, 139 (1st Cir. 2012) (holding that a class was not "unascertainable and overbroad" where it was defined in terms of an "objective criterion."); 1 Newberg on Class Actions § 3:1 (5th ed. 2018) ("The first implied requirement directs plaintiffs to propose a definite class. Although formulations of this doctrine vary, all essentially require a putative class to be ascertainable with reference to objective criteria.").

capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Here, Plaintiffs allege that Defendants conspired to pass off non-compliant fuel oil as compliant fuel oil through manipulated laboratory results, and that PREPA then purchased the non-compliant fuel oil at compliant fuel oil prices, shifting the entire cost of the purchased fuel oil to the class members through the fuel oil surcharge in their monthly electricity bill. Plaintiffs further posit that this was done in violation of 18 U.S.C. §§ 1962(c) and (d), which requires they first establish "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1st Cir. 1985)). Since all class members assert the same RICO claims, the case presents common questions of law including, but not limited to, the existence of a RICO enterprise, the existence of a pattern of racketeering activity, and the existence of a conspiracy. Moreover, the claims asserted also present questions of fact that are common to all class members such as, *inter alia*, whether Defendants participated in the alleged scheme to defraud, the scope and duration of the scheme, the role of each participant, and the extent to which PREPA passed the costs of fuel oil to its customers. These common legal and factual questions are susceptible to class-wide proof because they focus on Defendants' conduct and would not require "evidence that varies from member to member." *See Tyson Foods, Inc.*, 136 S. Ct. at 1045.

Indeed, several courts have similarly found commonality in RICO class actions based on alleged schemes to defraud precisely because "many of the elements of RICO civil actions focus on the conduct of the defendants." *McMahon Books, Inc. v. Willow Grove Assocs.*, 108 F.R.D. 32, 38 (E.D. Pa. 1985); *see, e.g., Torres-Ronda v. Joint Underwriting Ass'n*, 2012 WL 4681063, at *3 (D.P.R. Oct. 2, 2012)

("With respect to commonality, all class members stand in an essentially identical position in that they were allegedly defrauded through a pattern of racketeering conduct."); *Robinson v. Fountainhead Title Grp. Corp.*, 257 F.R.D. 92, 94 (D. Md. 2009) ("The alleged scheme to defraud, if proven, operated in the same manner with regard to all customers and thus, liability for operating the scheme will flow from class-wide common proof."); *Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669, 675 (N.D. Ill. 1989) ("In short, the question of whether there has been a violation of RICO will turn on common questions of law and fact, and thus the requirement of Rule 23(a)(2) is satisfied.").

Accordingly, the Court finds that the instant case presents common questions of law and fact, thus complying with the commonality requirement.

## C. Typicality

Plaintiffs have also shown that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typical, however, does not mean identical. *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 131 (D.P.R. 2010) (noting that typicality "does not require that all putative class members share identical claims.") (citation omitted); *see In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004). Instead,

> [t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citations omitted). Hence, for RICO class actions, "the typicality requirement is satisfied if the claims of the class representative and the class arise from the same scheme by the defendant to defraud the class members." *Torres-Ronda*, 2012 WL 4681063, at *5 (quoting 5 Moore's Federal Practice - Civil § 23.24[8][d]).

In the instant action, the representatives' claims arise from the same conduct and same underlying facts as the claims brought by the class, namely Defendants' alleged scheme to defraud. Additionally, these claims are all based on the same legal theory—a RICO violation—and assert the same injury—the payment of overcharges during the relevant period. Therefore, the case satisfies Rule 23(a)(3)'s typicality requirement.

## D. Adequacy

Finally, the Court finds that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation omitted). The First Circuit has devised a two-part adequacy test, requiring "[t]he moving party [to] show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985) (citations omitted).

At the outset, the named Plaintiffs are "part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc.*, 521 U.S. at 625-26 (quotation marks and citation omitted). Thus, no conflict of interest between the class representatives and the other

members of the class exists because they all assert the same legal theories pursuant to RICO, arising from the same operative facts, and they all seek to recover for the same alleged harm, i.e. the payment of overcharges in their monthly bills.

Defendants contend that Plaintiffs have failed to make out the requisite showing of adequacy "[b]ecause the named Plaintiffs lack basic knowledge of their lawsuit and have ceded control to counsel." Docket No. 563 at 25. The Court disagrees. First, the record shows that the named Plaintiffs do understand the basic issues raised in this case, as well as their duty to communicate with class counsel and ensure that the interests of the class are protected. Docket No. 544 at 96-102. The named Plaintiffs have also invested their time in this case by sitting for depositions, reviewing filings, and assisting with answers to interrogatories and document requests. *Id.* Second, "[i]t is hornbook law . . . that [i]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) (quotation marks and citations omitted); *see Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (noting that "[t]he Supreme Court in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966) expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance."). Accordingly, the Court rejects Defendants' arguments as to the adequacy of the class representatives.

Finally, the Court finds that Hagens Berman Sobol Shapiro LLP—a class action litigation firm[5]—is qualified, experienced, and able to continue prosecuting this action vigorously as they have done thus far. After considering the Rule 23(g) factors for appointing class counsel, Hagens Berman Sobol Shapiro LLP is hereby appointed to act as class counsel.

In short, the Court finds that the named Plaintiffs and class counsel will fairly and adequately protect the interests of the class

## II.    Rule 23(b)(3) Requirements

Having found that Plaintiffs have met all four threshold requirements for class certification under Rule 23(a), the Court now turns to the Rule 23(b) analysis.

Here, Plaintiffs rely on Rule 23(b)(3), which allows class certification after a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." These are referred to as the predominance and superiority requirements, which allow certification "where class suit may nevertheless be convenient and desirable." *Amchem Prod., Inc.*, 521 U.S. at 615 (quotation marks and citation omitted). Specifically, a Rule 23(b)(3) class action seeks "to cover cases [such as the present suit, where] a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* (quotation marks and citation omitted).

---

[5] *See* https://www.hbsslaw.com/about-us ("Hagens Berman Sobol Shapiro LLP is a national class-action and complex litigation law firm that takes on the world's largest corporations and entities, fighting for the rights of consumers, whistleblowers, employees, investors and others.").

A.  **Predominance**

The predominance requirement evaluates "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623 (citation omitted). In making this determination, courts must carefully undertake "an individualized, pragmatic evaluation of the relationship between and the relative significance of the common and individual issues." *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 343 (D. Mass. 2003) (citing 7A Charles Alan Wright *et al.*, Fed. Prac. & Proc. Civ. § 1778 (2d ed.)); *see Tyson Foods, Inc.*, 136 S. Ct. at 1045. While Rule 23(b)(3) requires a finding that common questions predominate, it does not require "that questions common to the class . . . will be answered, on the merits, in favor of the class." *Amgen Inc.*, 568 U.S. at 459. This is so because, as the Supreme Court has emphasized, the purpose of "a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to *select the metho[d] best suited* to adjudication of the controversy fairly and efficiently." *Id.* at 460 (quotation marks omitted) (emphasis added). While predominance and commonality will overlap, "the predominance criterion is far more demanding." *Amchem Products, Inc.*, 521 U.S. at 624 (citation omitted); *see In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d at 20.

Defendants argue that common issues do not predominate because Plaintiffs cannot prove liability, injury, or damages with common evidence. Docket No. 563 at 8-17. Defendants also posit that their statute of limitations defenses are not susceptible to class-wide determination and, as a result, preclude certification. *Id.* at 17-19. The Court again disagrees and concludes that, based on the evidence presented, common questions will predominate over individual questions.

1. **Liability through common evidence**

Plaintiffs' RICO claims require establishing that a RICO enterprise engaged in a pattern of racketeering activity, or conspired to engage in such conduct. *See Sedima, S.P.R.L.*, 473 U.S. at 496. Because this inquiry focuses entirely on Defendants' conduct, Plaintiffs will rely on common evidence to establish RICO liability. *See supra* at I.B; *see also Amchem Prod., Inc.*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer [] fraud . . . .") (citations omitted); *Torres-Ronda*, 2012 WL 4681063, at \*7 ("Where defendants allegedly engaged in uniform fraud applicable to the entire class, issues of law and fact involved in making out a violation of Section 1962 are common to all plaintiffs' claims and predominate over potential individual issues.") (citation omitted).

In cases like this one,

> where a number of plaintiffs claim injury from a single fraudulent scheme allegedly constituting racketeering activity on the part of the defendants, each of the plaintiffs' claims will focus on defendants' conduct to establish a violation of section 1962. The issues of law and fact involved in making out a violation of section 1962 will generally be common to all plaintiffs' claims, because plaintiffs are asserting a single fraudulent scheme by the defendants which injured each plaintiff.

*McMahon Books, Inc.*, 108 F.R.D. at 39. Circuit Courts have similarly found that common questions predominate in RICO class actions. *See, e.g., Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122 n.3 (9th Cir. 2017) (finding predominance in light of the fact that the elements of a RICO claim "are appropriate for classwide litigation because they focus on [] Defendants' conduct. Whether [] Defendants were part of an enterprise operating an alleged scheme to defraud class members can be resolved on a classwide basis.") (citations omitted); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 89 (2d

Cir. 2015) (finding no abuse of discretion in district court's certification order because common questions predominated the analysis of whether a RICO violation occurred). Accordingly, the Court finds that common questions predominate the liability inquiry.

### 2. Injury through common evidence

Turning to whether Plaintiffs can prove injury with common evidence, Defendants and their expert[6] repeatedly allude to the existence of "individualized questions" in light of the shipment-by-shipment analysis that will need to be undertaken to determine which shipments, if any, were non-compliant and, thus, whether the class members suffered any injury as a result. *See* Docket No. 563 at 10-14. Defendants further contend that, because of substantial customer turnover during the class period, a non-compliant shipment will not affect every class member and, therefore, individual questions will predominate the injury assessment. *Id.*

As to the first argument, Defendants and their expert misconstrue the relevant inquiry. A shipment-by-shipment analysis does not present individual questions within the meaning of Rule 23(b)(3) because it will not require each member to present evidence that *varies from member to member. See Tyson Foods, Inc.*, 136 S. Ct. at 1045 (defining an individual question as "one where

---

[6] *See, e.g.,* Docket No. 564-1 at 11-12 (". . . my analysis indicates that numerous factors all point to the need for individualized inquiries to prove conspiratorial outcomes [such as] . . . (i) The Nature of the Alleged Conspiracy . . . (ii) The Role of the EPA . . . (iii) PREPA's Contracts with Fuel Suppliers . . . (iv) Pricing of Fuel Oil . . . (v) Testing Protocols . . . ."); 12 (noting that this case "could involve a huge number of individualized questions and types of evidence. These include the following: Did the relevant supplier know that it could source non-compliant oil and it would be accepted by PREPA? Did the relevant supplier reach a conclusion that the potential benefits from sourcing non-compliant oil for a particular shipment outweigh the risks, e.g., not having the oil accepted by PREPA? Which of the scores of laboratory tests for each fuel oil shipment were fraudulent?"); 15 ("I also recognize that many factors point to the need for individualized inquiries into whether shipments represented conspiratorial outcomes."); 37 ("The analysis of the factors discussed above establishes the need for individualized analyses to determine which shipments were impacted by the alleged overarching conspiracy involving multiple parties, changing identities, changing standards, and test results that are subject to error.").

members of a proposed class will need to present evidence that varies from member to member.") (quotation marks and citation omitted). After establishing RICO liability, *see supra* at II.A.1, class members will need to show that they suffered an injury as a result of Defendants' conduct, namely that they paid an overcharge for at least one non-compliant shipment. *See Sedima, S.P.R.L.*, 473 U.S. at 496 ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."). While this will certainly require a shipment-by-shipment analysis, any non-compliant shipment will affect thousands, if not millions, of class members that were PREPA customers at the time. In other words, even if one non-compliant shipment will not injure every class member, every non-compliant shipment will injure thousands of class members. As such, this does not present an individual question as to each class member. In fact, any class member bringing an individual action would also need to engage in this same exercise—even if the relevant time period may be shorter for some class members—because full discovery is needed to determine which shipments, if any, were non-compliant.[7] As such, because a shipment-by-shipment analysis does not equate to a member-by-member analysis, individual questions will not predominate as to this issue.

---

[7] The Court takes issue with Defendants' repeated assertions that Plaintiffs have failed to identify "whether *even a single one* of the thousands of shipments of fuel oil delivered during the proposed class period was actually non-compliant." Docket No. 563 at 11; *see also* Docket No. 563 at 24 ("Because Plaintiffs have not put forward any evidence (or even an allegation) of the number [of] shipments during the class period that were allegedly non-compliant on sulfur . . . ."). Without the benefit of full discovery, Plaintiffs simply have no way of identifying which shipments, if any, were non-compliant. That is precisely the purpose of this litigation: to investigate whether, and to what extent, Defendants violated federal law. Further, discovery was bifurcated at the behest of Defendants. *See* Docket No. 446 at 7. Defendants cannot use the bifurcation of discovery as both a sword and a shield, and fault Plaintiffs for any evidentiary gaps caused by the bifurcation order.

For the reasons stated above, the Court also rejects any argument that individual questions predominate because evidence as to each Defendant will differ. The predominance inquiry focuses on whether each class member will need to present different evidence to make their *prima facie* showing. The fact that Plaintiffs will need to offer evidence as to each Defendant's participation and role in the alleged RICO conspiracy does not implicate individual questions as to each class member.

Defendants' argument as to the degree of customer turnover during the relevant time period is similarly unpersuasive. The First Circuit has held that "so long as it is established that [] a mechanism [to exclude uninjured class members] *can* be identified, the presence of a de minimis[8] number of uninjured members at the class certification stage does not defeat a class action." *In re Nexium Antitrust Litig.*, 777 F.3d at 32. Once all non-compliant shipments have been identified, class members that were not affected by any of the shipments identified can simply be excluded from the class using PREPA's business records. Because discovery in this case was bifurcated and merits discovery has not begun, "it is simply not possible to entirely separate the injured from the uninjured at the class certification stage." *Id.* at 22. As such, the Court finds that the possibility

---

[8] The First Circuit defined *de minimis* "in functional terms," stating that "if common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered." *In re Nexium Antitrust Litig.*, 777 F.3d at 30 (quotation marks and citation omitted). Because common issues predominate, the exclusion of any uninjured class member at a later stage will not have a significant effect on the evidence offered.

that the class includes uninjured members is insufficient to preclude certification, provided that

any uninjured members will be excluded from the class prior to judgment.[9]

In any case, it is well-established that

> the need for some individualized determinations at the liability and
> damages stage does not defeat class certification. Rule 23(b)(3)
> does *not* require a plaintiff seeking class certification to prove that
> each element of her claim is susceptible to classwide proof. Rather,
> the question is whether there is reason to think that
> [individualized] questions will *overwhelm* common ones and render
> class certification inappropriate . . .

*Id.* at 21 (quotation marks and citations omitted). Thus, "[e]ven in cases where the issue of injury-

in-fact [not just damages calculation] presents individual questions . . . it does not necessarily

follow that they *predominate* over common ones and that class action treatment is therefore

unwarranted." *Id.* (quotation marks and citation omitted); *see also* Joshua P. Davis *et al.*, *Class Actions*

*and Access to Justice: The Puzzle of Class Actions with Uninjured Members*, 82 Geo. Wash. L. Rev. 858, 859

(2014) ("Numerous courts have certified plaintiff classes even though the plaintiffs have not been

able to use common evidence to show harm to all class members.").

In sum, so long as "central issues in the action are common to the class and can be said to

predominate, the action may be considered proper under Rule 23(b)(3) even though other

important matters will have to be tried separately, such as damages or some affirmative defenses

peculiar to some individual class members." *Tyson Foods, Inc.*, 136 S. Ct. at 1045 (quotation marks

and citation omitted). Such is the case here. Even assuming *arguendo* that proving injury might

---

[9] Like the First Circuit in *In re Nexium Antitrust Litig.*, "[w]e need not decide whether it is [] permissible to define a proper class including more than a de minimis number of uninjured parties since we conclude that it has not been shown that the class here includes more than a de minimis number of uninjured parties." *Id.* at 25.

require individualized determinations, an argument that we have already rejected, the central issue in this case—whether Defendants incurred in RICO violations—will be decided through common evidence, such that common questions will predominate.

### 3. Damages

Defendants also argue that Plaintiffs cannot prove damages using common evidence and that Plaintiffs' proffered method to calculate damages does not comply with the standard set forth in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). *See* Docket No. 563 at 14-17, 20-23. While the Court acknowledges that individualized questions *may* predominate the damages analysis, this would still not preclude certification. *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3). Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.") (citations omitted). Here, common questions predominate the liability inquiry, thereby warranting class certification. *See supra* at II.A.1. In any event, the Court will defer, for a later stage of the proceedings, the determination as to whether class certification is warranted at the damages phase. Accordingly, the damages phase is hereby bifurcated and this Certification Order shall be limited to the issues of liability and injury.

Because the Court has bifurcated the damages phase for purposes of class certification, it need not address Defendants' argument that Plaintiffs' proposed damages model does not comply with *Comcast*. *See* Docket No. 563 at 20-23. Nor does the Court need to address Defendants' argument that the hypothetical "but-for worlds" identified by their expert prevent Plaintiffs from

assessing damages with common evidence. Docket No. 563 at 15-16. Still, the Court advances that this but-for causation issue "would not result in individual questions predominating. Instead, a failure of proof on the issue of [causation] would end the case" for all class members. *Amgen Inc.*, 568 U.S. at 459-60. As to Defendants' argument that the "appropriate but-for world is not predetermined," Docket No. 563 at 16, it is worth noting that "a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927) (citations omitted).

### 4. Statute of Limitations

Lastly, Defendants argue that their statute of limitation defenses involve individual fact questions as to each class member. Docket No. 563 at 17-19. However, this does not impede certification, for "[a]s long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3)." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (citation omitted). For this reason, "where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses. After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F.3d at 39 (citations omitted).

In any event, the Court is not convinced that this defense will, in fact, result in individual questions overwhelming common ones. If the Court were to deny class certification, it seems highly unlikely that, faced with hundreds or thousands of individual lawsuits, Defendants would even attempt to make statute of limitations arguments that are specific to each individual plaintiff. Instead, it seems more feasible that Defendants would rely on public documents and media coverage to present an argument as to when class members knew or should have known about the injury alleged.[10] In fact, in opposing certification, Defendants do just that, refer to the "scores of public documents dating back to the year 2000 that alerted Plaintiffs to the injuries they allege in this case." Docket No. 563 at 18. Since this argument would apply equally to all class members, the Court finds that the statute of limitations defenses in this case do not impede certification in light of the predominance of common questions.[11]

## B. Superiority

In determining whether the proposed class satisfies Rule 23(b)(3), courts must also consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

---

[10] This seems especially true considering that, except for public documents or media articles, Defendants would presumably possess any evidence of the claims at issue here.

[11] "If, moreover, evidence later shows that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms. For example, it can place class members with potentially barred claims in a separate subclass, or exclude them from the class altogether." *Smilow*, 323 F.3d at 39-40 (citations omitted).

Fed. R. Civ. P. 23(b)(3); *see Amchem Prod., Inc.*, 521 U.S. at 615-16. These factors weigh in favor of class certification.

First, the members of the class have little incentive to litigate their claims individually because the resources needed to prosecute this case would significantly outweigh any potential recovery. *See Amchem Prod., Inc.*, 521 U.S. at 617 (noting that "the class action mechanism [seeks] to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (citation omitted). In fact, considering the high litigation costs involved in this case, a class action is not only the most efficient way for the class members to exercise their rights, but possibly the only real alternative to do so. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d at 8 (noting that "an erroneous failure to certify a class where individual claims are small may deprive plaintiffs of the only realistic mechanism to vindicate meritorious claims.").

As to the second and third criteria, only one pending lawsuit with similar claims has been identified; and it is certainly desirable to concentrate the litigation of these claims in this District because the services provided by PREPA are offered in this District, PREPA is located in this District, and this Court has already ruled on numerous preliminary issues.

Finally, while the size of this lawsuit may present some manageability issues, the Court believes that the same issues would exist if the class members litigated their claims individually. On this point, Defendants contend that, because this case will require evaluating thousands of fuel oil shipments accepted by PREPA to identify those that were non-compliant, Plaintiffs' failure to present a trial plan confirms the manageability concerns associated with this case.

Docket No. 563 at 25. However, as discussed above, *supra* at II.A.2, any individual case would also need to evaluate every oil shipment received during the relevant time period to determine whether any shipment was non-compliant and, consequently, the extent of the injury and damages.

What is more, Defendants have failed to cite authority requiring the formulation of a trial plan before certifying a class. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005) ("Nothing in the Advisory Committee Notes suggests grafting a requirement for a trial plan onto [Rule 23].)"; *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 140 (5th Cir. 2005) (stating that the movant "was not required to submit a trial plan as a prerequisite for finding that this class action meets the superiority requirement of Rule 23(b)(3).""). Because the text of the Rule does not specifically require a trial plan, several courts have declined to impose such a prerequisite in cases that do not involve a nationwide class and do not require applying laws of different states. *See, e.g., Holman v. Experian Info. Sols., Inc.*, 2012 WL 1496203, at *15 (N.D. Cal. Apr. 27, 2012); *Ladore v. Ecolab, Inc.*, 2012 WL 12861141, at *15 (C.D. Cal. Apr. 11, 2012) ("While it is preferable for plaintiffs to submit a trial plan before a motion for certification, it is not required, nor is there any indication that the lack of a trial plan renders a class unmanageable."). *But see* Fed. R. Civ. P. 23 advisory committee's note ("An increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof."). The Court declines to infer the existence of manageability concerns from the mere absence of a trial plan. Despite the size and complexity of this case, the Court finds that applying the civil RICO statute to a single-state class with easily identifiable members with fixed injuries is manageable.

All in all, the Court finds that the class action mechanism is superior to other available methods for it will be vastly more efficient than hundreds, if not thousands, of individual lawsuits asserting the same claims based on the same underlying events.

## III.    Class Defined

"An order that certifies a class action must define the class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B). The Court defines the certified class as all persons or entities that paid a fuel oil surcharge on their electricity bill to PREPA during the period starting on January 1, 2002 and ending on April 30, 2016. Excluded from the Class are this Court and its personnel; Defendants; any entity in which Defendants have a controlling interest; and Defendants' legal representatives, predecessors, successors, assigns, and employees. Also excluded are PREPA's public lighting customers, public authority customers, and residential customers charged the fixed residential rate for public housing facilities.

The class claims are defined in Plaintiffs' Third Amended Complaint, Docket No. 367; RICO statement, Docket No. 35; and Motion for Class Certification, Docket No. 535 at 20. As stated above, *supra* at II.A.3, the certification is limited to the liability and injury phases of these proceedings.

## IV.    Notice Requirement

Having certified the class pursuant to Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Therefore, notice to the class must clearly and concisely state in plain, easily understood language

the following:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Within thirty days following the entry of this Order, the parties shall submit a proposed notice

to be sent to the class, schedule any discovery needed to identify all class members, and decide the

manner in which notice shall be provided. The parties shall file a joint motion certifying

compliance with this Order and submitting the proposed notice by **November 1, 2018**.

## CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Class Certification is hereby

GRANTED.[12]

---

[12] The Court acknowledges that "[w]hen the decision on class certification is made before full class discovery has been completed, as here, it is necessarily more predictive . . . [and] the decision may require revisiting upon completion of full discovery." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d at 27 (citations omitted). The Court, therefore, does not foreclose the possibility of revisiting the certification issue once merits discovery has been finalized, if warranted. *See also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

IT IS SO ORDERED.

In San Juan, Puerto Rico, September 30, 2018.


                                                              s/ Jay A. Garcia-Gregory
                                                              JAY A. GARCIA-GREGORY
                                                              United States District Judge